IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

MEGACAP CAPITAL, LLC, in its individual capacity and its representative capacity as General Partner of MEGACAP FUNDS, LP - SPACEX I SERIES and MEGACAP FUNDS, LP - TECH HOLDING,

      Plaintiff,

V.

WEST COAST EQUITY PARTNERS II, LLC, a Delaware series limited liability company; WCEP MANAGEMENT LLC, a Delaware limited liability company; ANTON BARANCHUK, an individual; ALEXANDER LAZOVSKY, an individual; SERGEY YUSHIN an individual; and BLAYKE HALE, an individual,

      Defendants.

_____/

Case No.: _____

## COMPLAINT

Plaintiff, MEGACAP CAPITAL, LLC ("Megacap"), brings this action against Defendants, WCEP MANAGEMENT LLC ("WCEP"), WEST COAST EQUITY PARTNERS II, LLC (the "WCEP Master"), ANTON BARANCHUK ("Baranchuk"), ALEXANDER LAZOVSKY ("Lazovsky"), SERGEY YUSHIN ("Yushin"), and BLAYKE HALE ("Hale"), in (a) its individual capacity and (b) in its representative capacity as General Partner of MEGACAP FUNDS, LP - SPACEX I SERIES ("MCF SpaceX") and MEGACAP FUNDS, LP - TECH HOLDING ("MCF Tech") (collectively with Megacap, the "Megacap Parties"), and states as follows:

1

## PARTIES, JURISDICTION, AND VENUE

1.      Plaintiff, Megacap, is a Delaware limited liability company with citizenship in Florida by way of Managing Member Eli M. Blatt ("Blatt"), who resides in Broward County, Florida. Megacap is the General Partner of MCF SpaceX and MCF Tech.

2.      WCEP is a Delaware LLC managing the WCEP Master, WCEP SpaceX, and WCEP Tech entities. There are no binding agreements between any of the Megacap Parties and WCEP, which only acted as a representative agent in all of the agreements to which the Megacap Parties were party.

3.      The WCEP Master is a Delaware Series LLC held out by WCEP to serve as a master vehicle for single-asset Special Purpose Vehicles ("SPVs"). There are no binding agreements between any of the Megacap Parties and the WCEP Master.

4.      Anton Baranchuk, Alexander Lazovsky, and Sergey Yushin are named as defendants in their individual capacities. Upon information and belief, each exercised direct or indirect control over WCEP and the relevant SPVs, including authority over offering documents, pricing, fee structures, regulatory compliance representations, and Form D filings. Each possessed the power to direct and did direct the management and policies of the WCEP entities with respect to the SpaceX and Tech offerings and are therefore liable as control persons under Section 20(a) of the Securities Exchange Act.

5.      Non-parties, WEST COAST EQUITY PARTNERS II, LLC - SERIES SCALE-UP SPX 2021C ("WCEP SpaceX") and WEST COAST EQUITY PARTNERS II, LLC - SERIES N22 ("WCEP Tech") (jointly, the "WCEP SPVs"), are Delaware series limited liability companies that were alleged to hold, respectively, SpaceX-related securities and the Tech Company-related position(s) at issue and to which MCF SpaceX and MCF Tech respectively subscribed. On

information and belief based, on the K-1s supplied by WCEP to Megacap, these entities were paper vehicles that never owned any assets and to which the Megacap Parties were never admitted.

6. Hale is an individual who acted as WCEP's intermediary for the SpaceX investment, receiving undisclosed illegal broker compensation from WCEP and an entitlement to carried interest for one MCF SpaceX Limited Partner.

7. Jurisdiction: This Court has subject-matter jurisdiction under 28 U.S.C. § 1331 and Section 27 of the Securities Exchange Act of 1934, 15 U.S.C. § 78(aa), because this action asserts claims arising under federal securities laws, including Section 10(b) of the Exchange Act and SEC Rule 10b-5. This Court also has supplemental jurisdiction over related state-law claims under 28 U.S.C. § 1367.

8. Personal Jurisdiction: This Court has personal jurisdiction over Defendants because they committed tortious acts in Florida and caused injury in Florida by directing fraudulent and misleading communications into this state, including the Private Placement Memorandum, subscription documents, emails, and WhatsApp messages sent to Eli M. Blatt, in his capacity as Managing Member of Megacap, while he was in Florida. Defendants also solicited the subject investments through communications directed into Florida, caused Plaintiff to send the subject wires from Florida, and caused harm that was and continues to be suffered by Plaintiff in Florida.

9. Venue: Venue is proper in this District under 28 U.S.C. § 1391(b) and Section 27 of the Securities Exchange Act, 15 U.S.C. § 78aa, because a substantial part of the events or omissions giving rise to the claims occurred in this District. Among other things, Defendants directed the Private Placement Memorandum, subscription documents, email communications, and WhatsApp communications to Plaintiff's Managing Member in Florida; solicited and negotiated the transactions through communications into Florida; caused Plaintiff to transmit the

3

subject wires from Florida; and caused injury in this District. Section 27 of the Exchange Act further provides for venue in any district where an act or transaction constituting the violation occurred. ⌗

10.     Choice of Law: The federal securities-fraud claims are brought under the Securities Exchange Act of 1934, over which the federal district courts have exclusive jurisdiction pursuant to Section 27 of the Exchange Act, 15 U.S.C. § 78aa. Plaintiff's non-federal tort claims are brought under Florida law because the tortious conduct was directed into Florida, the relevant communications and solicitations were received in Florida, the subject wires were sent from Florida, and the resulting injury was suffered in Florida.

## SUMMARY OVERVIEW

11.     This action arises from two separate transactions between the Megacap Parties and WCEP-managed entities.

12.     In the first MCF SpaceX transaction, WCEP (a) misrepresented in communications and the subscription documents that there would be "0/0" fees—no upfront fee and no carried interest—while, on information and belief, secretly marking up acquisition prices and thus defrauding MCF SpaceX; (b) knowingly misrepresented the ownership structure of the alleged derivative SpaceX share exposure; (c) deliberately concealed the true structure of MCF SpaceX's alleged investment, the manner in which it actually acquired derivative SpaceX interests, and the SPV it intended to admit MCF SpaceX to; and (d) admitted MCF SpaceX into a different entity— the multi-asset WCEP Master—than the one to which it subscribed to—the single-asset WCEP SpaceX—using subscription documents that intentionally misrepresented the actual structure.

13.     The MCF Master (a) collected capital contributions wired for subscription into WCEP SpaceX; (b) on information and belief charged undisclosed fees for the benefit of WCEP;

(c) admitted MCF SpaceX as a Member without its knowledge or consent; and (d) used MCF SpaceX's funds to purchase derivative SpaceX interests for its account.

14. Hale, as a WCEP intermediary, transmitted fraudulent representations and concealed the markup scheme or was complicit in the fraud either intentionally or recklessly.

15. In the second MCF Tech transaction, WCEP (a) charged fees on the basis of a transaction that never happened calculated on a share price that it has admitted was inaccurate; (b) knowingly misrepresented the SPV it intended to admit MCF Tech to; and (c) admitted MCF SpaceX into a different entity—the multi-asset WCEP Master—than the one to which it subscribed to—the single-asset WCEP Tech—using subscription documents that intentionally misrepresented the actual structure.

16. The MCF Master (a) collected capital contributions wired for subscription into WCEP Tech; (b) charged fees for the benefit of WCEP that it had no legal right to collect; and (c) admitted MCF Tech as a Member without its knowledge or consent.

17. In both transactions, WCEP also failed to file the Form Ds contemplated by the governing documents for WCEP SpaceX and WCEP Tech as required under the Regulation D exemption the SPVs were being offered, thus breaching the governing documents' representations and violating the legal obligation to file within 15 days of the first sale of a security.

18. The only entity at issue that did file a Form D is the WCEP Master.

19. WCEP's conduct regarding Regulation D filings evidences knowledge and intent. Defendants filed a Form D for the WCEP Master (into which it also admitted Megacap's SPVs without its consent), which does not satisfy the legal and contractual obligation to file a Form D for the individual series selling securities. It does, however, prove that Defendants indisputably knew and understood the significance of Form D filings, supporting the knowledge about which

entity they intended to admit the Megacap Parties while intentionally failing to disclose that structure to Megacap.

20. On information and belief, WCEP SpaceX and WCEP Tech (a) never functioned as the actual investment vehicles to which Megacap's SPVs were admitted; (b) never existed by virtue of never having any admitted members; and (c) accordingly never held any assets.

21. In fact, the subscription documents for these entities merely functioned as vehicles to induce the Megacap Parties to wire funds for WCEP and the WCEP Master's benefit.

22. In an effort to conceal their misdeeds, WCEP's Management has repeatedly stated in writing that it intends to withhold and refuse to make distributions to Megacap and MCF SpaceX, adversely impacting all of the latter's limited partners.

23. In reality, as there is no contract between the MCF Parties and the MCF Master, the latter has no right to hold the securities in question and no obligation to distribute them.

24. In short, the WCEP Master simply stole the MCF Parties funds and now holds the derivative SpaceX interests hostage (where the derivative Tech interests have already been distributed out, as detailed below).

25. In an effort to conceal its fraud, WCEP has also flatly ignored Megacap's legitimate books and records request on two separate occasions, reinforcing that they do not believe it has any contractual or statutory obligations to the Megacap Parties.

26. With the SpaceX IPO widely reported as planned for mid-June 2026, the threat to Megacap, MCF SpaceX, and MCF SpaceX's limited partners is acute and imminent because Defendants control WCEP SpaceX's records, allocations, and any distribution mechanics, and actions taken now by Defendants could irreparably impair MCF SpaceX's members' economic rights before the Court can adjudicate this dispute.

## FACTUAL ALLEGATIONS

**The SpaceX Investment**

27.    In June 2021, Blayke Hale, acting on behalf of WCEP, solicited Plaintiff and Megacap to invest in SpaceX securities through a WCEP-managed investment vehicle.

28.    On or about June 15, 2021, Hale represented to Plaintiff via WhatsApp that WCEP could secure SpaceX shares for Megacap at "$580 0/0," meaning $580 per share with zero upfront fees and zero annual management fees.

29.    The WCEP SpaceX Private Placement Memorandum dated July 29, 2021 corroborates this, expressly stating: "The Manager WILL NOT receive any commissions or fees for the sale of Interests pursuant to the Memorandum" and "Management Fee: On the effective date of a Subscription Agreement and on each one-year anniversary of that effective date, each Member shall pay to the Fund a management fee of 0% of the Member's total Capital Commitment."

30.    The WCEP SpaceX Operating Agreement dated July 29, 2021, Section 4.3, similarly stated: "Together with the Capital Contribution payable by a Member and on each one-year anniversary of that effective date, each Member shall pay to the Fund a management fee of 0% (Zero percent) of such Capital Contribution."

31.    MCF SpaceX's subscription agreement for WCEP Tech likewise states that its entire $375,260 subscription amount represented capital contributions to WCEP Tech, with no management fee being charged.

32.    As part of Megacap's diligence, on or about August 9, 2021, Plaintiff's counsel, William Barlow, requested from Lazovsky permission to contact the SpaceX seller ("DFJ") to satisfactorily confirm the terms of their transaction with WCEP.

33.     Lazovsky refused this reasonable accommodation, stating: "No, unfortunately we cannot let our investors and their legal counsels getting in direct communication with DFJ and their legal team" and instead offered to "show you via Docsend that our firm West Coast Equity Partners is a Limited Partner already in two *different* funds of DFJ, not including this third one" (emphasis added), thereby depriving Plaintiff of the only means to independently verify the transaction terms.

34.     Barlow responded by asking if, instead of direct contact, he could be copied on an email to DFJ confirming WCEP was subscribing to their SpaceX fund, noting to Lazovsky that the "copies of [docsend] documents provided by you don't meet that standard." (*Id.*).

35.     Two days later, on August 12, 2021, Lazovsky copied Megacap's counsel in an email to DFJ's counsel confirming WCEP's "Signed subscription package for Class B Limited Partner in DFJ Fund IX Continuation, L.P."

36.     Plaintiff, which was entering into its first pre-IPO transaction, reasonably believed that WCEP was operating within the law and was not extracting undisclosed compensation from investors—a misconception Defendants exploited to their advantage.

37.     In reliance on the above representations, in August 2021, MCF SpaceX executed the WCEP SpaceX subscription documents and wired $375,260 to an account for the WCEP Master at WCEP's instruction as an intended capital contribution to WCEP SpaceX.

**The Tech Investment**

38.     Commencing late 2021 and continuing through February 2022, WCEP solicited Megacap to invest in shares of a pre-IPO technology company (the "Tech Company") through a WCEP-managed investment vehicle, WCEP Tech.

39.     WCEP represented to MCF Tech that the investment was being made via an intermediary, later disclosed to be GlobalX, and would provide direct exposure to Tech Company shares at a specific price with a detailed fee structure.

40.     Specifically, WCEP represented that it would receive a 20% upfront fee on top of a purchase price of $45 per share from the intermediary, with the intermediary (later revealed to be N-22 a Series of GlobalX Ventures, LLC ("N22")), subsequently taking a $5 per share fee, resulting in a net Tech Company share price of $40 due to be remitted to the counterparty of the forward contract through which N-22 entity would acquire the derivative interests in Tech Company.

41.     Acting in reliance on these representations, Megacap, on behalf of MCF Tech, executed a subscription agreement with WCEP Tech and, as with the WCEP SpaceX transaction, wired the WCEP Master $4,223,752.83 (the "Total Subscription Amount") at WCEP's instruction.

42.     WCEP subsequently provided Megacap with a K-1 for a total of $722,055 in charged fees (the "WCEP Fee").

43.     WCEP then allegedly remitted the balance $3,500,010.00 to GlobalX's N-22 vehicle (the "N-22 Contribution").

44.     WCEP represented that the N-22 Contribution would be remitted to N-22 and used to purchase the shares at $40 per share, net of a $5 per share fee to GlobalX, entitling GlobalX to $388,890.00 in fees (the "Disclosed GlobalX Fee"), with the remaining $3,111,120.00 net of this fee due to the seller of the forward contract.

45.     Subsequent to N-22 closing the forward contract, WCEP arranged for MCF Tech to replace WCEP Tech on the N-22 capitalization table by way of a distribution agreement and letter agreement executed by and between WCEP, GlobalX, N-22, Megacap, and MCF Tech,

9

which included as an attachment an extremely poor and heavily redacted copy of the "Alleged Forward Contract".

46.     In November 2024, Megacap learned of a United States Securities and Exchange Commission's (SEC) public enforcement action alleging materially identical "no upfront fees" representations paired with undisclosed markups/commissions against GlobalX and its principal Laren Pisciotti, among others (SEC v. The Pre IPO Marketplace Inc., et al., No. 1:24-civ-06886 (E.D.N.Y. filed Sept. 30, 2024)).

47.     The SEC's Complaint in the SEC Action alleges that GlobalX and Pisciotti fraudulently misrepresented to investors that there were "no upfront fees" while secretly marking up share acquisition prices and retaining the difference as undisclosed compensation—a scheme materially similar to the one alleged herein with respect to the SpaceX transaction.

48.     Upon learning of the SEC Action in November 2024, Plaintiff conducted an investigation into the MCF Tech investment and discovered that GlobalX had employed the identical fraudulent markup scheme described in the SEC Complaint against MCF Tech.

49.     When pressed to confirm that N-22 in fact had transacted the forward contract, Pisciotti provided screenshots of wire transfers totaling $2,812,500.00 (the "Amount Wired"), revealing that, at a minimum, GlobalX had fraudulently taken an additional $298,620.00 in fees (the "Undisclosed Fees").

50.     This prompted Megacap to conduct further inquiry in order to (a) confirm there was, in fact, a forward contract transacted and owned by N-22 (which MCF Tech is the sole member of); (b) the actual price per share paid per the forward contract; and (c) the number of shares belonging to N-22 and thus derivatively to MCF Tech per the forward contract.

51. Plaintiff subsequently obtained documentary evidence from the registered broker-dealer that executed the Tech Company Forward Contract with the former employee, which conclusively established that: (a) the true acquisition price paid by WCEP Tech for Tech Company shares was $25.00 per share; (b) GlobalX and WCEP marked up the price represented to MCF Tech by withholding a substantial portion of shares that should have been purchased; and (c) WCEP and GlobalX retained unearned excess as well as undisclosed fees totaling hundreds of thousands of dollars.

52. Additionally, unlike the Represented Forward Contract supplied to Megacap and MCF Tech by WCEP as part of the Distribution Agreement and Letter Agreement after closing the WCEP Tech transaction, the "Actual Forward Contract" supplied by the broker-dealer was not of poor quality and showed a different share count for an amount of shares equivalent to the Amount Wired at $25 per share.

53. WCEP's failure to conduct reasonable inquiry and diligence as to the reason for the poor forward contract constitutes gross negligence or complicity in GlobalX's fraud at worst.

54. As a result of this, Megacap has been defrauded of fees, Tech Company shares, and has been forced to seek to recover both by way of ongoing litigation against GlobalX and Pisciotti, while WCEP has benefitted in the form of the WCEP Fee.

**WCEP States its Refusal to Distribute SpaceX Proceeds**

55. Lazovsky contacted Megacap via email on July 23, 2023, stating that Goldner "approached us in an alarming way."

56. Blatt responded promptly to Lazovsky's July 23, 2023 email, explaining that Goldner had been withdrawn and lacked any authority to act for Megacap or its affiliated series, attaching to the email letters from two attorneys who had and were representing Megacap at that

time confirming same, as well as Blatt's control/authority on behalf of Megacap. Blatt further requested that WCEP cease communications with Goldner relating to Megacap and its investments because Goldner was not an authorized representative.

57. Instead, WCEP allegedly supplied a formal letter on WCEP letterhead (Goldner heavily redacted the document) stating "WE CONFIRM THAT WE WILL NOT BE ABLE TO RELEASE ANY SHARES OR, IN CASE OF A LIQUIDITY EVENT, ANY PROCEEDS FROM SALE OF SHARES OF SPACEX TO MEGACAP UNTIL ALL INVOLVED PARTIES UNANIMOUSLY REACH AN AGREEMENT OR SETTLEMENT AND PROVIDE A SOLID EVIDENCE FOR THAT" (the "WCEP Letter").

58. Thereafter, on or about November 14, 2023, Goldner sent a threatening letter to Megacap's Limited Partners (the "November 2023 Letter"), attaching a redacted copy of the WCEP Letter to the November 2023 Letter, causing confusion and concern among Megacap's Limited Partners.

59. In early February, 2026, Megacap received a tender offer for MCF SpaceX's derivative SpaceX shares.

60. As numerous MCF SpaceX limited partners expressed a desire to participate, Megacap contacted Lazovsky on  February 4, 2026 to inquire if MCF would approve the transaction.

61. Lazovsky responded that same day that WCEP would not "transact" with Megacap given threats from a prior Megacap Member, Marc J. Goldner ("Goldner").

62. Despite Blatt's July 2023 response to Lazovsky's email explaining Goldner was withdrawn and not authorized to represent the Company and providing letters from two attorneys confirming this, Lazovsky nonetheless still maintained in his February 5 WhatsApp Message to

Blatt that WCEP would not "transact" with Megacap or MCF SpaceX without Goldner's consent, improperly referring to Goldner as one of Megacap's "partners" while reaffirming WCEP's stated intent to breach its agreement with MCF SpaceX as per the WCEP Letter.

**Megacap Unconvers the Full Extent of WCEP's Fraud**

63.     After Lazovsky's WhatsApp message and WCEP's letter supplied to Goldner made it clear that WCEP was not acting in good faith, Megacap undertook an examination of the MCF SpaceX transaction.

64.     Megacap's investigation revealed that:

a. the 0/0 fee representation made to it is identical to those made by numerous other pre-IPO sponsors the SEC has initiated actions against, including but not limited to Pisciotti and GlobalX;
b. the mechanism that Megacap had believed WCEP had used to secure their economics in the transaction could not in fact explain their markup structure;
c. WCEP had only filed a Form D for the WCEP Master but not for MCF SpaceX or MCF Tech; and
d. upon information and belief, based on the actual share price of SpaceX at the time of the MCF SpaceX transaction, WCEP's actual acquisition price for SpaceX in the WCEP SpaceX vehicle shares was materially lower than $580 per share, likely $419.99, with WCEP retaining an embedded markup as undisclosed compensation, resulting in Megacap's MCF SpaceX receiving entitlement to fewer shares than its capital contribution to WCEP SpaceX in fact entitled it to.

65.     As a result of these discoveries on or about February 6, 2026, Megacap sent WCEP a books-and-records demand under MCF SpaceX Operating Agreement §[10.1] and 6 Del. C. § 18-305, along with a demand for compensatory damages arising from both the Tech and SpaceX transactions.

66.     On March 19, 2026, WCEP's counsel, John W. Rotunno of K&L Gates LLP ("Rotunno"), responded to Plaintiff's demand on WCEP's behalf. The March 19 letter admitted, among other things, that:

a. the fund through which WCEP had acquired its SpaceX position was "DFJ Growth 2006," directly contradicting the prior representation, evidenced by the August 10,

      2021 Correspondence with DFJ that MCF SpaceX would own interests in "DFJ Fund IX Continuation, L.P."[1];

b.   MCF SpaceX in fact allegedly owned interests in a "WCEP Scale-Up 2020" Series, which in turn owned interests "DFJ Growth 2006";

c.   The underlying SpaceX shares were in fact subject to an undisclosed carried interest fee of 17.5%, while offering a mathematically impossible and legally inaccurate rationalization for how that fee did not violate the 0/0 fee representation; and

d.   that, with respect to the MCF Tech transaction, WCEP "was not aware, as alleged in your letter, that the 'true price per share paid to the seller' was '$25/share and not $40,'" and that WCEP "did not know, nor did it have any reason to suspect that Ms. Pisciotti or GlobalX-N22 may have doctored any of these documents," thereby admitting to the mutual mistake of fact Megacap had alleged in its demand letter.

67.     These admissions by WCEP, through its counsel, led Megacap to conduct further inquiry into the SpaceX and Tech transactions, at which time the full extent of Defendants' fraud came to light.

68.     Specifically, Megacap discovered that the K-1s tendered to Megacap for both MCF Tech and MCF SpaceX:

a.   were issued by the WCEP Master series, not the series for which Megacap had executed subscription; and

b.   that after being admitted as Member 84 in 2021, WCEP continued to add additional members into the WCEP Master series each year, in breach of the representations contained in the governing documents tendered to Megacap limiting the addition of additional members;

---

[1] Note that in the March 19 Letter, Rotunno alleged that "On January 12, 2021, WCEP Scale-Up 2020 and DFJ Growth 2006 Continuation, L.P. entered into an Admission Agreement pursuant to which WCEP Scale-Up 2020 became a Class B Limited Partner… WCEP Scale-Up 2021C was formed to permit a limited number of accredited investors to acquire an indirect membership interest in WCEP Scale-Up 2020…WCEP Scale-Up 2020's limited partnership interest in DFJ Growth 2006 is subject to a 17.5% 'carry'"; howeve,r in a subsequent letter dated April 6, 2006, Rotunno alleged; that "MegaCap-SpaceX executed a Subscription Agreement pursuant to which it agreed to invest $375,260 in WCEP Scale-Up 2021C…Thereafter, on September 8, 2021, WCEP II entered into an Admission Agreement with DFJ Fund IX, pursuant to which WCEP II invested $8.5 million and became a Class B Limited Partner. WCEP Il's Class B limited partnership interest in DFJ Fund IX is subject to a 17.5% carried interest." WCEP thus through its counsel has offered two entirely different accountings of the manner in which it supplied MCF SpaceX with its derivative SpaceX interests, both of which admit to a 17.5% in direct violation of its explicit representation to Megacap of "0/0" fees, including no carried interest.

14

69.     The K-1s are the definitive source of truth as to what entity WCEP admitted MCF SpaceX and MCF Tech to.

70.     This finding revealed that the fraud committed against Plaintiff extended beyond the taking of undisclosed fees to what can only properly be described as a bait and switch fraud with far more serious implications.

71.     Despite having been given subscription documents for a single-asset SPV, WCEP had admitted MCF SpaceX and MCF Tech, without their knowledge or consent, to a multi-asset fund (the WCEP Master) containing, on information and belief, all the assets from all of the pre-IPO deals that WCEP had conducted.

72.      This logically entails a structural insolvency with respect to the SpaceX shares acquired with MCF SpaceX's funds.

73.     Because the WCEP Master acquired a fixed number of derivative SpaceX shares from whatever DFJ fund WCEP actually acquired such interests from, commingled with other pre-IPO interests, and because, based on the K-1s, WCEP had continued to add millions of dollars of limited partner interests after 2021, the WCEP Master almost certainly does not have sufficient derivative SpaceX interests to satisfy its obligations to MCF SpaceX.

74.     This is because given the structure of limited liability companies, all Members of the WCEP Master are entitled to a pro-rata share of the WCEP Master's holdings, including the SpaceX interests.

75.     In fact, on information and belief, WCEP has been issuing investors, including MCF SpaceX and MCF Tech, paper-only single-entity subscription packages and then in fact admitting them to the multi-asset WCEP Master.

76. Additionally, based on the additional amount of capital WCEP raised after MCF SpaceX was Member 84, on information and belief, WCEP has likely been operating as an unregistered Investment Company by exceeding the 100-member limit under the 3C(i) exemption to the Investment Act.

77. This is further called into question by the fact that despite MCF Tech being admitted to the WCEP Master after MCF SpaceX, the K-1 provided to MCF Tech alleges it to be Member 57.

78. Given that it is chronologically impossible for MCF SpaceX to have been Member 84 and MCF Tech Member 57, the inescapable conclusion is that these Member numbers are a fiction, begging the question as to just how many Members may have been admitted to the WCEP Master.

79. Compounding the offenses admitted to in Rotunno's letter, WCEP also flatly refused to provide the requested books and records as required by Delaware statutes.

## CAUSES OF ACTION

### COUNT I: FRAUDULENT INDUCEMENT
(Against WCEP, the WCEP Master, and Hale)

80. Plaintiff re-alleges and incorporates by reference Paragraphs 1 through 79 as if fully set forth herein.

81. Defendants made material misrepresentations of fact to Plaintiff and Megacap, including, among other things, that:

   a. for the MCF SpaceX Transaction: (a) the "$580 0/0" representation that there would be no fees; (b) the express contractual statement that "The Manager WILL NOT receive any commissions or fees" for the; (c) the express contractual statement that the management fee would be "0% (Zero percent)"; (d) the failure to disclose WCEP's actual acquisition price and markup methodology despite direct questioning; and

16

b.  with respect to both the MCF SpaceX and MCF Tech transactions that: (a) the offering would be offered under Regulation D; and (b) that MCF SpaceX would be admitted to WCEP SpaceX and MCF SpaceX to WCEP SpaceX.

82.  Defendants knew these representations were false at the time they were made because, among other things: (a) WCEP could not operate a venture capital fund without upfront compensation and was in fact extracting undisclosed fees through secret markups identical to those charged by WCEP's affiliate GlobalX VC and other Pre-IPO companies against whom the SEC has successfully initiated actions; (b) they had already subscribed prior investors into the WCEP Master into which they admitted MCF SpaceX and MCF Tech without notice or consent; and (c) MCF admitted MCF Tech to the MCF Master after the MCF SpaceX transaction, proving scienter.

83.  Defendants made these misrepresentations with the intent to induce Plaintiff and Megacap to invest in WCEP SpaceX and MCF Tech as  single-asset investment vehicles rather than seek alternative investment vehicles.

84.  Plaintiff justifiably relied on these misrepresentations before wiring $375,260 on behalf of MCF SpaceX for investment in SpaceX securities and $4,223,752.83 on behalf of MCF Tech for investment in Tech Company securities at WCEP's instruction.

85.  As a direct and proximate result of Defendants' fraudulent misrepresentations, Plaintiff and Megacap suffered damages including: (a) payment of undisclosed and excessive fees through secret markups; (b) receipt of fewer SpaceX shares than their capital contribution entitled them to; and (c) loss of opportunity to invest through legitimate channels.

WHEREFORE, Plaintiff demands judgment against Defendants for (i) compensatory damages including but not limited to return of the $722,055 WCEP Fee retained by the WCEP Master without legal entitlement; (ii) imposition of a constructive trust over any specific and identifiable property wrongfully obtained or retained by Defendants, including but not limited to

any SpaceX shares, interests, allocations, or proceeds held by, through, assignable to, or attributable to the WCEP Master, WCEP Scale-Up 2020, or any interest in DFJ Fund IX Continuation, L.P. or DFJ Growth 2006 Continuation, L.P., traceable to MCF SpaceX's $375,260 capital contribution at the lowest basis price among these vehicles; and (iii) costs, prejudgment interest and for any other relief the Court deems just, equitable and proper.

## COUNT II: FRAUDULENT CONCEALMENT
(Against WCEP and the WCEP Master)

86. Plaintiff re-alleges and incorporates by reference Paragraphs 1 through 79 as if fully set forth herein.

87. Defendants had a duty to disclose material facts to Plaintiff and Megacap, including, among other things: (a) WCEP's actual acquisition price for SpaceX shares in the WCEP SpaceX vehicle; (b) the existence and amount of any markup; (c) WCEP's total compensation from the transaction; (d) the illegal nature of charging undisclosed markups to investors; (e) what entity MCF SpaceX would allegedly be receiving derivative SpaceX exposure through; and (f) what entities WCEP actually intended to subscribe MCF SpaceX and MCF Tech to.

88. This duty to disclose arose from: (a) the confidential and fiduciary-like relationship between investment manager and investor; (b) the express "0%" fee representations, which created an affirmative obligation to disclose any compensation that deviated from those representations; (c) Plaintiff's direct and specific questions about markup methodology, which Defendants deliberately deflected; (d) the governing documents' express representations that the offerings would be made in compliance with Regulation D — representations Defendants used to induce investment and which themselves created a duty to disclose any departure from that regulatory posture, including their actual intent to admit MCF SpaceX and MCF Tech to the WCEP Master rather than the Regulation D-registered SPVs described in the offering documents; and (e) the half-

18

truths embedded in the offering documents themselves, which disclosed the existence of a Regulation D framework while concealing that Defendants had no intention of operating within it.

89.     Defendants actively concealed these material facts by, among other things: (a) representing fees as "0/0" when they were in fact substantial; (b) embedding compensation in undisclosed markups rather than disclosed fees; (c) failing to answer Plaintiff's direct questions about markup; (d) drafting contractual language stating "0%" fees to create the false impression of no compensation; (e) structuring the transaction to obscure WCEP's actual acquisition price; (f) willfully failing to file the required Form D for the WCEP SpaceX offering; (g) refusing to allow Megacap to confirm transaction details with DFJ; (h) refusing to provide the DFJ transaction documents for the actual fund through which they were allegedly acquiring derivative SpaceX interests; and (i) providing Megacap subscription documents for WCEP SpaceX and WCEP Tech when in fact it intended to admit them to the WCEP Master.

90.     Plaintiff and Megacap reasonably relied on Defendants' concealment and would not have invested through WCEP had the concealed facts been disclosed.

91.     As a direct and proximate result of Defendants' fraudulent concealment, Plaintiff and Megacap suffered damages as set forth above.

WHEREFORE, Plaintiff demands judgment against Defendants for (i) compensatory damages including but not limited to return of the $722,055 WCEP Fee retained by the WCEP Master without legal entitlement; (ii) imposition of a constructive trust over any specific and identifiable property wrongfully obtained or retained by Defendants, including but not limited to any SpaceX shares, interests, allocations, or proceeds held by, through, assignable to, or attributable to the WCEP Master, WCEP Scale-Up 2020, or any interest in DFJ Fund IX Continuation, L.P. or DFJ Growth 2006 Continuation, L.P., traceable to MCF SpaceX's $375,260

capital contribution at the lowest basis price among these vehicles; and (iii) costs, prejudgment interest and for any other relief the Court deems just, equitable and proper.

**COUNT III: FEDERAL SECURITIES FRAUD (Exchange Act § 10(b) and Rule 10b-5)**
(Against WCEP and the WCEP Master)

92.     Plaintiff re-alleges and incorporates by reference Paragraphs 1 through 79 as if fully set forth herein.

93.     The interests in WCEP SpaceX constitute "securities" within the meaning of the federal securities laws.

94.     In connection with the offer, sale, or purchase of these securities, Defendants, directly or indirectly, by the use of interstate commerce and the mails, employed devices, schemes, and artifices to defraud; made untrue statements of material facts and omitted material facts necessary to make statements made not misleading; and engaged in acts, practices, and courses of business that operated as a fraud or deceit upon purchasers, in violation of Section 10(b) of the Exchange Act and Rule 10b-5.

95.     Specifically: (a) Lazovsky, acting on behalf of WCEP, personally made the "0/0" fee representations to Plaintiff's counsel, refused to allow independent verification of the DFJ transaction terms, and sent the misleading August 12, 2021 email to DFJ's counsel that falsely confirmed the fund structure represented to Megacap; (b) Baranchuk and Yushin, as controlling principals of WCEP, authorized and directed the offering structure, pricing decisions, fee concealment, and the decision to admit MCF SpaceX and MCF Tech to the WCEP Master rather than the SPVs described in the subscription documents; (c) Hale personally transmitted the "$580 0/0" representation to Plaintiff via WhatsApp on or about June 15, 2021, knowing or recklessly disregarding that WCEP was embedding undisclosed compensation in the share price; and (d) WCEP and the WCEP Master, through each of the foregoing individuals, provided subscription

20

documents for WCEP SpaceX and WCEP Tech while knowing they intended to admit MCF SpaceX and MCF Tech to the multi-asset WCEP Master.

96.     Each Defendant acted with scienter. Lazovsky's personal refusal to allow independent verification of acquisition pricing, his direction of Megacap's counsel to a confirmatory email that concealed the true fund structure, and his admission through counsel that the fund structure and fee arrangements differed materially from those represented, each establish that he knew the representations were false when made. Baranchuk's and Yushin's authority over offering documents, pricing, and the admission of members to the WCEP Master — and their filing of a Form D for the WCEP Master while deliberately omitting to file Form Ds for WCEP SpaceX and WCEP Tech — establishes that they knew which entity Megacap was actually being admitted to and chose to conceal it. Hale's transmission of the "0/0" representation while serving as a compensated intermediary for WCEP establishes that he knew or recklessly disregarded the falsity of the fee representation.

97.     Plaintiff and Megacap justifiably relied on Defendants' misrepresentations and omissions. Had Defendants disclosed their true acquisition price, the embedded markup, the 17.5% carried interest, or their intent to admit MCF SpaceX to the multi-asset WCEP Master rather than the single-asset WCEP SpaceX, Plaintiff would not have invested through WCEP.

98.     98. Defendants' misrepresentations directly and proximately caused Plaintiff's economic loss. The loss is not the product of market fluctuation. Rather, because WCEP's true acquisition price for SpaceX shares was approximately $419.99 per share rather than the represented $580 per share, MCF SpaceX received entitlement to materially fewer derivative SpaceX shares than its $375,260 capital contribution would have purchased at the true acquisition price — a concrete, calculable share deficit that constitutes the direct measure of damages.

Additionally, the $722,055 WCEP Fee was extracted on the basis of a Tech transaction price that WCEP's own counsel has admitted was inaccurate, constituting a separate and independently calculable loss.

WHEREFORE, Plaintiff demands judgment against Defendants for (i) compensatory damages including but not limited to return of the $722,055 WCEP Fee retained by the WCEP Master without legal entitlement; (ii) imposition of a constructive trust over any specific and identifiable property wrongfully obtained or retained by Defendants, including but not limited to any SpaceX shares, interests, allocations, or proceeds held by, through, assignable to, or attributable to the WCEP Master, WCEP Scale-Up 2020, or any interest in DFJ Fund IX Continuation, L.P. or DFJ Growth 2006 Continuation, L.P., traceable to MCF SpaceX's $375,260 capital contribution at the lowest basis price among these vehicles; and (iii) costs, prejudgment interest and for any other relief the Court deems just, equitable and proper.

### COUNT IV: VIOLATION OF FLORIDA DECEPTIVE AND UNFAIR TRADE PRACTICES ACT (FDUTPA) (Fla. Stat. § 501.201 et seq.)
(Against WCEP, the WCEP Master, and Hale)

99.     Plaintiff re-alleges and incorporates by reference Paragraphs 1 through 79 as if fully set forth herein.

100.   Among other things, Defendants (a) represented they would charge "0/0" fees but instead charged substantial undisclosed markups and (b) subscribed MCF SpaceX to the single-asset WCEP SpaceX and MCF Tech to WCEP Tech but admitted them to the multi-asset WCEP Master, constituting both deception (false representation) and unfairness (charging fees while representing no fees would be charged and providing Plaintiff with substantially diluted SpaceX exposure along with exposure to other, unknown assets).

22

101. These practices occurred in trade or commerce affecting Florida consumers and were likely to mislead reasonable consumers acting reasonably under the circumstances.

102. Plaintiff and Megacap suffered actual damages as a result of Defendants' FDUTPA violations.

WHEREFORE, Plaintiff demands judgment against Defendants for actual damages, attorneys' fees, costs, prejudgment interest and such other relief as the Court deems just and proper.

**COUNT V: NEGLIGENT MISREPRESENTATION**
(Against WCEP, the WCEP Master, and Hale)

103. Plaintiff re-alleges and incorporates by reference Paragraphs 1 through 79 as if fully set forth herein.

104. Defendants negligently made false representations of material facts, including, among other things, that: (a) the "$580 0/0" representation, the contractual "0%" fee language; and (b) that MCF SpaceX would be admitted to the single-asset WCEP SpaceX and MCF Tech to WCEP Tech.

105. Defendants made these representations in the course of their business and had or should have had knowledge concerning the truth or falsity of the representations.

106. Defendants failed to exercise reasonable care or competence in obtaining or communicating the information, and supplied false information for the guidance of Plaintiff and Megacap in their business transaction.

107. Plaintiff and Megacap justifiably relied on these representations in deciding to invest through WCEP.

108. As a direct and proximate result of Defendants' negligent misrepresentations, Plaintiff and Megacap suffered pecuniary loss.

23

WHEREFORE, Plaintiff demands judgment against Defendants for damages, costs, prejudgment interest, and such other relief as the Court deems just and proper.

## COUNT VI: UNJUST ENRICHMENT
(Against WCEP, the WCEP Master, and Hale)

109.   Plaintiff re-alleges and incorporates by reference Paragraphs 1 through 79 as if fully set forth herein.

110.   Defendants received a benefit from Plaintiff and Megacap in the form of MCF SpaceX $375,260 capital contribution intended for WCEP SpaceX but retained by the WCEP Master, the WCEP Fee in the MCF Tech Transaction similarly retained by the WCEP Master without any legal entitlement thereto, and the fees paid to Hale.

111.   Defendants have knowledge and appreciation of this benefit.

112.   Under the circumstances, it would be inequitable and unjust for Defendants to retain this benefit without paying its value, particularly where, among other things: (a) the benefit was obtained through fraud or misrepresentation; (b) Defendants represented they would charge "0/0" fees; (c) Defendants concealed their compensation despite direct questioning; (d) Defendants did not admit either MCF SpaceX or MCF Tech to the entities to which they subscribed; and (e) Defendants had no legal entitlement to the funds in question.

WHEREFORE, Plaintiff demands judgment against Defendants for disgorgement of all benefits unjustly retained, including but not limited to (i) compensatory damages including but not limited to return of the $722,055 WCEP Fee retained by the WCEP Master without legal entitlement; (ii) imposition of a constructive trust over any specific and identifiable property wrongfully obtained or retained by Defendants, including but not limited to any SpaceX shares, interests, allocations, or proceeds held by, through, assignable to, or attributable to the WCEP Master, WCEP Scale-Up 2020, or any interest in DFJ Fund IX Continuation, L.P. or DFJ Growth

24

2006 Continuation, L.P., traceable to MCF SpaceX's $375,260 capital contribution at the lowest basis price among these vehicles; and (iii) costs, prejudgment interest and for any other relief the Court deems just, equitable and proper.

**COUNT VII: DECLARATORY JUDGMENT**
(Against WCEP, the WCEP Master, and Hale)

113.    Plaintiff re-alleges and incorporates by reference Paragraphs 1 through 79 and the allegations set forth in Counts I through XVIII to the extent consistent herewith.

114.    An actual and justiciable controversy exists between Plaintiff and Defendants regarding whether, among other things:

a.    the Distribution Agreement dated November 2023 and its release provision are void and unenforceable due to mutual mistake of material fact regarding the lawfulness and legitimacy of the MCF Tech investment, the true acquisition prices paid, the true fees charged, and the existence of fraud and securities violations;

b.    the WCEP SpaceX Operating Agreement and subscription documents are void or voidable due to fraudulent inducement, fraudulent concealment, and WCEP's material breaches including failure to file required Form D disclosures;

c.    WCEP's "0% fee" representations in the SpaceX transaction documents constitute enforceable contractual terms that WCEP breached by charging undisclosed markups;

d.    Megacap and MCF SpaceX are entitled to receive the full allocation of SpaceX shares that their $375,260 capital contribution entitled them to receive, calculated at WCEP's true acquisition price per share rather than the fraudulently marked-up price, the difference constituting a calculable share deficit that is the direct measure of damages under Count III;

e.    MCF Tech is entitled to restitution of the $722,055 WCEP Fee paid under false or fraudulent pretenses based on the fraudulent Represented Price of $40.00 per share when the Actual Price was $25.00 per share;

f.    WCEP has any right to withhold SpaceX distributions on the basis of Goldner's baseless threats, claims and/or accusations;

g.    WCEP's agreement to withhold distributions pending Goldner's approval constitutes a breach of WCEP's contractual and fiduciary obligations to MCF SpaceX;

h.    WCEP is obligated to distribute SpaceX liquidation proceeds immediately upon demand to the MCF SpaceX for the benefit of its limited partners without conditioning such distributions on Goldner's consent or involvement;

i.    the no-waiver clauses in the WCEP Operating Agreements preserve Plaintiff's right to assert all claims notwithstanding any delay between investment and discovery of fraud;

25

j. the arbitration clauses in the WCEP Operating Agreements are void, unconscionable, or unenforceable due to Defendants' fraud, material breaches, mutual mistake of fact, the fact that MCF Tech and MCF SpaceX were not in fact admitted to the entities containing such arbitration agreements, and the fact that federal securities fraud claims must be brought in federal court;

k. WCEP's willful failure to file Form D disclosures for WCEP SpaceX and WCEP Tech constitutes a material breach of the offering documents as well as the subscription agreements as a whole, including any entitlements to fees;

l. Defendants operated as unregistered broker-dealers in violation of federal and Florida securities laws by receiving transaction-based compensation through undisclosed markups;

m. Defendants are, on information and belief, operating as unregistered investment advisors;

n. Defendants had the right to admit MCF Tech and MCF SpaceX to the WCEP Master Series despite not contractual documents permitting such;

o. Plaintiff is entitled at its election to: (i) with respect to MCF SpaceX, disgorgement and reallocation of the full number of SpaceX shares that MCF SpaceX's capital contribution would have purchased at WCEP's true acquisition price, together with imposition of a constructive trust over such shares; and (ii) with respect to MCF Tech, rescission of the WCEP Tech subscription and Distribution Agreement and return of the $722,055 WCEP Fee with interest, as well as compensatory damages for any lost opportunities associated therewith;

p. the Megacap parties are bound to any agreements with WCEP and the WCEP Master;

q. the arbitration agreements and the subscription agreements in which they are contained are binding on MCF SpaceX and MCF Tech given that neither received any consideration from WCEP SpaceX or WCEP Tech, respectively, having both been admitted to the WCEP Master; and

r. whether the liability waiver contained in the Tech Company distribution agreement, as well as the WCEP Tech agreement itself, are void by virtue of the mutual mistake of fact admitted to by WCEP in Rotunno's March 19 letter submitted as an exhibit to WCEP's arbitration demand.

115. A declaratory judgment is necessary and appropriate to resolve these controversies and determine the parties' rights and obligations.

WHEREFORE, Plaintiff respectfully requests that the Court enter a declaratory judgment declaring:

a. the Distribution Agreement and its release provision void ab initio due to mutual mistake of material fact;

b. the WCEP SpaceX Operating Agreement and subscription documents voidable at Megacap's election due to fraudulent inducement and material breach;

c.  that WCEP's "0% fee" representations constitute enforceable contractual terms that WCEP materially breached;

d.  that Megacap and MCF SpaceX are entitled to the full allocation of SpaceX shares their capital contributions entitled them to receive, and that a constructive trust be imposed over any such shares currently misallocated or retained by Defendants;

e.  that Megacap and MCF SpaceX are entitled to the full allocation of SpaceX shares their capital contribution entitled them to receive calculated at WCEP's true acquisition price, and that a constructive trust be imposed over the share deficit — being those SpaceX shares or interests traceable to MCF SpaceX's capital contribution currently held by, through, or attributable to the WCEP Master, WCEP Scale-Up 2020, DFJ Fund IX Continuation, L.P., or DFJ Growth 2006 Continuation, L.P., the precise vehicle to be determined by the Court on accounting;

f.  that Goldner possesses no legal authority, standing, or right to interfere with WCEP's distribution obligations to the MCF SpaceX;

g.  that WCEP must distribute SpaceX proceeds immediately to MCF SpaceX without conditioning distributions on Goldner's consent;

h.  that Defendants' fraudulent concealment tolls all applicable statutes of limitations;

i.  that the arbitration clauses are void and unenforceable;

j.  that WCEP's failure to file a Form D for both WCEP SpaceX and WCEP Tech constitutes material breach reveals the governing documents' stated compliance with Regulation D to be intentionally fraudulent;

k.  that Defendants operated as unregistered broker-dealers in violation of securities laws;

l.  that Plaintiff is entitled, at its election, to (i) disgorgement in shares for the SpaceX investment and (ii) rescission and restitution for the MCF Tech investment;

m.  that the Megacap parties are not bound to any agreements with WCEP and the WCEP Master;

n.  that the arbitration agreements and the subscription agreements in which they are contained are not binding on MCF SpaceX and MCF Tech given that neither received any consideration from WCEP SpaceX or WCEP Tech, respectively, having both been admitted to the WCEP Master;

o.  that the liability waiver contained in the Tech Company distribution agreement, as well as the WCEP Tech agreement itself, are void by virtue of the mutual mistake of fact admitted to by WCEP in Rotunno's March 19 letter submitted as an exhibit to WCEP's arbitration demand.

p.  that Plaintiff is entitled to award of such other and further declaratory relief as the Court deems just and proper;

q.  Supplemental relief per statute; and

r.  Costs of litigation.

### COUNT VIII: CONTROL PERSON LIABILITY (Exchange Act § 20(a))
(Against Baranchuk, Lazovsky, and Yushin)

27

116.    Plaintiff re-alleges and incorporates by reference Paragraphs 1 through 79 as if fully set forth herein.

117.    As alleged above, WCEP and the WCEP series entities committed primary violations of Section 10(b) of the Securities Exchange Act of 1934 and SEC Rule 10b-5 in connection with (i) material misrepresentations and omissions regarding the SpaceX "0/0" structure and pricing, (ii) material misrepresentations and omissions concerning Regulation D compliance and required Form D filings for the SpaceX and Tech offerings; and (iii) failing to admit MCF Tech to WCEP Tech and MCF SpaceX to WCEP SpaceX and instead admitting them without notice or consent to the WCEP Master.

118.    At all relevant times, Baranchuk, Lazovsky, and Yushin were controlling persons of WCEP within the meaning of Section 20(a). Each possessed the power to direct or cause the direction of the management and policies of WCEP and its series entities, including authority over offering structure, pricing decisions, fee disclosures, compliance representations, and regulatory filings.

119.    Baranchuk, Lazovsky, and Yushin had the power to control and influence the specific corporate policies and decisions that resulted in the primary securities law violations alleged herein, including the pricing and structuring of the SpaceX transaction and the decision not to file required Form D notices for the SpaceX and Tech offerings

120.    By virtue of their control and involvement, and absent any good-faith defense, Baranchuk, Lazovsky, and Yushin are jointly and severally liable pursuant to Section 20(a) of the Exchange Act for WCEP's violations of Section 10(b) and Rule 10b-5.

WHEREFORE, Plaintiff demands judgment against Baranchuk, Lazovsky, and Yushin for all relief available under Section 20(a) of the Exchange Act, pre-judgment and post-judgment interest, costs, and such other relief as the Court deems just and proper.

Dated this 22nd day of April, 2026.

/s Brad E. Kelsky
Counsel for Plaintiff
Kelsky Law, P.A.
150 S. Pine Island Rd
Suite 300
Plantation, FL 33324
954.449.1400
Fax:  954.449.8986
Primary:  bradkelsky@kelskylaw.com
Secondary:  barbarallinas@kelskylaw.com
FBN:  0059307