**IN THE UNITED STATES DISTRICT COURT FOR THE**
**SOUTHERN DISTRICT OF FLORIDA**

MEGACAP CAPITAL, LLC, in its individual capacity and its representative capacity as General Partner of MEGACAP FUNDS, LP - SPACEX I SERIES and MEGACAP FUNDS, LP - TECH HOLDING,

        Plaintiff,

v.

WEST COAST EQUITY PARTNERS II, LLC, a Delaware series limited liability company; WCEP MANAGEMENT LLC, a Delaware limited liability company; ANTON BARANCHUK, an individual; ALEXANDER LAZOVSKY, an individual; SERGEY YUSHIN an individual; and BLAYKE HALE, an individual,

        Defendants,

_____/

Case No.: 0:26-cv-61179-AHS

**DEFENDANTS WEST COAST EQUITY PARTNERS II, LLC AND WCEP MANAGEMENT LLC'S OPPOSITION TO PLAINTIFF'S EMERGENCY MOTION TO ENJOIN ARBITRATION PROCEEDINGS [D.E. 39]**

Defendants West Coast Equity Partners II, LLC and WCEP Management LLC ("Defendants"), by and through undersigned counsel, and pursuant to this Court's Order Expediting Response [D.E. 41], respectfully submit this Opposition to Plaintiff's Emergency Motion to Enjoin Arbitration Proceedings [D.E. 39] (the "Motion"). In support thereof, Defendants state as follows:

**INTRODUCTION**

As a threshold matter, it is now clear that Mr. Blatt lacks the authority to prosecute an action on behalf of the MegaCap entities and therefore lacks standing. In the absence of Article III standing, this Court lacks jurisdiction to address the merits of the Motion. Although Mr. Blatt bears the burden

1

of establishing standing, he failed to produce any corporate records supporting the claim that he is rightfully vested with the authority to act on behalf of MegaCap Capital, LLC ("MegaCap Capital"), which is the general partner of MegaCap Funds, LP – SpaceX I ("MegaCap Funds"). Defendants, however, were able to obtain the relevant governing documents for the MegaCap entities. The reason Plaintiff failed to produce these documents is self-evident, as they clearly establish that Mr. Blatt is neither a member of MegaCap Capital, nor vested with authority to speak on behalf of MegaCap Capital or MegaCap Funds.

Regarding the merits of the Motion, judicial interference with an ongoing AAA arbitration is not warranted. Plaintiff is not seeking to preserve the status quo; it is instead trying to stop a contractually selected arbitral forum before the arbitrator can decide threshold issues. The governing Subscription Agreement expressly directs **all** disputes to arbitration as set forth in the Operating Agreement, and the Operating Agreement, in turn, requires binding arbitration administered by the AAA under its Commercial Arbitration Rules. Those rules delegate questions of arbitrability to the arbitrator—not this Court.  On June 18, 2026, the AAA announced it was moving forward with the arbitrator selection process and that all issues of arbitrability will be addressed by the arbitration panel once installed. Plaintiff therefore cannot satisfy its burden to obtain the extraordinary remedy of halting the arbitration on an expedited basis.

The Motion also suffers from another threshold defect, as Plaintiff has not filed the arbitration demand it seeks to stop. Without that demand, the Court cannot determine what claims are actually being arbitrated, which parties are named, or whether the requested injunction corresponds to the proceeding Plaintiff seeks to halt.  In any event, Defendants attach the arbitration demand hereto as **Exhibit 1**, which confirms there is no basis to enjoin the arbitration. Section 7 of the Subscription Agreement confirms the Subscriber agrees all disputes must be resolved in accordance with Section

15.8 of the Operating Agreement. Section 15.8 of the Operating Agreement requires binding arbitration. MegaCap Funds, the Subscriber under the Subscription Agreement, and West Coast Equity Partners II, LLC – Series Scale UP SPX 2021C, the counterparty to that agreement, are both parties to the arbitration demand. MegaCap Capital is named in the arbitration only in its representative capacity on behalf of MegaCap Funds. Whether MegaCap Capital is individually bound to arbitrate is not the issue presented by the arbitration demand; the merits of the relief sought in the arbitration is against MegaCap Funds, which is a party to the Subscription Agreement.

Plaintiff's arguments concerning the West Coast entities fare no better. West Coast Equity Partners II, LLC is not named in the arbitration demand, so the Court need not decide whether it may participate in the arbitration. As to WCEP Management, LLC, the arbitration demand makes clear that it proceeds in its capacity as manager of a party to the Subscription Agreement. Regardless, any dispute over whether a particular claimant or respondent is properly before the arbitrator is itself an arbitrability issue for the arbitrator to decide.

Once the governing arbitration provisions are considered, Plaintiff's remaining arguments fall away. Plaintiff's assertion that the arbitration provision is limited to disputes under the Operating Agreement is both textually wrong—the provision expressly reaches Subscription Agreement disputes—and, in any event, is a scope argument for the arbitrator. Nor can Plaintiff avoid arbitration by recasting contract-wide objections as challenges to the arbitration clause. Arguments sounding in fraud, voidness, breach, or failure of performance attack the agreements as a whole, not the arbitration provisions specifically. Under settled Supreme Court and Eleventh Circuit precedent, those issues belong in arbitration.

For all these reasons, Plaintiff cannot satisfy the standard for emergency injunctive relief. A preliminary injunction is an extraordinary and drastic remedy, and Plaintiff bears the burden to

establish each element required for injunctive relief. Plaintiff cannot make that showing. It is unlikely to succeed because the parties delegated arbitrability to the arbitrator; it cannot show irreparable harm merely from proceeding in the arbitral forum the agreements require; and the balance of harms and public interest favor enforcing the arbitration provisions as written.

Therefore, Defendants respectfully request that the Court deny Plaintiff's Emergency Motion to Enjoin Arbitration Proceedings, permit the AAA arbitration to proceed, and grant such further relief as the Court deems just and proper.

## ARGUMENT

I.     **THE COURT SHOULD NOT REACH THE MERITS UNTIL ELI BLATT'S AUTHORITY TO BRING THIS ACTION ON BEHALF OF MEGACAP IS ESTABLISHED**

Before the Court can even reach the arbitration issue, this Court has an obligation to confirm that standing exists before it may proceed to the merits of any claim. *See* Fed. R. Civ. P. 12(b)(1). Plaintiff bears the burden of proving entitlement to extraordinary relief, which necessarily includes establishing that the person purporting to act for Plaintiff has authority to do so, and where such standing is lacking, dismissal under Rule 12(b)(1) is required. *See Flat Creek Transportation, LLC v. Fed. Motor Carrier Safety Admin.*, 923 F.3d 1295, 1300 (11th Cir. 2019); *Ramirez v. Kraft Heinz Foods Co.*, 684 F. Supp. 3d 1253, 1257 (S.D. Fla. 2023) ("If at any point in the litigation the plaintiff ceases to meet all three requirements for constitutional standing, the case no longer presents a live case or controversy, and the federal court must dismiss the case for lack of subject matter jurisdiction") (citing *Fla. Wildlife Fed'n, Inc. v. S. Fla. Water Mgmt. Dist.*, 647 F.3d 1296, 1302 (11th Cir. 2011)).

A determination of a plaintiff's standing "'is a threshold jurisdictional question which must be addressed prior to and independent of the merits of a party's claims.'" *Kleiman v. Wright*, 662 F. Supp. 3d 1247, 1253 (S.D. Fla. 2023) (citing *United States v. Ross*, 963 F.3d 1056, 1062 (11th Cir.

4

2020)). "If there is no Article III standing, the Court lacks subject matter jurisdiction to adjudicate the claim." *Id.* On a factual challenge to subject matter jurisdiction, "'the burden is on the plaintiff to prove that jurisdiction exists.'" *Ryzhov v. Mayorkas*, 634 F. Supp. 3d 1107, 1110 (S.D. Fla. 2022) (citing *OSI, Inc. v. United States*, 285 F.3d 947, 951 (11th Cir. 2002)). The Court will not "'imagine or piece together an injury sufficient to give [a] plaintiff standing when it has demonstrated none.'" *Muransky v. Godiva Chocolatier, Inc.*, 979 F.3d 917, 925 (11th Cir. 2020) (citing *Miccosukee Tribe of Indians of Fla. v. Fla. State Athletic Comm'n*, 226 F.3d 1226, 1229–30 (11th Cir. 2000). Moreover, in weighing a factual attack on standing, "a court is free to consider materials outside the pleadings, and the pleadings are afforded no presumptive truth." *In re Fortra File Transfer Software Data Sec. Breach Litig.*, 749 F. Supp. 3d 1240, 1256 (S.D. Fla. 2024) (citing *Lawrence v. Dunbar*, 919 F.2d 1525, 1529 (11th Cir. 1990)).

### A.    Mr. Blatt Has Failed to Carry His Burden to Establish Standing

It is undisputed that Mr. Blatt has the affirmative obligation to establish his authority to cause MegaCap Funds to file this action and prosecute the pending Motion seeking injunctive relief. Under the governing Limited Partnership Agreement for MegaCap Funds, the only party permitted to act on behalf of MegaCap Funds is its general partner MegaCap Capital. *See* Limited Partnership Agreement of MegaCap Funds, LP, attached hereto as **Exhibit 2**, at Section 5.1. Therefore, Mr. Blatt must provide this Court with documents sufficient to establish his authority to act as the managing member of MegaCap Capital, a Delaware limited liability company. *See* 6 Del. C. Section 18-402.

To date, Mr. Blatt has failed to offer any governing document for MegaCap Capital to establish his role as its managing member—despite Defendants specifically asking for such documents pursuant to the Court's June 12, 2026 Order directing the parties to file all relevant documents by June 17. *See* June 16, 2026 Correspondence Seeking Documents Concerning Authority

and Ownership of MegaCap Entities, attached hereto as **Exhibit 3**. Mr. Blatt failed to submit even the most basic corporate governance documents, such as the operating agreement for MegaCap Capital, the document through which he purportedly removed Mr. Goldner, or _**any**_ document evidencing his election as the sole managing member of MegaCap Capital. Rather, he offers only the argument of his counsel, which is clearly deficient under controlling law. *See TocMail, Inc. v. Microsoft Corp.*, 67 F.4th 1255, 1262 (11th Cir. 2023) (holding that elements of standing must be "'supported in the same way as any other matter on which the plaintiff bears the burden of proof, i.e., with the manner and degree of evidence required at the successive stages of the litigation'") (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992)).

The failure to produce any supporting documentation is even more egregious considering the direct challenge to Mr. Blatt's alleged authority in this and other Courts. In fact, control over MegaCap Capital is currently the subject of an active and unresolved dispute being litigated before another judge of this Court. On June 11, 2026—the day before Plaintiff filed the instant Motion—Marc Goldner, who represents he is a member and controlling principal of MegaCap, filed an Expedited Motion for Temporary Restraining Order and Preliminary Injunction in *Goldner et al. v. Blatt et al.*, Case No. 1:26-cv-23010-KMW (S.D. Fla. June 11, 2026) [D.E. 10], challenging Mr. Blatt's authority to act on behalf of the MegaCap entities. A true and correct copy of Mr. Goldner's Motion for Temporary Restraining Order is attached hereto as **Exhibit 4**. Mr. Goldner has also moved to intervene in this very action, expressly representing to this Court that Mr. Blatt lacked authority to file this lawsuit— a lawsuit Mr. Goldner opposes. *See* Marc J. Goldner's Motion to Intervene and Incorporated Memorandum of Law [D.E. 36].

Even though his authority has been directly challenged, Mr. Blatt has done nothing in this action to affirmatively establish he is the authorized managing member of MegaCap Capital and has

6

the authority to bring this suit on behalf of any MegaCap entity. Therefore, Mr. Blatt has failed to carry his burden and this Court should not proceed to the merits of Plaintiff's Motion until the threshold issue of Mr. Blatt's authority has been resolved.

**B.      Germane Governing Documents Establish Mr. Blatt Lacks Standing**

While Mr. Blatt has failed to supply this Court with documents evidencing his authority, Mr. Goldner has provided governing documents establishing Mr. Blatt is not the managing member. Specifically, these documents include the: (i) Operating Agreement of MegaCap Capital LLC dated July 7, 2021 (the "MegaCap Capital OA"); and (ii) Resolutions Adopted by Written Consent of the Voting Members of the Directors of MegaCap Capital, LLC dated December 1, 2021 (the "Unanimous Written Consent").

Starting with the MegaCap Capital OA, attached hereto as **Exhibit 5**, it clearly states there are three Class A Voting Members: Mr. Blatt (37%), Mr. Goldner (26%) and Mr. Reiter (37%). *See* **Exhibit 5**, ¶ 8. Paragraph 23 makes it clear that all three Class A Voting Members shall collectively constitute the managing member of MegaCap Capital. *Id.* at ¶ 23. On its face, the MegaCap Capital OA reflects Mr. Blatt is at most a minority member of MegaCap Capital who lacks authority to act unilaterally on behalf of the entity. Meaning, he cannot unilateral direct MegaCap Funds to file this action or the instant Motion. Mr. Blatt has failed to produce any resolution or written consent by the board of managers or the Class A Voting Members of MegaCap Capital directing Mr. Blatt to cause MegaCap Funds to prosecute this litigation.

Mr. Blatt has attempted to overcome the clear lack of authority by arguing he unilaterally removed Mr. Goldner as a Class A Voting Member. This argument, however, not only fails to save Mr. Blatt, but dooms his effort to establish standing for two separate reasons.

First, even if Mr. Goldner was removed, Mr. Blatt cannot act without the consent of the remaining Class A Voting Member—Mr. Reiter. Mr. Blatt has failed to produce any resolution or written consent, let alone one signed by Mr. Reiter, authorizing the redemption of  Mr. Goldner's membership interest in MegaCap Capital. The claim to have redeemed Mr. Goldner stands unsupported before this Court, other than by the words of a party, Mr. Blatt, who intentionally withheld relevant documents adverse to his position.

Second, even if Mr. Blatt had the authority to act on behalf of MegaCap Capital and did validly seek to redeem Mr. Goldner, such an act would have been void under the MegaCap OA.  As reflected in the Unanimous Written Consent, attached hereto as **Exhibit 6**, the provisions of the MegaCap OA permitting the forced redemption of a Class A Voting Member were voided in 2021, two years before Mr. Blatt allegedly sought to redeem Mr. Goldner. *See* Exhibit 6. Specifically, the Unanimous Written Consent states:

> NOW, THEREFORE, BE IT RESOLVED … their Class A Membership interests are fully vested, and neither may be removed as a Class A Voting Member or Managers from the Company by any other Member for any reason, nor is any attempted removal in the interim valid.  In the interest of clarity, **that means that all Sections of the operating agreement relating to Redemption of Membership Units or Involuntary Withdrawal are hereby voided … such that no Class A Member can be removed as a Class A member or Manager to any degree by the other Class A Members, and that any such attempted removal shall be void… .**

*See* Exhibit 6, pp. 1-2.

This Court should be troubled by Mr. Blatt's failure to provide Defendants or the Court with documents highly relevant to the issue of standing. One does not get to withhold relevant documents

simply because they undermine a party's position. This lack of candor should seriously undermine the credibility of any statements proffered by or on behalf of Mr. Blatt. These documents now before the Court are fatal to Mr. Blatt's position and establish a clear lack of standing and a lack of jurisdiction by this Court over the present dispute.

**II.     PLAINTIFF CANNOT ESTABLISH LIKELIHOOD OF SUCCESS ON THE MERITS BECAUSE A BINDING AGREEMENT TO ARBITRATE EXISTS**

The threshold question for any court confronted with a challenge to arbitration is whether a valid agreement to arbitrate was formed in the first place. *See Granite Rock Co. v. Int'l Bhd. of Teamsters*, 561 U.S. 287, 296 (2010) ("It is [] well settled that where the dispute at issue concerns contract formation, the dispute is generally for courts to decide"). The Eleventh Circuit applies this framework in a two-step process: the court first resolves any challenge to the formation of the agreement; then it asks whether any remaining challenge is aimed at the arbitration clause specifically or the contract generally. *See Solymar Investments, Ltd. v. Banco Santander S.A.*, 672 F.3d 981, 990 (11th Cir. 2012). If the challenge targets the contract as a whole, rather than the arbitration clause itself, the challenge must be decided by the arbitrator. *See Solymar*, 672 F.3d at 993; *see also Larsen v. Citibank FSB*, 871 F.3d 1295, 1312 n. 12 (11th Cir. 2017). In this case, formation is satisfied because MegaCap Funds executed the Subscription Agreement. Plaintiff's remaining objections are not formation objections; they are scope, applicability, or otherwise contract-wide challenges, which the AAA Commercial Arbitration Rules delegate to the arbitrator.

**A.     The Applicable Agreements Contain Valid, Binding Arbitration Provisions**

Here, the record leaves no doubt that a valid, binding agreement was formed between the parties. MegaCap Funds, the entity which Plaintiff represents and that actually invested capital in the SpaceX Fund, executed a Subscription Agreement on August 31, 2021, pursuant to which it invested $375,260 in the SpaceX Fund. In Plaintiff's own Answering Statement filed with the AAA on June

15, 2026, Plaintiff acknowledges the existence of the Subscription Agreement. A true and correct copy of the Answering Statement is attached hereto as **Exhibit 7**. Section 7 of the Subscription Agreement incorporates and points to Section 15.8 of the Operating Agreement. Section 15.8 requires binding arbitration administered by AAA under its Commercial Arbitration Rules.

Plaintiff argues the arbitration clause located within the Subscription Agreement is "wholly inapplicable" because, in Plaintiff's view, MegaCap Funds (as well as MegaCap Funds, LP – Tech Holding) was not "admitted as a member" of the fund. However, this argument conflates issues of formation with issues of scope and applicability reserved exclusively for the arbitration panel.  More to the point, the entirety of Plaintiff's claim is premised on the notion that it invested in the fund through the Subscription Agreement and is seeking to enforce those contract rights. Inherent in those contract rights is the obligation to submit all disputes to binding arbitration.

> **B.** **The Arbitrator Has Jurisdiction Over Challenges to the Parties' Agreement Because the Incorporation of AAA Commercial Arbitration Rules Delegates All Issues of Arbitrability to the Arbitrator**

Plaintiff's Motion must also be denied because challenges to the broader contract—such as fraud in the inducement, voidability, illegality, or other attacks on the contract as a whole—generally go to the arbitrator unless the party specifically challenges the arbitration clause itself.  Section 15.8 of the Operating Agreement provides that disputes "will be settled by binding arbitration…administered by the American Arbitration Association under and in accordance with its Commercial Arbitration Rules." The Eleventh Circuit has repeatedly held that such incorporation of the AAA Commercial Arbitration Rules constitutes clear and unmistakable evidence that questions of arbitrability have been delegated to the arbitrator. *See Terminix International Co. v. Palmer Ranch Ltd. Partnership*, 432 F.3d 1327, 1332–33 (11th Cir. 2005) ("[b]y incorporating the AAA Rules…the parties clearly and unmistakably agreed that the arbitrator should decide whether the arbitration clause is valid"); *JPay, Inc. v. Kobel*, 904 F.3d 923, 937–39 (11th Cir. 2018) (emphasizing that where the

agreement provides for arbitration "in accordance with" AAA rules, the delegation of arbitrability questions to the arbitrator is clear and unmistakable, and the court must enforce that delegation). *See also Attix v. Carrington Mortgage Services, LLC*, 35 F.4th 1284, 1289 (11th Cir. 2022) (concluding that the arbitrator had jurisdiction over questions of arbitrability where the parties' agreement incorporated by reference an AAA provision stating that "[t]he arbitrator shall have the power to rule on his or her own jurisdiction").

Here, Plaintiff's arguments actually go to the agreement as a whole, not specifically to the arbitration clause itself. Plaintiff does not contend Defendants tricked it into signing an arbitration provision or that the arbitration clause was the product of fraud, duress, or unconscionability directed at the clause itself. Rather, MegaCap advances broad contract challenges that must be referred to the arbitrator. *See Solymar*, 672 F.3d at 993; *Larsen*, 871 F.3d at 1312 n. 12. Further proving this point, Plaintiff filed its responsive pleading with the AAA in which it advanced the identical arguments raised before this Court, told the AAA this Court would be addressing arbitrability, submitted a copy of the pending TRO and requesting the AAA abate the proceeding. *See* Exhibit 7. On June 18, the AAA responded by initiating the arbiter selection process and confirming that the arbitration panel will resolve MegaCap's arbitrability challenges as is required by the AAA Commercial Arbitration Rules. *See* June 18, 2026 AAA Letter Initiating Arbitrator Selection and Referring Arbitrability to the Panel, attached hereto as **Exhibit 8**.

Accordingly, this Court cannot even reach the question of whether the arbitration clause applies to certain Plaintiffs or Defendants or whether this dispute falls within the scope of the arbitration provision. Those are questions for the arbitrator. Because Plaintiff cannot show this Court is the proper forum to decide those issues in the first instance, Plaintiff cannot establish a substantial likelihood of success on the merits of its request to enjoin the arbitration.

III.     THE EQUITIES FAVOR ARBITRATION

The equities also favor allowing the arbitration to proceed. Plaintiff seeks the extraordinary remedy of stopping a contractually selected dispute-resolution process—before the arbitrator has even had an opportunity to address the issues Plaintiff raises. That relief would prejudice Defendants by depriving them of the forum and procedure for which the parties bargained, delaying resolution of the parties' dispute, and inviting duplicative litigation over issues that the agreements assign to arbitration. By contrast, Plaintiff identifies no cognizable irreparable harm from proceeding before a neutral AAA arbitrator. The ordinary burdens of participating in arbitration—time, expense, and the need to present arguments to the arbitrator—do not constitute irreparable injury, particularly where Plaintiff may present its arbitrability and merits arguments in that forum and, if appropriate, seek judicial review after an award is entered. *See Klay v. United Healthgroup, Inc.*, 376 F.3d 1092, 1112 n. 20 (11th Cir. 2004) ("Even if a plaintiff does…raise the justiciability issue before the arbitration panel, the time and expense he incurs in doing so simply does not constitute irreparable injury. 'Mere injuries, however substantial, in terms on money, time and energy necessarily expended in the absence of a stay, are not enough'") (citing *Sampson v. Murray*, 415 U.S. 61, 90 (1974)). The public interest points in the same direction. Courts enforce arbitration agreements because parties are entitled to the benefit of their bargain and because arbitration serves the important interests of efficiency, finality, and streamlined dispute resolution. *See AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 344 (2011) (FAA enforces arbitration agreements according to their terms to facilitate streamlined proceedings; "[t]he point of affording parties discretion in designing arbitration processes is to allow for efficient, streamlined procedures"); *Caley v. Gulfstream Aerospace Corp.*, 428 F.3d 1359, 1367 (11th Cir. 2005) (purpose of the FAA was to provide parties with a speedier and less costly alternative to litigation). Granting Plaintiff's requested injunction would invert those principles by permitting a

12

party to derail an agreed arbitral process through an emergency motion based on arguments that are, at minimum, for the arbitrator to decide in the first instance. The better course—and the equitable one—is to deny the injunction, allow the AAA proceeding to move forward, and leave Plaintiff to pursue any properly preserved objections through the arbitral process and the limited judicial review available thereafter.

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that this Court deny Plaintiff's Emergency Motion to Enjoin Arbitration Proceedings [D.E. 39], allow the AAA arbitration to proceed as the parties contracted, and grant such further relief as the Court deems just and proper.

Dated: June 19, 2026                                   Respectfully submitted,


**K&L GATES LLP**

*/s/ Jonathan B. Morton*
Jonathan B. Morton
Florida Bar No. 956872
Jonathan.Morton@klgates.com
Southeast Financial Center
200 S. Biscayne Boulevard, Ste. 3900
Miami, FL 33131-2399
Telephone:     305-539-3300
Facsimile:     305-358-7095

*Attorney for Defendants West Coast Equity Partners II, LLC and WCEP Management LLC*

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system, which will send a notice of electronic filing to all counsel or parties of record on this 19th day of June, 2026.

Brad E. Kelsky
Kelsky Law P.A.
150 S. Pine Island Road
Suite 300
Plantation, FL  33324
Email:  bradkelsky@kelskylaw.com
*Attorney for Plaintiff*