UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 26-61179-CIV-SINGHAL

MEGACAP CAPITAL, LLC, in its individual capacity and its representative capacity as General Partner of MEGACAP FUNDS, LP - SPACEX I SERIES and MEGACAP FUNDS, LP - TECH HOLDING,

Plaintiff,

v.

WEST COAST EQUITY PARTNERS II, LLC, *et al*.,

Defendants.
______________________________________/

**ORDER**

**THIS CAUSE** is before the Court on Plaintiff's Emergency Motion for Temporary Restraining Order and Preliminary Injunction (the "Motion"). (DE [14]). On May 18, 2026, Plaintiff filed the Motion on an emergency basis, asking the Court to impose a constructive trust and preliminary injunction to protect its investment in Defendants' SpaceX-related special purpose vehicle ("SPV"). The Court declined to treat the Motion as an emergency but nevertheless expedited the briefing schedule in light of SpaceX's impending initial public offering ("IPO"). (DE [16]). The Motion is now fully briefed, and an in-person hearing was held on June 24, 2026. Having carefully considered the issues, the Court concludes that, because Plaintiff has failed to establish that it will suffer irreparable harm in the absence of immediate relief, the Motion is due to be denied.

## I. BACKGROUND

### A. Megacap's SpaceX Transaction

Plaintiff is the general partner of Megacap Funds, LP – SpaceX I ("MCF SpaceX"), an SPV established to give its investors exposure to pre-IPO shares of SpaceX. (DE [32] pp. 1, 11). To that end, in August 2021, Plaintiff (through MCF SpaceX) entered into a subscription agreement by which MCF SpaceX became a member of West Coast Equity Partners II LLC – Series Scale-Up SPX 2021C ("WCEP SpaceX"), an entity created as a series of Defendant West Coast Equity Partners II LLC ("WCEP Master").[1] (DE [28-1]).

To execute the WCEP SpaceX Subscription Agreement, MCF SpaceX wired $375,260 to an account held in the name of WCEP Master as an intended capital contribution to WCEP SpaceX. (DE [14] p. 3). According to Plaintiff, this transaction was structured on an "all-in" basis of $580.00 per share, meaning MCF SpaceX would pay zero upfront fees, zero management fees, and zero "carry" in favor WCEP SpaceX or its affiliates. *Id.* The WCEP SpaceX Private Placement Memorandum ("PPM") confirms this arrangement, stating "[t]he Manager will not receive any commissions or fees for the sale of interests pursuant to the Memorandum." (DE [28-6] p. 2). In addition to the Subscription Agreement and PPM, MCF SpaceX's investment in WCEP SpaceX is governed by the terms of the WCEP SpaceX LLC Operating Agreement. (DE [47-4]).

WCEP SpaceX, however, did not own any shares of SpaceX itself. Thus, the WCEP SpaceX PPM provided that WCEP SpaceX could acquire "Portfolio Company Securities" (i.e. SpaceX common stock) in one of three ways: (1) directly from SpaceX in a private placement; (2) directly from existing shareholders on the secondary market; or (3) "indirectly through a subscription for equity interests in a special purpose vehicle(s)

[1] Delaware law authorizes the creation of a designated "series" of a Delaware limited liability company, with "separate rights, powers or duties" from the master LLC. *See* 6 Del. C. § 18-215(a).

sponsored by existing shareholder(s).” (DE [28-6] p. 4). WCEP SpaceX apparently selected the third option and acquired an indirect interest in pre-IPO SpaceX shares via an investment in DFJ Fund IX Continuation, L.P. (“DFJ Fund IX”), an unaffiliated entity that is not a party to this action. (DE [24] p. 5).[2]

On September 8, 2021, WCEP Master (on behalf of WCEP SpaceX) executed an Admission Agreement whereby it became a Class B Limited Partner in DFJ Fund IX. (DE [47-1]). DFJ Fund IX’s Limited Partnership Agreement (“LPA”) listed 2,642,838 pre-IPO SpaceX shares valued at $419.99 per share among its portfolio investments. (DE [28-5] p. 76). WCEP Master made an initial capital contribution of $8.5 million, gaining indirect exposure to DFJ Fund IX’s pool of SpaceX equity through its partnership interest in the fund. *Id.* That Class B Partnership Interest is subject to a 17.5% carried interest in favor of the general partner of DFJ Fund IX. *Id.* p. 20.

Based on MCF SpaceX’s $375,260 capital contribution to the WCEP SpaceX SPV at a price of $580.00 per share, MCF SpaceX became entitled to an indirect economic interest equal to 647 shares of SpaceX common stock.[3] (DE [24] p. 7). However, because the DFJ Fund IX Class B Partnership Interest was held in the name of WCEP Master, Defendants explain that an additional leg of the deal structure was required. Accordingly, WCEP Master allocated an “internal beneficial economic interest in the relevant portion” of the Class B Partnership Interest to WCEP SpaceX large enough to provide MCF SpaceX with an interest equivalent to 647 shares, “while also reserving sufficient proceeds to satisfy DFJ Fund IX’s underlying carried interest.” *Id.* The result is a layered

---

[2] The Court is puzzled by Defendants’ counsel’s email to Plaintiff’s counsel, dated March 19, 2026, which detailed a vastly different deal structure, timeline, and source of WCEP’s interest in SpaceX common stock. (DE [28-3]). The parties, however, agreed that the Court could resolve the Motion on the documents submitted in evidence. Considering there are no questions raised as to the validity of those documents, the Court is left with little choice but to base its analysis strictly on the contracts provided.

[3] SpaceX common stock subsequently underwent a 10:1 stock split. Accordingly, MCF SpaceX’s interest became equivalent to 6470 shares.

transaction in which MCF SpaceX has indirect exposure to SpaceX common stock that is at least two levels removed.

B. Megacap's Internal Dispute

To complicate matters further, the Court is now aware that there is an ongoing dispute as to the authorized members of Plaintiff Megacap Capital, LLC. In its Complaint, Plaintiff represented that Eli M. Blatt ("Mr. Blatt") was the sole Managing Member of Megacap. (DE [1] ¶ 1). Yet within an hour of the Court's first scheduled hearing on the Motion on June 10, 2026, the Court received a motion to intervene (DE [36]) filed by Marc J. Goldner ("Mr. Goldner"), a former business partner of Mr. Blatt and member of Megacap.

To simplify this long-running internal dispute, Mr. Blatt alleges Mr. Goldner was properly withdrawn as a member of Megacap in January 2023, and therefore Mr. Goldner no longer has any interest or authority in the entity. (DE [44] p. 19). Meanwhile, Mr. Goldner insists that Mr. Blatt lacked authority to unilaterally remove him from the LLC and his attempts to do so may have resulted in Mr. Blatt's own withdrawal. *See* (DE [36]; [40-2]). Indeed, it has now come to the Court's attention that there are at least three related federal cases in this District involving the contested control of Megacap.[4] In one of those cases, Mr. Goldner directly challenges Mr. Blatt's ongoing authority to act on behalf of the entity. *Goldner v. Blatt*, 26-cv-23010-KMW (DE [14]).

Naturally, this dispute has spawned significant concerns (and briefing) regarding Mr. Blatt's standing to initiate the present action on behalf of Megacap. (DE [40]; [43]; [44]; [49]; [50]). Defendants now maintain that the Court should decline to hear the merits of Plaintiff's claims until Mr. Blatt's authority, or lack thereof, is firmly established. *See* (DE

[4] *Goldner v. Blatt*, Case No. 26-cv-23010-KMW; *Blatt v. Goldner*, Case No. 26-cv-80004-DPG; *Megacap Capital LLC v. Goldner*, Case No. 24-cv-24385-KMM.

[40] p. 3). But interestingly, it does not appear that the ongoing dispute between Mr. Blatt and Mr. Goldner is news to Defendants. In fact, in July 2023, Defendants allegedly wrote to Mr. Goldner, stating "WE CONFIRM THAT WE WILL NOT BE ABLE TO RELEASE ANY SHARES OR, IN CASE OF A LIQUIDITY EVENT, ANY PROCEEDS FROM SALE OF SHARES OF SPACEX TO MEGACAP UNTIL ALL INVOLVED PARTIES UNANIMOUSLY REACH AN AGREEMENT OR SETTLEMENT." (DE [14] p. 4). This letter, which Plaintiff categorizes as an anticipatory repudiation of Defendants' contractual obligations, now forms part of Plaintiff's theory that it faces irreparable harm in the absence of immediate relief. *Id.*

C. Megacap's Securities Fraud Allegations

On April 22, 2026, Plaintiff filed a seven-count Complaint alleging both state law fraud and violations of the Securities Exchange Act arising from MCF SpaceX's investment in WCEP SpaceX (DE [1]).[5] While the Complaint incorporates a number of factual allegations, the alleged fraud boils down to two main purported misrepresentations.

First, Plaintiff contends that Defendants concealed an embedded markup in the SpaceX share price they offered to MCF SpaceX by intentionally misrepresenting WCEP Master's own acquisition price. *Id.* ¶¶ 97-98. Plaintiff insists that Defendants acquired an interest in SpaceX common stock at $419.99 via DFJ Fund IX, then turned around and sold derivative SpaceX interests to MCF SpaceX at $580.00, despite marketing the transaction as coming with zero management fees and zero carried interest." *Id.* ¶ 12.

Second, Plaintiff alleges that Defendants misrepresented the ownership structure of the SpaceX transaction and the entity to which MCF SpaceX was admitted. *Id.* ¶¶ 68-

[5] Though not relevant for purposes of the Motion, the Complaint also alleges securities fraud in a second transaction involving a WCEP Neuralink SPV.

79. MCF SpaceX executed a Subscription Agreement to become a member of WCEP SpaceX, a series of WCEP Master. But MCF SpaceX wired funds to WCEP Master (rather than the series), and Defendants have since issued yearly K-1 tax forms from WCEP Master. Thus, Plaintiff maintains that MCF SpaceX was never actually admitted to the WCEP SpaceX SPV, and instead was admitted as a member of WCEP Master, a multi-asset master fund. *Id.* ¶ 71. As a result, Plaintiff alleges that MCF SpaceX's capital has been commingled with other investments in WCEP Master and continuously diluted by new admissions to the master fund. Because Defendants' pool of SpaceX equity is fixed, Plaintiff believes Defendants now have a "structural insolvency with respect to SpaceX shares" and will not be able to satisfy its contractual commitments to MCF SpaceX. (DE [1] ¶¶ 72-74).

## II. LEGAL STANDARD

To obtain a preliminary injunction, the moving party must demonstrate "(1) a substantial likelihood of success on the merits; (2) that irreparable injury will be suffered if the relief is not granted; (3) that the threatened injury outweighs the harm the relief would inflict on the non-movant; and (4) that entry of the relief would serve the public interest." *Schiavo ex. rel Schindler v. Schiavo*, 403 F.3d 1223, 1225–26 (11th Cir. 2005). It is well established that in this Circuit, a "preliminary injunction is an extraordinary and drastic remedy not to be granted unless the movant clearly establishes the burden of persuasion as to the four requisites." *Am. C.L. Union of Fla., Inc. v. Miami-Dade Cnty. Sch. Bd.*, 557 F.3d 1177, 1198 (11th Cir. 2009) (quotation omitted). Failure to establish any one of the four criteria is fatal. *Id.*

## III. DISCUSSION

### A. Standing

Because the Motion is due to be denied on the merits, the Court will assume, without deciding, that Mr. Blatt has authority to act on behalf of Plaintiff. The Court notes, however, Plaintiff's conspicuous failure to notify the undersigned of ongoing litigation that directly bears on the relief Plaintiff seeks here. Specifically, Plaintiff asks this Court to declare that "Goldner possesses no legal authority, standing, or right to interfere with WCEP's distribution obligations to the MCF SpaceX." (DE [1] p. 27). But this case, brought against defendants with little involvement in Mr. Blatt and Mr. Goldner's litigious history, strikes the Court as a peculiar forum to adjudicate that long-standing internal dispute. Thus, without weighing in on the control of Megacap as an entity, the Court will turn to the merits of the Motion.

### B. Preliminary Injunction

Plaintiff moved for both a temporary restraining order and preliminary injunction on an emergency basis. (DE [14]). The Motion requests three main forms of relief: (1) a constructive trust over all SpaceX-related assets currently held by or attributable to Defendants, (2) a freeze on any distribution or other dissipation of those SpaceX-related assets, and (3) an injunction preventing Defendants from admitting new investors to WCEP Master. *Id.* p. 12. Considering the "standard for issuing a temporary restraining order is the same as that applied when issuing a preliminary injunction", the Court will analyze the two together. *Chanel, Inc. v. 2012chanelbag.net*, 2012 WL 12845874, at *3 (S.D. Fla. July 5, 2012).

As discussed above, Plaintiff's failure to establish any one of the four requisites for a preliminary injunction is fatal to the Moton. *See Am. C.L. Union of Fla., Inc.*, 557 F.3d at 1198. It is often said that "the most common failure is not showing a substantial

likelihood of success on the merits." *Id.* In this case, however, the Court finds the lack of irreparable harm dispositive.

i. Irreparable Harm

"A showing of irreparable harm is 'the *sine qua non* of injunctive relief.'" *Ne. Fla. Chapter of Ass'n of Gen. Contractors of Am. v. City of Jacksonville, Fla.*, 896 F.2d 1283, 1285 (11th Cir. 1990) (quoting *Frejlach v. Butler*, 573 F.2d 1026, 1027 (8th Cir.1978)). The Eleventh Circuit has consistently held that the alleged injury "must be neither remote nor speculative, but actual and imminent." *Siegel v. LePore*, 234 F.3d 1163, 1176 (11th Cir. 2000). Further, if an injury can be remedied by an award of monetary damages, it is not irreparable for purposes of injunctive relief. *SME Racks, Inc. v. Sistemas Mecanicos Para, Electronica, S.A.*, 243 F. App'x 502, 504 (11th Cir. 2007).

The issue of whether an award of monetary damages can make Plaintiff whole comes down to the nature of what MCF SpaceX was contractually promised. Plaintiff insists that, according to the governing documents, it was entitled to receive the specific SpaceX shares currently held by DFJ Fund IX. (DE [32] p. 10). In its words, the investment structure "expressly contemplate[s] and authorize[s] in-kind distributions of shares." *Id.* Thus, on Plaintiff's understanding of the deal, once the SpaceX shares are no longer subject to a post-IPO lockup period, DFJ Fund IX will make an in-kind distribution of shares to Defendants, who will then (Plaintiff hopes) make an in-kind distribution of shares to MCF SpaceX. Accordingly, no monetary remedy will suffice, as MCF SpaceX is entitled to the specific securities held by DFJ Fund IX, and any liquidation of those shares would destroy the tax-advantages of the deal. *Id.*

To be sure, there are provisions across the transaction documents that "contemplate" in-kind distributions of shares. But when read together, it is by no means certain that MCF SpaceX would receive the specific shares held by DFJ Fund IX, rather

than their cash equivalent. Starting with the WCEP SpaceX Private Placement Memorandum, Section 1 provides that "[d]istributions may be composed of (i) Portfolio Company Securities; or (2) cash or other freely transferable securities at times and intervals as the Manager may determine." (DE [28-6] p. 5). Meanwhile, Section 4 (explaining the fund's investment) states:

> The Fund intends to hold the Portfolio Company Securities until receipt by the Fund of a material amount of cash, or non-cash assets, that may readily be transferred or liquidated for cash received by the Fund in respect of Portfolio Company Securities held by the Fund, after which the Fund intends to distribute to the Members as soon as practicable the net proceeds (whether in the form of cash or other securities) realized by the Fund in connection with the wind-down of its investment in the Portfolio Company Securities, or, in the event that its investment in the Portfolio Company Securities has not been fully liquidated, the Portfolio Company Securities themselves.

*Id.* p. 10. Turning to the WCEP SpaceX LLC Operating Agreement, which governs MCF SpaceX's membership in the fund, two provisions confirm this arrangement. First, Section 7.4 (Form of Distributions) provides:

> Distributions pursuant to this Article 7 will be comprised of (i) Portfolio Company Securities, and/or (ii) Distributable Cash or other securities if and to the extent that the Fund receives Distributable Cash or other securities in exchange for Portfolio Company Securities.

(DE [47-4] p. 13). And second, Section 1(b) defines "Distributions" as "the transfer of money or property by the Fund to one or more Members with respect to their Interests, without separate consideration." *Id.* p. 4. Clearly, these provisions establish a contractual relationship between MCF SpaceX and WCEP SpaceX in which distributions can be made in the form of cash or securities.

Moreover, it is not even certain that WCEP SpaceX itself would necessarily receive the specific shares of SpaceX. WCEP's partnership interest in DFJ Fund IX is governed by the DFJ Fund IX LPA. (DE [28-5]). Section 7.5(a) of that agreement provides:

> Subject to the other provisions of this Agreement, at the discretion of the General Partner, distributions of Marketable Securities of the Partnership may be made in kind to the Partners in proportion to their respective Capital Account balances.

*Id.* p. 30. As Plaintiff notes, this evidently "contemplates" in-kind distributions of shares from DFJ Fund IX. But immediately above that provision, Section 7.4(b) states:

> The General Partner may distribute to the Partners the cash proceeds of any sale, refinancing or similar transaction involving a portfolio investment to all Partners in proportion to their respective Capital Account balances.

*Id.*[6] And importantly, the "General Partner" referred to is DFJ Fund IX Continuation Partners, L.P., an entity over which Defendants have no control. (DE [24] p. 4). Therefore, the decision whether to distribute cash or shares appears to be fully within the discretion of the DFJ Fund IX manager.

In sum, the Court's review of the transaction documents submitted in evidence reveals a structure in which MCF SpaceX was never guaranteed to receive the specific shares of SpaceX common stock currently held by DFJ Fund IX. Rather, it is entirely possible under the terms of the agreement that MCF SpaceX would receive distributions in cash instead. Consequently, the Court sees no reason why monetary damages would not be sufficient to remedy Plaintiff's alleged injury. And as discussed above, where there is an adequate monetary remedy, there is no irreparable harm. *SME Racks, Inc.*, 243 F. App'x at 504 (11th Cir. 2007).

Somewhat counterintuitively, Plaintiff argues that the subscription documents between MCF SpaceX and WCEP SpaceX are void, and therefore it *has no* valid contract with Defendants. (DE [14] p. 7). This theory is twofold. First, because Plaintiff wired funds

[6] While both parties cite Section 7 of the DFJ Fund IX LPA as being applicable to the transaction (DE [32] p.10; [24] p. 9), the Court is cognizant of Section 4.4, which provides: "The provisions relating to distributions set forth in Sections 7 and 10 (or elsewhere in this Agreement) shall not apply with respect to the Class B Sub-partnership." (DE [28-5] p. 20). But that does not help Plaintiff's cause, as Section 4.4 *only* provides for cash distributions.

to WCEP Master instead of WCEP SpaceX, Plaintiff alleges that the contracts fail for lack of consideration. *Id.* p. 6. Second, Plaintiff contends that MCF SpaceX was only admitted as a member of WCEP Master, as confirmed by the yearly K-1s. The Court is not persuaded that either fact voids the entire contractual framework and the resulting contractual analysis discussed above.

As to the first point, the transaction documents expressly discuss funds being held at the master level rather than the series, all "within what is technically a single entity." (DE [28-6] p. 12). Turning back to the WCEP SpaceX Operating Agreement, Section 10.3 states:

> All funds of the Fund will be deposited with banks or other financial institutions in the account or accounts of the Master LLC or the Fund as may be determined by the Manager who will ensure records are maintained for the Fund assets associated with the Fund separately from the assets of any other Person.

(DE [32-2] p. 16). Defendants also submitted WCEP Master Cap Table documents illustrating the segregation of assets between the distinct series of the Master LLC (DE [47-5]; [47-6]).

Further, Delaware law authorizes precisely this type of entity. 6 Del. C. § 18-215(b) states that "[a]ssets associated with a protected series may be held directly or indirectly, including in the name of such series [or] in the name of the limited liability company." Moreover, that section goes on to provide that records that "reasonably identify" the assets held by a series "will be deemed to account for the assets associated with such series separately from the other assets of the limited liability company." 6 Del. C. § 18-215(b). On the record before the Court, it appears Defendants have done just that.

That brings us to the issue of the K-1s. Plaintiff makes much of the fact that, between 2021 and 2025, Defendants issued annual K-1 forms in the name of WCEP Master, rather than WCEP SpaceX. (DE [14] pp. 3-4). According to Plaintiff, the K-1s are

the "only source of truth" as to which entity MCF SpaceX was actually admitted. *Id.* Not so. The WCEP SpaceX Subscription Agreement and Operating Agreement evidence MCF SpaceX's membership in WCEP SpaceX. Indeed, the Subscription Agreement explicitly provides that the "Subscriber will be admitted as a Member in the Fund at the time this Subscription is accepted and executed by the Manager, and the Subscriber hereby irrevocably agrees to be bound by the Operating Agreement *as a Member of the Fund* . . . ." (DE [28-1] p. 2) (emphasis added).

To be clear, certain provisions of the documents do suggest that the K-1s would be provided by WCEP SpaceX.[7] But even granting that Defendants breached the contract by issuing K-1s at the WCEP Master level, the Court is aware of no reason why Defendants' *own breach* of a tax reporting provision would relieve them of their remaining contractual obligations. In short, the Court concludes that the parties' contracts, not the K-1 forms, confirm that MCF SpaceX was admitted as member to WCEP SpaceX.

## IV. CONCLUSION

Plaintiff's failure to establish any one of the four requirements for injunctive relief mandates that the Motion be denied. Here, Plaintiff has failed to show that it will suffer irreparable harm because it has an adequate monetary remedy. Accordingly, it is hereby

**ORDERED AND ADJUDGED** that Plaintiff's Emergency Motion for Temporary Restraining Order and Preliminary Injunction (DE [14]) is **DENIED**.

**DONE AND ORDERED** in Chambers, Fort Lauderdale, Florida, this 13th day of July 2026.

RAAG SINGHAL
UNITED STATES DISTRICT JUDGE

[7] For example, the WCEP SpaceX PPM provides that the "Fund will file an annual information return on IRS Form 1065 and will provide information on Schedule K-1 to each Member . . . ." (DE [28-6] p. 14).

Copies furnished counsel via CM/ECF