UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 26-CV-61179

MEGACAP CAPITAL LLC,

Fort Lauderdale, Florida

Plaintiff(s),

June 24, 2026

WEST COAST EQUITY PARTNERS LLC,

Defendant(s).

---

MOTION HEARING
BEFORE THE HONORABLE RAAG SINGHAL
UNITED STATES DISTRICT JUDGE

APPEARANCES:

FOR THE PLAINTIFF(S): KELSKY LAW P.A., by:
Benjamin L. Kelsky, Esq.
Brad E. Kelsky, Esq.
150 S. Pine Island Road, Suite 300
Plantation, Florida 33324

Stanley Quinn Casey, Esq.
501 NE 31st Street, Suite 1704
Miami, Florida 33137

FOR THE DEFENDANT(S): K&L GATES, by:
Jonathan Morton, Esq
200 S. Biscayne Blvd., 39th Floor
Miami, Florida 33131

K&L GATES, by:
Steven L.Caponi, Esq
600 N. King Street, Suite 901
Washington DC 19801

ALSO PRESENT: Eli Blatt

REPORTED BY: Ellen A. Rassie, RMR-CRR
Federal Official Court Reporter
to the Honorable Rodney Smith
299 E. Browaed Blvd., Room 207-C
Fort Lauderdale, Florida 33301

(Called to the order of the court at 9:55 a.m.)

THE COURTROOM DEPUTY: The United States District Court for the Southern District of Florida is now in session. The Honorable Raag Singhal presiding.

THE COURT: Hey, everyone. Good morning. Please have a seat. I just need to sign in to Zoom on my computer and then we can get started up.

(Short pause.)

THE COURT: Okay. Folks, we're here this morning this on Megacap Capital LLC versus West Coast Equity Partners LLC. We're here for our motion for temporary restraining order and preliminary injunction hearing, and I think we've got a lot of things to speak about today.

We've got counsel here in court as well as a group on the Zoom feed, so let me get appearances from who's in court, who's really going to be our speakers today.

First, for Megacap.

MR. KELSKY: Good morning, your Honor. Brad Kelsky and Ben Kelsky on behalf of Megacap.

THE COURT: Okay. Good to see you both. And how about for West Coast Equity Partners.

MR. MORTON: Jonathan Morton and Steve Caponi.

THE COURT: Good to see you both, as well.

MR. MORTON: Thank you.

THE COURT: All right. So, when we left off, we had

spoken about really three baskets of issues. Standing, arbitration, and then, of course, the TRO and preliminary injunction.

So my understanding when we left off, was that we were going to have legal argument today that everyone agreed that the papers were sufficient. That if there were any additional papers that we were going to deal with, they would be filed by the 17th of June.

We come in today, the 24th, I'm getting filings even until this morning. I just want to make sure that everyone's on the same page. I got some filings on standing. I would like to give you guys an opportunity to make some argument as to that, and then to turn to the other issues.

But I will just kind of put it out there, if I get a filing from lawyers in a case that's 4,000 pages long without a brief that explains what the 4,000 pages are, I just assume not use up the computer space to house the 4,000 pages, I'm not reading even page 1 of that.

So, the way that learned to practice law is a brief is more important than the documents. If someone files documents without a brief, they're basically saying, hey, Judge, I don't care about my case. You figure it out. So, I'm not really into a 4,000 page filing with no brief attached.

Given that, what's your all's position on standing? I've got now some evidence that came in after the 17th. I've

got motions to strike. I've got a witness list that came in yesterday. I kind of like the lawyers to own the case. I don't like to micromanager. If you are telling me that the papers are sufficient, I'm going on the papers. If the papers aren't sufficient, do we need to take evidence. Mr. Kelsky.

MR. KELSKY: Would you prefer me here?

THE COURT: Doesn't matter, just so my court stenographer can hear you.

MR. KELSKY: We believe, your Honor, that the papers are sufficient literally on everything. We believe the standing issue --

THE COURT: Good enough. Good enough. Then Mr. Morton, Mr. Caponi, you agree that the papers are sufficient?

MR. CAPONI: Absolutely, your Honor.

THE COURT: Maybe the hearing won't be as rough as I thought. We've got agreement right off the top, that the papers are enough.

In terms of some argument as to standing, I think that this kind of came from Mr. Casey representing Mr. Goldner in terms of a potential standing issue. But obviously, we deal with cases and controversies, we deal with issues where the parties do have standing.

I suppose the argument is that Mr. Blatt doesn't have authority to bring an action on behalf of Megacap? Is that kind of where we are? I mean, not from your side, Mr. Kelsky.

Obviously you're filing so yeah, you believe there's standing but is that where we are on your side, Mr. Caponi?

MR. CAPONI: Yes, your Honor. It's two things. Mr. Blatt doesn't have authority. Mr. Goldner is claiming he has authority. They each want to go down different paths, so, for example, your Honor, there's -- we'll get to it when we get to argument, there's indemnification language, so my standing here today diminishes the return on in investments to Megacap because they have to pay -- indemnify the funds.

So you have one member saying don't waste our money and one spending the money, so we have a fundamental issue. I'm not sure it involves me because if there's no controversy I don't need to be here but it's not necessarily my fight.

THE COURT: But let me ask you this. I mean, as far as my understanding of the law, let's say you have an LLC. A suit can be brought by a managing partner, by an officer or director, by a lawyer, but is there anything that says that all of the managing partners have to be in unison in bringing a suit?

MR. CAPONI: Your Honor, it depends on the LLC agreement. This agreement provides that it's run by the Class A members are each managers, and they -- at least under the LLC agreement that I obtained a copy of, there were three of them so it requires a majority vote of those three to act on behalf of the entity.

THE COURT: And the three being Blatt, Goldner and who?

DMR. CAPONI: Roderyck. Let me find the name for you real quick, your Honor.

MR. KELSKY: They're talking about Roderyck Reiter, your Honor, but Mr. Reiter was withdrawn with the consent of all the members, that being Mr. Blatt, Mr. Goldner, and Mr. Reiter. He was withdrawn for consideration. That is actually an exhibit that was uploaded by Mr. Casey which I understand your Honor has not read.

THE COURT: I'm not saying I didn't read it. That's part of the problem. I read about if we don't do this, someone is come and break your legs. I read that.

MR. KELSKY: It's Exhibit 9 in what was submitted -- the actual redemption is in Exhibit 9 and our position as has been set forth exclusively -- significantly in the affidavit is that Mr. Goldner himself was withdrawn, leaving Mr. Blatt as only -- the only Class A member of the LLC which is why the decision was to bring suit.

THE COURT: Okay. Let me then turn back to a question that we kind of addressed last time. So, Judge Williams appears to have an issue that in her case, which predates mine where her decision will resolve this issue in terms of who has authority over Megacap. Isn't that true?

MR. KELSKY: Well, that is the case that is, in fact,

pending in front of her, but the motion to intervene that was submitted and the intervenor complaint is essentially, they took the actual claim asserted in that case in front of Judge Williams and put it in the intervenor complaint, actually paragraphed it like 1679 through 1690 something with a very lengthy wherefor clause.

So they brought the same claim or are attempting to bring the same claim in two separate cases in front of your Honor and in front of Judge Williams.

THE COURT: Right, so I think we agreed then on that as well. As far as the standing issue, shouldn't I defer to whatever decision Judge Williams makes, and she's had the case longer than me, and she's dealing with this exact same issue. In fact, like you say, it's been lifted verbatim from that case.

MR. KELSKY: No one has been served in Judge Williams' case as far as I know. And at least certainly my clients have not been served. We believe that the issue is in front of your Honor. It's been briefed by us extensively in the trial brief.

THE COURT: It has. I agree with you on all of that too. It's just that, you know, to some extent, it's an issue that's before another federal judge. I don't know why anyone -- why everyone hasn't been served. I mean, if a process server was outside that door, he could serve everybody. You're all here.

This kind of reminds me of the guy who went in front of Judge Moore and said he couldn't serve Shaquille O'Neill, because he couldn't find him. Yet, we all saw in him on television the night before in a studio in Atalanta. I mean, the guy's 7'2", 300 pounds. I don't know how he couldn't be found.

Similarly, you all are found. You all are right here. Where is this process server.

MR. CASEY: Judge, could I respond to that for one second because I think we're missing --

THE COURT: This is Mr. Casey. I don't think we're missing the main issue, but you can respond.

MR. CASEY: Well, actually, the case that predates all of this is the case filed by Mr. Blatt that goes back to 2023 before Judge Gayles now in its second iterations because it was dismissed at the shotgun pleading after we litigated that for multiple years, and Mr. Blatt agreed in the declaration that he would litigate these issues in that case. That case was subsequently dismissed because he couldn't state a claim and it was a shotgun pleading.

He refiled that case in state court 20 minutes last year. We removed it back to Judge Gayles last year, and now it's pending motion to dismiss in lieu of waiting for him to eventually get to a cognizable pleading.

We filed a case against Mr. Blatt on these issues to

deal with the Megacap issue before Judge Williams which was very recenter, so it will be served.

And in addition to that, Mr. Kelsky filed on behalf of Megacap in a separate case before Judge Michael Moore these issues on Megacap, and that was dismissed because he failed to follow the scheduling report in that case.

So there's actually three prior cases in which those issues were affirmatively brought by Mr. Blatt. We have one now pending before Judge Williams because there's been so many issues with his pleadings. So there's four cases, in effect, in the Southern District that concern these Megacap control issues.

So now in this case, he's again asking your Honor to do away with a finding from those courts, and have a ruling on Mr. Goldner's standing.

THE COURT: So are you saying that in front of Judge Gayles, Judge Moore and Judge Williams, there were findings that were made that there's no standing?

MR. CASEY: No, there was nothing ever --

THE COURT: So he's not asking me to do away with findings made by other judges. It's just that we're now in front Federal judge in a district that has currently 16 judges taking cases --

MR. CASEY: And Mr. Goldner wasn't a party in this case. We've asked the court to intervene in this case because

it appears that this would be kind of a shortcut to getting a ruling on Mr. Goldner's standing without, you know, his day in court with respect to those issues which are fairly complex and it involves a lengthy timeline of events, your Honor. So --

THE COURT: Okay.

MR. CAPONI: Your Honor? If I may, my client is somewhat stuck in the middle. I would note that the TRO filed by Megacap by Mr. Kelsky, one of the grounds for seeking a TRO was that my client allegedly was not recognizing his client's authority, and it goes back to letter from 2023.

We were -- my client raised concerns. We understood there was a disagreement as who controls the entity. Mr. Kelsky said no, I control the entity, and no one ever told my client about all this ongoing litigation.

These two parties clearly had been litigating or arguing -- I'm not saying litigating because they don't seem to be able to litigate. They've been fighting with one another in multiple courts, not telling anyone, and, you know, there's collateral damage which is my client.

I think the path forward here is these two individuals need to get in front of a judge, probably with the most knowledge of the background and history here, and have this issue settled. And once it's settled amongst themselves, they can go out and start disturbing third parties like my client under someone with authority.

This is an -- it's an unfortunate situation that we find ourselves in and I'm very troubled that was a lack of candor and myself about this whole background.

I'm getting up to speed as quick as your Honor. Dockets are coming my way, and as to service, I would further note that my client still has not been served. So apparently filing, not serving, not following through seems to be the hallmark of this litigation between these two individuals.

And, respectfully, my client nor your Honor should be caught up in their inability or their unwilling or inability to just get the issue resolved. There's an arbitration provision in the LLC agreement that they chose to ignore.

They filed in front of multiple judges, don't seem to get it across the goal line, and statutorily, under 6 Del Co Chapter 18, this is a Delaware LLC, the Delaware Court of Chancery is vested with authority to resolve any dispute over who's a manager of an LLC. That option is available.

What shouldn't be available is my client being brought into court, not served, hit with multiple TROs, when the fundamental standing issue doesn't seem to want to get resolved by these parties.

MR. KELSKY: Judge, respectfully, they've served discovery in this case. They've appeared in this case as defendants. I mean, it was an affirmative act, acknowledging jurisdiction.

Secondly, this is obfuscation because the issue is not -- the issue in front of court is whether or not WCEP should retain possession in a master as opposed to a limited series in which they're a contract.

The idea that they WCEP can just walk away, hold up its hands say we're not doing anything not only ignores it's contractual responsibilities, it's an attempt to deflect and defer from what their obligations are by claiming oh, we'll let you guys sort it out. It's doesn't obviate its obligations to the partnerships that allegedly -- that contracted with the serious LLCs. This is obfuscation at its best.

THE COURT: I don't think he's trying to avoid anything. I think he just wants to make sure that the proper plaintiff is here in court.

I mean, if I make a decision and the Eleventh determines there was no standing, I get an order back that says why did you even waste the time hearing this case? We're going toss the case because you didn't have standing.

MR. KELSKY: We're prepared to go through this. We've submitted a trial brief on this.

THE COURT: I understand that, but here's the problem. It's called forum shopping. You're in front of the fourth of 16 judges hearing cases. Why wasn't this argued in front of Judge Gayles or in front of Judge Moore other in front of Judge Williams?

MR. KELSKY: Well, the actions are different. I have nothing to do with the Judge Williams actions. That was initiated by Mr. Casey and his client. So that's the one we haven't been involved in.

The one in front of Judge Gayles is affirmative relief that we have sought relative to a secondary entity, Goldner Blatt Investments which your Honor saw I'm sure in the readings, and then some claims brought by Megacap against -- or on behalf of Megacap against Mr. Goldner.

THE COURT: It is certainly a related case, right?

MR. KELSKY: I don't believe it's a related case because this issue involves WCEP. I don't believe it's a related case.

THE COURT: So you equate related case -- the definition of that, as being similar to res judicata or collateral estoppel as opposed to the word related?

MR. KELSKY: No, I'm saying it's not related because the issue is enforcing Megacap's rights against WCEP. The issue in the other case involving Megacap involves Mr. Blatt and Mr. Goldener directly.

It's our position as we've asserted all along is that the only Class A member is Mr. Blatt. We don't believe that the actions are interrelated. They're just in the names of the parties, that one is in Megacap against WCEP. One is Megacap against Goldner. We don't believe that the situations are

remotely related.

THE COURT: Okay.

MR. KELSKY: And just to be clear, there's not four cases pending. There's the one in front of Judge Gayles is the one initiated by Mr. Casey's client in front of Judge Williams and your Honor would note, that Mr. Blatt is not a party to this case.

THE COURT: What happened to the Judge Moore case then?

MR. KELSKY: The Judge Moore case was -- the claim that is actually in front of Judge Gayles right now, there was a scheduling order issue, and we just filed it as one action. We refiled it as one action. It's state court but back to federal court.

MR. CASEY: Sorry, your Honor. The Judge Moore case was dismissed for failure to follow the order. That's the last docket I'm aware of and it dismissed the case.

MR. KELSKY: What I said, your Honor.

THE COURT: All right. Mr. Caponi.

MR. CAPONI: Your Honor, I just -- there was clearly a dispute, and when you have a dispute, if you believe you're the rightful party to control an entity, you have an obligation to drive that to ground.

This has been going on since at least three years from what I've pieced together. I don't think it's appropriate for

Mr. Kelsky to come in three years later and say well, we didn't bother to take it seriously. Just trust me, I'm it.

Standing is fundamental. To your Honor's point, if you issue a TRO, you'll be questioned why. More to the point, as we submitted, there were other investors in my client's fund that involves Megacap.

Every dollar being spent here today reduces the return on investment for all. That is -- I find it sadly ironic that a motion for a TRO which is supposed to reserve the assets is having the direct opposite impact of diminishing those assets and what happens? If Mr. Kelsky goes forward, we spend a lot of money here, diminishes the fund, and it turns out he didn't have standing, am I -- is my client going to get sued for having spent money in a lawsuit that never should have occurred? These parties had an obligation to get their house in order before dragging everyone else in, including your Honor.

MR. KELSKY: Judge, that's actually the point because the master shouldn't be having any of this. It should all be within the series, so whether or not the master has to pay funds relative to this case is really rather irrelevant because they never should have had the funds in the first place. The funds and the contracts and the subscription agreements were between limited partners and serious, not with the master.

I'm sorry the master is spending money but the one who

didn't have their house in order was the master for not effectuating where the money and where the shares should have been. That's the point of the TRO.

MR. CAPONI: Your Honor, I'm happy to show your Honor the agreement, but, again, there's like I said, there's just a fundamental lack of reading of documents. The indemnification language goes to the series, the master, and it goes to the managing member. It's rock solid, but I don't think that's to do with standing. It's a side issue.

I think the standing issue of these two should be sent on their way to figure it out. Once they figure it out, and I would suggest in front of a judge who's up to speed and maybe has a better grasp of all what's taken place before and what's been done appropriately and inappropriately.

THE COURT: Here's the sad thing. I don't think any of us is up to speed, any of the four of us. It's kind of like a little bit of a moving target, and trying to get it to stay in one place and figure it out.

I mean, clearly, I have to deal with the standing issue. I do think that I should take your arguments as to the other issues.

You know, I recognize what you're saying about costs, but I think the majority of the costs you're referring to have kind of been spent on the written pleadings that you've produced, so I don't think a couple hours this morning is he to

effect things.

MR. CAPONI: I do not disagree, your Honor.

THE COURT: You don't or you do?

MR. CAPONI: I do not disagree.

THE COURT: Obviously, there's the attorney's fees and everything but that's different. But okay. Then before we move past standing, is there any argument that either of you wanted to make other than what you've made today that's also outside the papers that you filed?

MR. KELSKY: Not on our end, your Honor.

MR. CAPONI: No, your Honor.

THE COURT: Then the second thing that I wanted to just get some clarity about actually, and, Mr. Kelsky, I'll turn to you is venue.

I read your entire complaint, I read through it. I don't see any allegations that there's any connection with the Southern District of Florida. Now, may be there is and it just wasn't pled that way. It would seem to me there must be connection if there's four junction down here that are involved.

But basically here's what I have. I'm reading the complaint. I have a Delaware based LLC, I have an allegation that Mr. Blatt is a resident of Florida, although I think he told me at the last hearing he's in Boston and that's where he spends most of his time.

I have nothing that talks about the Southern District of Florida. There are some allegations about trades and things being made over the wires from Florida. Could be Middle District, could be Northern District. I don't see anything that says Southern District of Florida, so if you could you flesh that out for me.

MR. KELSKY: Sure. So there are tort claims in here, the indictment -- for example, Count 1 as to Mr. Blatt had the communications with people WCEP. Mr. Blatt is a resident of Florida. The tortious allegations occurred while Mr. Blatt was in Florida. We believe that the communications from WCEP to Mr. Blatt in Florida establish the cause of action, and as a result, create venue.

THE COURT: Anything south of Fort Pierce?

MR. KELSKY: Yeah, I believe it was -- he's in the Southern District is where he resides, is where his official residence is, and that's where the communications occurred. That's my understanding.

THE COURT: Okay.

MR. KELSKY: That would be true of the other fraud claims. The contract claims are the contract claims, but we also pleaded the violation of FDUPTA, and just looking through, they're basically all tort claims except for the dec action which involves a whole bunch of things.

THE COURT: Mr. Caponi, I know there wasn't one that

was teed up for today, anything you want to be heard regarding venue? Mr. Kelsky kind of gave me some information just now, but, again, it was just Florida. It wasn't Southern District of Florida.

MR. CAPONI: Your Honor, I do not know why we're in Florida. I would note that the subscription agreement, the document by which -- so to high level, Delaware entity invests in another Delaware entity with an arbitration provision listing San Francisco. Megacap Funds, Mr. Kelsky just stood up -- and one thing I will say, I'll blanket all my comments with this, your Honor.

I think there's a lot in the papers and there's a lot of argument, but very little document or evidence to backup arguments. So everything I just heard, I don't see anywhere. It's a statement.

But what the documents do show is that it was Mr. Reiter who signed all the documents, a subscription agreement on behalf of Megacap, not Mr. Blatt.

So I have other than Mr. Kelsky saying Mr. Blatt was involved, all the documents say the opposite. So again, I don't know where he resides or what his role was, but short answer, I do not know why we're in Florida.

MR. KELSKY: Mr. Reiter is a resident of Boca Raton so that's the Southern District.

THE COURT: Okay. So, couple things. I don't know

that that's pled about Mr. Reiter being a resident of Boca Raton that's assume that's true, how does that square with the standing argument that Mr. Reiter was withdrawn and so that the only person who can bring the claim is Blatt?

MR. KELSKY: It's an affirmative exhibit that was filed. It's Exhibit Number 9 that was filed by Mr. Casey. It's a -- it's a withdrawal agreement specifically signed by the three Class A members who was Mr. Blatt, Mr. goldener at the time and Mr. Reiter himself, and he received consideration for that withdrawal. It's an undisputed exhibit.

THE COURT: Okay.

MR. CAPONI: Sorry, your Honor. I'll quibble with the notion of undisputed. I don't necessarily trust anything that's come across my desk recently.

THE COURT: Okay. We'll deal with what you're may be eluding to at the very end of the hearing.

Okay. So, then let's talk about the TRO. You all know there's four elements. Reasonable likelihood of success which I know you're going to argue against. The real one that I kind of want to hear some argument on, although I want you to argue whatever you want to, is irreparable harm. I don't understand why this needs to be handled as TRO and why it can't just be handled in the normal course as a like a contract dispute, that type of thing. But let's just go through the steps and, Mr. Kelsky, give me your best argument as to the

four elements.

MR. KELSKY: So, just as a 10,000 food overview, the Megacap is the general partner for two sub entities which are I'm going to called SpaceX and TECH. Clearly, the one we're really talking about here right now is SpaceX.

As your Honor is aware, SpaceX had it's initial IPO on June 12th, and there's argument which I'll get to about the lock up in a few minutes.

Basically, the SpaceX had an agreement with a WCEP series called SpaceX. Pursuant to that agreement, Megacap wired money. Megacap -- the partnership was supposed to receive membership in the series LLC. The money went to the master. No shares or no units were issued by the series LLC to Megacap, and what wound up happening is it got pulled in the fund of WCEP the master, and over time, the percentage of ownership as on the K-1s decreased over time.

We now have -- so we essentially have -- we've invested in a series LLC. We have no membership in the series LLC. There's no K-1s, they're no proof of membership. The master has all of the money, and here we sit where our relationship is not with the company that we subscribed to, but it is with the master instead. And there is no agreement between our client and the master.

So, the irreparable is that there are these shares that were purchased by virtue of the subscription agreement

which are in somebody else's control, somebody can liquidate them, someone could do whatever they want to them, but because we don't have possession of them or can't get possession of them, then we are at risk, not only to the company itself, but to the limited partners who invested into our company.

On top of that, this is part of -- the fund that it's in is kind of a master fund, and it invests in all sorts of other entities, not just SpaceX.

So our money that was provided to the master has essentially not only diluted ownership as evidenced by the K-1s, but puts it at risk because it's invested in other entities.

So the specific res which is the shares, and this is not about money, it's about shares. Shares may have value, they may lose value, but they're property, the specific risk is that they can be usurped or taken away by a master with whom which our client did not have an agreement and that is the irreparable harm.

THE COURT: So let me ask you this: You had referenced no shares were issued to Megacap. Are you talking about specifically shares of SpaceX?

MR. KELSKY: Right. I'm talk -- yes, because there was a purchase of a certain amount of shares before they split.

THE COURT: Can you just point me to a paragraph in these contracts that say that Megacap was to receive shares of

SpaceX?

MR. KELSKY: Well, they're future, right, because they're signed in '21 or '22 in advance of the IPO. The amount of money that was invested was the equivalent of 647 shares. I can't cite chapter and verse of the amount, although I don't believe that's contested. And then it splits on a 10 to 1 basis for the equivalent of 6,470 shares.

And then what wound up happening is so the IPO occurred. There's been this representation that there's 180 day lockup period before anything can actually be distributed but that's actually not true based upon the S-1. The S-1 says that shortly after Q2 ends, which is June 30, 2026, up to 20 percent of the shares can be released, and then are certain benchmarks that can occur. I believe there's a seven percent and then additional percentages that can be distributed before the 180 days based upon performance of the stock. So, that's the answer that I have for your Honor.

THE COURT: I guess my question is you're suggesting this investment based on the contracts was much more like specifically buying into a company, or buying shares of SpaceX whereas when I look at that contracts, it seems much more like a purchase of like a mutual fund that had investments in a number of things including SpaceX.

And I just am looking for some direction that would point me to the 647, or the 10 to 1 or something like that.

MR. KELSKY: It's the subscription agreement between SpaceX -- Megacap, MC SpaceX and WCEP SpaceX. It was equivalent of $580 per -- was essentially per share. That's where the 300,000 plus comes from, and then it split. So the value, the value invested is still is same, it's just a different number of shares.

THE COURT: Okay. And is the irreparable harm that you're arguing contingent upon the value of SpaceX stock? So, for example, today is June 24th, second quarter closes June 30th, second quarter reports due July 30th, it's typically released closer to August 12th. Let's say by then, SpaceX is trading at $30 a share.

Because we know it was at 225 and it's at 155 now, so I mean, it's gone -- it's lost a third of its value in the last week.

MR. KELSKY: We're not arguing the monetary value of the shares. We're arguing the shares.

THE COURT: Understood. But as far as irreparable harm versus just handling it normally like a contract dispute, or a tort dispute in terms of this TRO, it's just hard to envision irreparable harm for something that's going to being worth much less.

MR. KELSKY: Well, the irreparable harm is primarily based upon the fact that the interest that Megacap has is by virtue of the subscription agreement, and then not being

admitted to the fund, the WCEP fund, and instead into the master who owns all sorts of other stock IPOs or stock value whose -- and our K-1s have shown diminution in value and percentage ownership over time is that we don't know what's going to happen with those funds.

The irreparable harm is they're not where they should be. They're elsewhere, and they are outside of the control of what is set forth in the subscription agreement.

So we've never received the membership in the series LLC. The funds are being held by the master, and the irreparable harm is the disconnect between the two entities and the Megacap Limited Partnership.

THE COURT: Okay. All right. I'm sure Mr. Caponi is just going to say Judge, just rely on the plain language of the contract, but anything you can point to that suggests that that's just not how it worked?

MR. CAPONI: Yes, your Honor. I put together -- I don't want to take more of the courts time than necessary, but I put together a binder of the core exhibits. I thought it would maybe just be helpful to walk everyone, including the parties, through this transaction because I think there's a fundamental misunderstanding from their prospective as to what happened, or unwilling to understand what happened.

Would that be okay with your Honor?

THE COURT: Sure, but these were things that were

filed by the 17th?

MR. CAPONI: Yes. I just pulled out the core documents.

I'm going to start with Tab 5 which is the West Coast Equity Partners LLC Limited Liability Company agreement. This is the master as been referred to for a set of series LLC, and under Delaware law, Delaware is somewhat unique, LLCs, you can have an LLC which is a standalone entity, then you can what's referred to as a series LLC which is a separate, and a series LLC, in laymen's terms, it's the best way to look at it would be, analogy I would use would be like General Motors. You have a car company, then you have divisions.

Each division, Chrysler, Cadillac, et cetera, or not Chrysler. I guess it would be Cadillac, et cetera, under GM. They're all separate divisions like a separate LLC. And each one has its own debt, its obligations, et cetera.

General Motors, the master, oversees all of them so you don't have to have a president and accounting department at each one. It cuts down the paperwork and it's tax efficient.

For tax purposes, the master is what reports to the IRS because LLCs are rollup entities or passthroughs.

Mr. Kelsky is saying there's multiple investments. Yes, there's multiple investments in multiple divisions, but each series has its own group of assets. They're fixed to that asset.

So if we look at the LLC agreement for West Coast Equity Partners II, it says in subsection C and D, the company is authorized to establish separate members and limited liability companies which are series.

And then if we go to section 2.1, it confirms, 2.1A, that each of the income, gains, losses, deductions, credits, et cetera are siloed within each series which means the debts of one series and the assets of one series have no impact on the debts and assets of any other series.

So that's what was the concept. And then if you look at 2.1C, it specifically says that there will be a separate series operating agreement for each series LLC. And that will be the governing document.

If we turn to Tab 6, you'll see the actual limited liability company agreement for the SpaceX 2021C. We call series scaleup SpaceX. This is the agreement to which Megacap became a member.

And specifically if we look at getting ahead to irreparable harm, when you got to Section 7, 7.1 and 7.4 on distributions, all distributions are made as determined by the manager and in order of priority, which means that there are no distributions until, as the court would expecter, all debts and obligation are paid, reserves are established, et cetera. And then equity holders which is what Megacap is in serious SpaceX, equity holds get paid last.

The next important document for the topic that we're on is the Private Placement Memorandum which is Tab 7. And if your Honor looks at Tab 7 on page 3 under offering, and then under fund investment, it specifically articulates how this investment is structured.

Megacap is investing as a member, as a limited liability member of the SpaceX series, and the SpaceX series, as it says, has been formed for the sole purpose of purchasing unregistered Capital P, Capital C portfolio company, Capital S securities. That is defined as SpaceX shares.

So the series LLC was formed to acquire an economic interest in SpaceX shares. Importantly, if you continue reading, it says that the portfolio company can acquire this interest in any one of the following ways, and C is indirectly through a subscription for equity interest in a special purpose vehicle sponsored by existing shareholders of SpaceX shares.

And what does that mean? That means that they could acquire SpaceX shares directly, or the series could acquire an ownership interest in a company that owns SpaceX shares.

And that is what occurred here. The series acquired an interest in the DFJ Fund 9 which itself owns the shares of SpaceX.

So the nature of this investment was spelled out in the document that solicited investment. You would be investing in a series LLC. The sole purpose of that LLC is to own an

interest in SpaceX, directly or indirectly, and we can do so by investing in a company that actually owns the shares. That is what happened.

If you turn to Tab 8, your Honor, which is the subscription agreement. This is the document by which Mr. Kelsky -- well, Megacap became a member of the series LLC.

And it lays out -- it basically says we're investing, here's what we're doing, et cetera. The important document, your Honor, is if you go to the page 12, it's signed by Mr. Reiter on behalf of Megacap Funds. And then most importantly if you go to the last page, page 14, it is the member signature page. The undersigned member hereby executes the limited liability company agreement of the funds dated as of the effective date, and hereby authorizations this signature page to be attached to a counterpart of that document executed by the manager of the fund, and it's signed by Megacap.

This is the document by which Megacap became a member of the series LLC. The notion that they haven't received any stock just represents a fundamental misunderstanding of LLCs. LLCs don't issue stock. LLCs don't have stockholder, they have members.

A member is required to sign the LLC agreement, and once you sign the LLC agreement, you're a member. That's all you get. You don't get certificates, there's nothing that's traded. You get a contract. And this is the document, page 14

by which Megacap became a member and it has remained a member.

So, if we go to the next page, page 9 -- well, let me pause for a second.

THE COURT: Tab 9?

DMR. CAPONI: Sorry, your Honor?

THE COURT: Tab 9.

DMR. CAPONI: Yes, Tab 9. Before I go on to Tab 9, what I've just walked through is the governing documents showing that the master fund was created for the sole purpose of having multiple series. Each series would have its own LLC agreement. I showed the series LLC agreement specifically limited to investment in SpaceX, and that investment is described as being direct or indirect. Indirect is what occurred here, and we have Megacap signing that document and becoming -- making an investment and becoming a member.

So to your Honor's first point, Megacap invested as a member in an LLC. Black letter law, equity holders, whether they be stockholders or members, are not entitled to distributions until all debts are paid.

They're not entitled to the specific assets. If I own stock in Ford, I can't go to the lot and drive off with a car claiming I own that car. I own stock in Ford.

Here, your Honor asked for language, I've pointed to language where it specifically says that the investment will be made indirectly, which means the series itself will not even

own the shares directly. The series will invest in another company that owns the stock.

So Megacap knew going in it was two steps removed from ever acquiring directly SpaceX stock. What it acquired was an economic interest in an entity that had an economic interest in an entity that owned SpaceX stock.

I don't know if it's they don't want to read the agreement so they don't understand the agreement, but it's black letter and it's pretty common practice. It's right here.

If we go to Tab 9, your Honor, this is the capital account as was mentioned in the Master Fund LLC agreement and in the Series LLC agreement. There will be a separate capital account, and if you look here, you can see there are three investors in this fund, this series, Megacap being one, and Megacap's ownership interest has not changed. Its capital account begins and ends with $373,202.

The notion that they're being diluted, again, I don't understand because there was a single investment by this fund, and that is in the other entity that owns SpaceX.

If we turn -- sorry, the fact that the master fund has multiple other series as a matter of law, has nothing to do with Megacap because each series is siloed and isolated as a matter of law, as well by the governing documents.

What apparently has Megacap and its counsel confused, if they look at the K-1s which are Tab 10, a K-1 is a document

that is prepared for tax purposes. It has nothing to do with ownership interest. This is a document that tells you and tells the IRS for the profit and loss of this entity, this is what portion of it you are responsible for.

And if we look, the entity that is reporting is West Coast Equity Partners II, not the series, because an LLC is a passthrough and a series LLC is a passthrough up to the master so it is the master fund that reports.

And if you look at Section J, 12J on the left hand side, it says beginning and ending profit loss is capital, the capital percentage changes and that will change over time in a series LLC because the value of the other LLCs may go up or down, and there may be the addition to or dissolution of other serious.

So what this reflects .4662 percent, that means of the master fund, Megacap is responsible for .44662 percent of the profit lost to the IRS. That has is not bearing -- that is not a reflection of its equity interest.

And if we go to Tab 11, your Honor, these are the other series that fall under the master fund, and we highlighted where SpaceX false. And you can see, the value pf SpaceX has effectively remained the same. There was one fee that was paid, but it's basically $725,000 over from 2021 to 2026.

So if this list on Tab 11, if there's two more LLCs

33

added, the K-1 percentage will go down. If LLCs or series are dissolved, the percentage will go up. I would expect that for next year, the percentage for SpaceX is going to go way up because SpaceX shares now went public, and they're worth multiples of what they were paid for what's going to happy is there's going to be a huge profit in the series, SpaceX series LLC, and that portion will be borne by the members of that series but as a portion of the whole, the master, it will go up.

Jumping ahead, just to drive the point home, Tab 13 is DFJ Fund 9 continuation LP, this is the company that owns the SpaceX shares. This is the admission agreement. This is the document by which Megacap through it's entity invested with my client became itself a limited partner of the fund that owns the SpaceX shares.

And if we look at Tab 14, it is the fund's operating agreement, and to get to the -- I would note two things here. One, the general partner of this limited partnership has no affiliation with my client. My client is West Coast Equity Partners, and this series LLC are simply passive investors in this fund. They do not control this fund.

But importantly, if we go to Section 7.3 on page 22 and 7.4, and 7.5, these provisions state that the general partner will make distributions to limited partners as one would expect after all debts are paid, reserves are established

and in proportion to your ownership interest, and the distribution at the discretion of the general partner will be either cash or in kind. We will give you a portion of the SpaceX shares.

So, trying to wrap this up for your Honor, there's a public offering of SpaceX. Continuation fund, DFJ Fund 9 presently owns publicly traded shares, although represented, they're public traded shares of SpaceX.

At some point in the future, the general partner of this fund, I don't know when, will make a decision after it pays off -- it will cash in those shares and will pay off all of its debts, and then it will make a distribution of either cash or a shares or a combination at its sole discretion.

This further reinforces the notion that Megacap never made an investment into specific shares because the series itself is not guaranteed to receive specific shares. It will at some point in the future get a distribution of cash or stock or both at the discretion of this general partner, and then under the Series LLC agreement, it will have to pay off all the series debts which will include my law firm, and then any other obligations, and then whatever is left will be distributed either cash or stock or a combination at the sole direction of the managing member of the LLC fund.

So long winded way of saying my client absolutely still maintains Megacap was a member, is a member. Its equity

percentage and ownership percentage in the series hasn't changed. The series is an investor in DFJ Fund 9. Its equity percentage hasn't changed, and at some point in the future when the series receives a distribution from the fund, the DFJ fund, it will settle its debts and make a distribution of either cash or stock or both to Megacap and the other two investors.

There is no irreparable harm. There is no imminent anything, and this entire litigation is based on, again, an inability or unwillingness to just read the documents because they speak for themselves, and to manufacture a dispute where none exists.

They are a member of the fund, and their ownership percentage hasn't changed and it will not change because the fund closed. Unless your Honor has any questions.

THE COURT: So, Mr. Kelsky, I guess my question to you is just so I'm clear on all this, what event happened that made your client think that something's wrong here?

MR. KELSKY: The -- so I understand the question, are you asking what precipitated the filing of the motion or are you asking why the lawsuit was filed?

THE COURT: I'm asking -- I know why the lawsuit was filed in the sense that I've read the lawsuit and I hear what you're alleging.

Mr. Caponi has going through these contracts with me. What I'm interested in knowing is what happened or what are the

specific core facts that make you think something's wrong?

MR. KELSKY: The specific core facts have to do with communications that occurred with Dr. Blatt preceding the lawsuit where WCEP indicated that we're not going to release anything to you until you workout whatever you have to workout with Mr. Goldner. And --

THE COURT: So that's a completely separate issue than what Mr. Caponi is here for. So I guess what I'm trying to figure out is what is the issue that Blatt has with these defendants? Not with his former partner or current partner or whatever.

MR. KELSKY: We read the documents differently. We read that there was a direct subscription with a separate LLC, that we were admitted to the master, that the master has been doing whatever it's been doing. Specifically entered into the agreement on the fact that they were going to be zero fees, zero carry, and now you're hearing that there's going to be charges against -- coming from the WCEP master that essentially disagree with explicitly what the agreement was under the subscription agreement. I mean, that's a whole separate sub issue, but it was part and parcel of the agreement to buy into this fund.

THE COURT: Well, can you point me to the specific paragraph of the subscription agreement that you suggest says what you're saying it says?

Because I'll tell you maybe I am the right judge for this, I don't know. So my family's investments are significantly in REITs, real estate investment trusts.

This looks exactly like what we deal with down to the K-1s. And so that's where I'm confused because certainly if some issue happened in terms of our investments, and I should separate myself. I don't have any of this. This is where I belong there on a different level, but if there were an issue I could understand my family would be really upset. I'm just not seeing the issue. You've raised the issue. I just want you to point me to where it is.

MR. KELSKY: I'll give you an example. In section 23 of what was under Tab 8, it talks about electronic delivery, section 23, electronic delivery of disclosures and Schedule K-1, it says the subscriber understands that the fund and the manager expect to deliver tax return information including Schedule K-1s. Well, the only K-1s that came, came from the master. They didn't come from the fund, so the question is why is that the case? Where did -- where is our membership interest?

So, there are, you know, these are the types of things that didn't happen under the terms of the agreement. In fact the only one to issue the K-1 was the master. And fund is specifically defined on page 1 as a West Coast Equity Partners, II LLC Series ScaleUp SPX 2021C.

MR. CAPONI: Your Honor, I would just note that they have received K-1s the same way since 2022, for the last four years.

Your Honor wans to know what precipitated this? Mr. Kelsky reached out to my client in 2023 -- this is in their motion for TRO on page 4 saying my -- we want the assets coming out of this fund. My client said we heard that there's some disagreement as to who controls Megacap. We're not -- we can't do anything until someone gives us clear authority, and that resulted in several years of escalating letters which we attached some of them from Mr. Kelsky, never proving his client controlled the fund, and all my client said was we're going to honor the agreements, and when someone shows up who actually speaks for the entity, we'll do what we're required to do.

In the meantime, everyone has still got their K-1s, so I think you gave up the ghost when you asked why are with here? Because there's a fight between these two, and each one wants to run off with the pot of gold and when the IPO came -- this was clear to me -- when the IPO came, each one wanted to get their hand on the pot of gold faster than the other, and rather than solving their differences, they brought my client in on a complete deliberate misreading of the document.

MR. KELSKY: Judge, they just glossed over Section 23 in its entirety about the issuance of the K-1s.

THE COURT: Well, the K-1s in Tab 10 are the K-1s from

39

'22, '23, '24, and '25.

MR. KELSKY: Right. Those are from the master. What I'm saying is that Section 23 of the subscription agreement says that the fund which is the scaleup was supposed to issue the K-1s.

THE COURT: And you're saying that prior to '22, the K-1s were issued differently.

MR. KELSKY: I'm saying the K-1s, the fund never issued the K-1s as required under the subscription agreement.

MR. CAPONI: And, your Honor, it's a passthrough entity. The master submits the tax document.

THE COURT: Right. So, you have the partnership which is West Coast Equity Partners, and they're issuing the K-1 to the limited partner which in this case for this particular one is Megacap.

MR. KELSKY: Right, but if your Honor looks at the first page of Tab 8, it identifies fund as a capital bolded letter, right?

So then if you turned to Section 23, it says the subscriber understands that the fund and the manager expect to deliver tax return information including Schedule K-1s to the subscriber.

So, what we're saying is the fund never issued the K-1s. So the question of where our interest is, is, in fact, a question and that's why there's irreparable harm.

THE COURT: You've had an accountant, an expert who has looked at this who says this is not the proper way for K-1s to be issued?

MR. KELSKY: We're saying that the fund had to issue the K-1s, and that that is prove of -- to some extent, evidence of proof of ownership.

THE COURT: So my question was you had an accountant, an expert look at this, someone with an accounting agree, who said this is not the proper way to issue the K-1s.

MR. KELSKY: No, we have not had that at this point in time, no.

THE COURT: I think you ought to.

MR. KELSKY: This may be for down the road, your Honor, but we're dealing with a situation as it existed presently.

MR. CAPONI: Your Honor, even -- if I spot Mr. Kelsky K-1s weren't issued the right way, which they were, what does have to do with the TRO and irreparable harm? His client owns -- I showed Mr. Kelsky -- it's probably the first time he looked and I showed your Honor, the document where they signed on as a member.

I've never been in a case where someone comes in and says I'm not a member, I'm saying yes, you are. We own 40 percent. Yes, you do. We're entitle to distribution. I agree. I'm not sure why we're here.

MR. KELSKY: We're here in part because of their statement that they're not going to release the funds. They're not going to release it until there's some type of -- not even funds, the shares, they're not even going to release them unless there's some type of consensus between Blatt and Goldner as what's going to happen which is a complete obviation of their responsibilities under a written agreement.

THE COURT: How is that an obviation of their responsibilities? What if John Doe walks in off the street and says he's Megacap? They can't give John Doe the fund.

MR. KELSKY: But they have a contract with Megacap, the limited partnership. There's limited subscription agreement.

THE COURT: Correct, and they agree with that.

MR. KELSKY: So if that's the case, we need to make sure that the funds that are owed pursuant to the agreement are delivered pursuant to the agreement.

And that's why because -- I understand they're saying that now. I understand what their contention is, but that's not consistent with what the documents say, and that as we've briefed, that's our point.

THE COURT: But they're arguing from the documents. This is my confusion. I mean, he's literally going to the documents, paragraph by paragraph, and saying it says this, here's what we're going to do. It says this, here's what we're

going to do.

However, we're not going to just hand it over to the wrong entity. So, Judge, figure out what the right entity is, and then, frankly, we can get on with our lives, give them what the contract says we're owed, and never do business with them again. That's basically what he's saying.

MR. KELSKY: The entity is the limited partnership, the TECH, the SpaceX fund, whatever, the Megacap, so it's not going to anybody but the rightful owner who would be Megacap, and what happens internally between that is not their issue, but they said they won't deliver it, period.

So that's where the irreparable harm comes in, in addition to the other reasons that I already enunciated. They said we're not doing this.

THE COURT: So you'd be comfortable, or happy with me ordering them to deliver the funds to the court registry to be held in perpetuity even if it takes your client and Mr. Goldener and Mr. Reiter 50 years to figure it out.

MR. KELSKY: Well, I believe we can address today, and we're prepared to, the issue of the fact that it is Dr. Blatt who is the Class A member of Megacap.

THE COURT: Yeah, I don't think that's going to happen today. I think that's a much longer story.

Okay. Typically in a TRO hearing, it's just the first two elements that are really an issue because the balancing of

the interest in three and four are throwaways.

But in this one, I want to hear your arguments as to the balancing of the interest because I think you're going to be able to argue that it's a real danger if the court issues a TRO in terms of the balancing of the interest and dealing with an issue like this.

But first, Mr. Kelsky, how do balancing the public interests weigh in your client's favor on this case where you have a contract that even lawyers seem to think says two different things.

MR. KELSKY: I guess from the balancing of the equities standpoint, the only interest I care about is the interest of our investment. Of our client's investment. That's the only thing that we care about.

THE COURT: See, that's different than 1 and 2. One and 2 deal with your client and your investment. Three and 4 deal with the public in general.

MR. KELSKY: There should be no interference with the public involvement if the investment that was made by Megacap's Limited Partnership is protected. It doesn't interfere -- they've affirmatively stated in Tab 7 this is their investment, or I believe it was Tab 7. It may have been Tab 6, excuse me. The colored spreadsheet, your Honor, Tab 9.

THE COURT: Sure.

MR. KELSKY: 373 -- 375,260. If that money -- if

those shares, or the value is the shares or whatever it is is protected, then it should not affect them at all because it's the same responsibility that they have to maintain until whatever they've defined the lockup peppered to have, which there's a dispute because we know it could be issued as quickly as two weeks after Quarter 2 ends and it's reported. So I don't know that there's any harm to them in terms of balancing the equities. We're preserving what exists.

MR. CAPONI: Yes, your Honor. First, there were other investors involved here and, again, the more we go, the more my blood pressure goes up, and the request was to enjoin everything which would harm the other two investors. Now they're backtracking and saying well, just our piece of the money.

To your Honor's point, at some point this may be money we have to turn over to a court and walk away. But for now, I would say there's other investor being harm and more fundamentally, Mr. Kelsky client has known about this problem of establishing who controls this entity for at least three years.

And apparently the only thing they've done is clog up this courted's docket, but never getting to a resolution, and now they want a TRO. So what is the harm of the public? Encouraging this behavior.

When you have a serious problem, you deal with it

seriously and you deal with it narrowly. They have no basis for this complaint, let alone a TRO and they just come in shotgun style and now I've got an arbitration that I initiated because it was specifically represented to me that Mr. Blatt was the controlling member with never being told about this dispute, which I'm troubled by, which will get through arbitration. But again, I'm not even sure the arbitration needs to go forward because I don't know that there's a dispute.

So, you know, access to the court is to a certain extent, a privilege, and I think that privilege has been abused. And that's the issue to the public.

MR. KELSKY: Judge, despite the hyperbole, we're making the issue of who owns this. This is Mr. Goldner's problem. We have Class A membership. We're the only entity with a person with Class A membership. We have an express withdrawal by Mr. Reiter and we have an involuntary withdrawal of Mr. Goldner. That leaves only one Class A member. So it's not us who has created this issue. It is Mr. Goldner.

THE COURT: And, again, it's not these folks, and so ultimately your issue, if we really boil down the last hour or so is this: It's that in your opinion, the K-1s don't comport with paragraph 23 of the contract. They're not what you expect. They are the same K-1s that have been coming in historically, but because the K-1s are not what you expected,

or what your client expected, there must be some fraud. That's essentially why we're here.

MR. KELSKY: Well, I mean, putting it -- I'm sorry, there's noise. There must be some fraud. We're saying that based upon the fact that there -- we have these irregularities and we have an IPO, and we have a relatively imminent event that is going to result in the release of shares, or release of SpaceX shares, that that is where the emergency lies.

THE COURT: Right. So, let me ask it another way. Let's assume there's no Reiter, there's no Goldner. Let's assume there's only a Blatt. Are we here?

MR. KELSKY: Yes.

THE COURT: Okay.

MR. KELSKY: Because there was at the initial time, only three Class A members.

THE COURT: I mean, you understand that if there's only a Blatt and there's no Goldner and there's no Reiter, then we're not here because they're going to do what you want because they don't have an issue as to who is Megacap.

MR. KELSKY: They've told us that that is not the case. That they are not doing anything. And since they have -- they feign this ignorance they didn't know there was a dispute, we've always maintained the position that it's been Dr. Blatt. So, to come here and say we don't know --

THE COURT: That is what he's saying. He's saying you

have always maintained the position that it's Dr. Blatt, but it's not just Dr. Blatt. So that's where his confusion is.

And it gets back to where we started on standing when you said well, Judge, this isn't a related case because it didn't involve WCEP before, so they couldn't have known something that didn't involve them. So, I think we're kind of spinning a little bit.

Okay. Any other arguments that deals with the TRO, either side?

MR. KELSKY: No. As we said at the hearing, we can rely on the papers.

THE COURT: Before we get to the last thing we need to address, any other issues you lawyers want to address.

MR. BLATT: Your Honor, may I? Apologize for the interruption. May I have a brief moment to confer with my counsel, please?

THE COURT: You don't need to ask me to confer with your counsel.

MR. BLATT: I know, but he's locked in. So can I?

MR. KELSKY: Your Honor, I think what he's asking is for a few minute break so that I can talk to him.

THE COURT: That's fine, but let me address the final issue first then. So what's the story with citing a case that doesn't exist?

MR. KELSKY: That was an error and an oversight on my

part based upon a Legacy drafting of a document. As soon as it was brought to my attention, and it was oversight because we go in, we check, and we doublecheck, and when my associate checks and it was simply missed, and within 20 minutes of that filing, I cited the correct case.

And it's an unfortunate event, and I apologize sincerely, but it was corrected almost instantaneously. It was not an attempt to mislead or do anything with the court. That's the only explaining that I have.

THE COURT: It's an AI generate case?

MR. KELSKY: That was an AI generated case, correct. And it got in there and it shouldn't have because we double and triple check, and I don't know how we missed it.

THE COURT: Any position that you all have on it? And how much time did you spend trying to ferret it out, if any?

MR. CAPONI: Your Honor, we wouldn't be looking for any fee shifting. Our concern we came across that right before the hearing, I did not go back and look at everything else. I don't know the voracity of all the other citation and all the other filings. Just wanted to bring it to the court's attention so that your Honor was aware there may be a reason to be skeptical.

THE COURT: So, I'll just put it out there. We just all have to be really careful about this. I appreciate that you corrected the issue very quickly.

There is a lot of folks that believe AI is a good thing. I notice in your stock list Anthropics up top, so I know you guys also believe in AI.

AI for lawyers, I'm on the other side. I think it's a disaster. And what I'm talking about is generative AI. I think just regular AI is fine. I mean it helps to cut down on research time in some ways.

But to the extent that people think AI is the great democratizer, this is a perfect example. AI doesn't tell the truth. AI tries to make people happy. So if AI can find you a case that will make you happy because it says what you want, it will make it up till the day is long.

And the reality is eventually, first year associates aren't going to be as important because of AI. So what happens? Then second year associates won't have the skill that they would have developed as a first year associate.

Then third year associates won't be able to relate to juries in trial because juries will get all their information from Tik-Tok and AI and have never lived real life and understand that when you fine lawyers get up and say in these hallowed halls of justice, we make decisions based on the law.

Jurors are going to look at you and say what's a hallowed hall of justice? So we've got to be really careful about AI. I know there's appellate courts that think AI is great. I know there's a lot of lawyers that think it's great.

If you saw some of the complaints I get that are in 26 fonts, half Reddit, half AI that are completely false, I think you'd understand why I'm saying it this way.

All you can do is apologize like you did, no sanctions, anything like that, but just please be really careful of it.

MR. KELSKY: Jump, just to reaffirm, I take what I do very seriously. I have before your Honor as a circuit court judge, and here. I missed it, and with help and research and I corrected the cite, and I again, I apologize. It's not acceptable, it's on me and I missed it that's all I can say.

THE COURT: I appreciate that. No worries. I just do need to address it each time.

MR. KELSKY: I understand.

THE COURT: It's very important to me. Let's do this then. Let's take a ten minute break. We're going to stay signed on on the Zoom.

Mr. Blatt can step out and make a cellphone call to you, so you all can kind of go out of the courtroom, so you can get service and all of that. And then we'll come back in and let's say 15 minutes.

MR. KELSKY: Thank you, your Honor.

(Recess taken from 11:59 a.m. to 12:15 p.m.)

THE COURTROOM DEPUTY: All rise. Court is back in session.

THE COURT: Everyone, please have a seat. Okay. Folks, we took a little bit of a break.

Mr. Kelsky, did you have an opportunity to make contact with Mr. Blatt?

MR. KELSKY: I did, your Honor.

THE COURT: Okay. And is there anything else that we need to discuss before I let you all go?

MR. KELSKY: No. To the extent that Mr. Blatt is a fund manager, and what he's able to do, you had asked me some questions about accountants and whatnot.

What he's able to do is he's able to explain what some of the disputed terms mean from a fund manager's perspective and I would offer him up to be questioned if your Honor wanted it.

THE COURT: Okay. I think it's a pretty complicated contract. That having been said, other than a couple sentences, I actually understand it, but that may be because I'm borderline on the spectrum, who knows. That's just how it is, but I appreciate it.

Anything else from your side, Mr. Caponi?

MR. CAPONI: No, your Honor.

THE COURT: So, I think what I need to do is really iron out a few things, figure out which way I'm going to go on it.

If I feel that a TRO is appropriate, then I have to

analyze the standing issue much more carefully. If I don't think a TRO is appropriate, I think I can write an order that really doesn't get to the standing issue.

You know, those lines you read in opinions, assuming but not agreeing, whatever it says, something like that. But I would say give me a week to really wrap my head around everything, and we'll get you an order out close to the end of the month.

DMR. CAPONI: Thank you, your Honor.

THE COURT: Thank you for your hard work. Obviously, a lot has gone into this case in a short period of time.

And then lastly, whatever I do, I think we do have to figure out whether it should all be in front of one judge. I don't think you all want to be going to Miami and here and getting rulings from all different people and waving my ruling in front of somebody and waving their ruling around in front of me. Maybe that's something you all can agree on.

MR. KELSKY: I do -- your Honor may not be aware but in the case in front of Judge Gayles, it was removed from state court.

We have pending in front of Judge Gayles a motion to remand because Roderyck Reiter is a resident in the Southern District of Florida as is Eli Blatt. So I don't know what will wind up happening with that, and we haven't been served in the Williams case, so I just wanted your Honor to be aware of those

things.

THE COURT: All right. We'll see. Maybe Judge Gayles' case is completely different, but it's not a diversity case so I don't know -- I mean, this is not here before me as a diversity matter, right?

MR. KELSKY: Correct.

THE COURT: So, I don't know if the fact that it's Florida on both sides affects that, but that case may be.

MR. KELSKY: Or it may not be. It may wind up being remanded back to state court.

THE COURT: If it's a federal question, then the remand doesn't play into it.

MR. KELSKY: That's not a federal question.

THE COURT: Got it. Listen, again, thanks for your hard work, and we will get something out to you as soon as we can. I think you all know how busy our district is so we'll do our best.

MR. KELSKY: Thank you, your Honor.

MR. CAPONI: Thank you, your Honor.

(Hearing adjourned at 12:30 p.m.)

C E R T I F I C A T E

I, Ellen A. Rassie, RMR-CRR, Federal Official Realtime Court Reporter, in and for the United States District Court for the Southern District of Florida, do hereby certify that pursuant to Section 753, Title 28, United States Code that the foregoing is a true and correct transcript of the stenographically reported proceedings held in the above-entitled matter and that the transcript page format is in conformance with the regulations of the Judicial Conference of the United States.

August 3, 2026

/s/ Ellen A. Rassie, RMR-CRR
Federal Official Court Reporter
to the Honorable Rodney Smith
299 E. Broward Blvd., Room 207-C
Fort Lauderdale, Florida 33301

**DMR. CAPONI: [4]** 6/3 30/5 30/7 52/9
**MR. BLATT: [2]** 47/14 47/19
**MR. CAPONI: [20]** 4/14 5/3 5/20 10/6 14/20 16/4 17/2 17/4 17/11 19/5 20/12 25/17 26/2 38/1 39/10 40/16 44/9 48/16 51/21 53/19
**MR. CASEY: [5]** 8/9 8/13 9/19 9/24 14/15
**MR. KELSKY: [66]**
**MR. MORTON: [2]** 2/22 2/24
**THE COURT: [83]**
**THE COURTROOM DEPUTY: [2]** 2/2 50/24

**$**

**$30 [1]** 24/12
**$373,202 [1]** 31/16
**$580 [1]** 24/3
**$725,000 [1]** 32/23

**'**

**'21 [1]** 23/3
**'22 [3]** 23/3 39/1 39/6
**'23 [1]** 39/1
**'24 [1]** 39/1
**'25 [1]** 39/1

**.**

**.44662 [1]** 32/16
**.44662 percent [1]** 32/16
**.4662 [1]** 32/15
**.4662 percent [1]** 32/15

**/**

**/s [1]** 54/14

**1**

**1 [13]** 3/18 18/8 23/6 23/11 23/11 23/25 31/25 33/1 37/15 37/23 37/24 39/13 43/15
**10 [4]** 23/6 23/25 31/25 38/25
**10,000 [1]** 21/2
**11 [2]** 32/19 32/25
**11:59 [1]** 50/23
**12 [1]** 29/9
**12:15 [1]** 50/23
**12:30 [1]** 53/20
**12J [1]** 32/9
**12th [2]** 21/7 24/11
**13 [1]** 33/10
**14 [3]** 29/11 29/25 33/16
**15 [1]** 50/21
**150 [1]** 1/13
**155 [1]** 24/13
**16 [2]** 9/22 12/23
**1679 [1]** 7/5
**1690 [1]** 7/5
**1704 [1]** 1/15
**17th [3]** 3/8 3/25 26/1
**18 [1]** 11/15
**180 [2]** 23/9 23/16
**19801 [1]** 1/21
**1s [26]** 21/16 21/19 22/11 25/3 31/25 37/5 37/17 37/17 38/2 38/15 38/24 38/25 38/25 39/5 39/7 39/8 39/9 39/21 39/24 40/2 40/5 40/9 40/17 45/22 45/24 45/25

**2**

**2 [3]** 43/15 43/16 44/6
**2.1 [1]** 27/5
**2.1A [1]** 27/5
**2.1C [1]** 27/11
**20 [3]** 8/21 23/13 48/4
**20 percent [1]** 23/13
**200 [1]** 1/18
**2021 [1]** 32/23
**2021C [2]** 27/15 37/25
**2022 [1]** 38/2
**2023 [3]** 8/14 10/10 38/5
**2026 [4]** 1/5 23/12 32/24 54/14
**207 [2]** 1/24 54/15
**207-C [2]** 1/24 54/15
**22 [1]** 33/22
**225 [1]** 24/13
**23 [6]** 37/12 37/14 38/23 39/3 39/19 45/23
**24 [1]** 1/5
**24th [2]** 3/9 24/9
**26 [2]** 1/2 50/1
**26-CV-61179 [1]** 1/2
**28 [1]** 54/7
**299 [2]** 1/24 54/15

**3**

**3 [2]** 28/3 54/14
**30 [1]** 23/12
**300 [2]** 1/13 8/5
**300,000 [1]** 24/4
**30th [2]** 24/10 24/10
**31st [1]** 1/15
**33131 [1]** 1/19
**33137 [1]** 1/16
**33301 [2]** 1/25 54/16
**33324 [1]** 1/14
**373 [1]** 43/25
**375,260 [1]** 43/25
**39th [1]** 1/18

**4**

**4 [2]** 38/6 43/16
**4,000 [4]** 3/15 3/16 3/17 3/23
**40 [1]** 40/24
**40 percent [1]** 40/24

**5**

**5 [1]** 26/4
**50 [1]** 42/18
**501 [1]** 1/15

**6**

**6 [3]** 11/14 27/14 43/22
**6,470 [1]** 23/7
**600 [1]** 1/21
**61179 [1]** 1/2
**647 [2]** 23/4 23/25

**7**

**7 [5]** 27/19 28/2 28/3 43/21 43/22
**7'2 [1]** 8/5
**7.1 [1]** 27/19
**7.3 [1]** 33/22
**7.4 [2]** 27/19 33/23
**7.5 [1]** 33/23
**753 [1]** 54/7

**8**

**8 [3]** 29/4 37/13 39/17

**9**

**9 [14]** 6/14 6/15 20/6 28/21 30/2 30/4 30/6 30/7 30/7 31/10 33/11 34/6 35/2 43/23
**901 [1]** 1/21
**9:55 [1]** 2/1

**A**

**a.m [2]** 2/1 50/23
**able [6]** 10/17 43/4 49/17 51/9 51/11 51/11
**about [29]** 2/13 2/21 3/1 3/22 6/5 6/12 10/14 11/3 16/22 17/13 18/1 18/2 20/1 20/17 21/5 21/7 22/14 22/14 22/21 37/13 38/24 43/12 43/14 44/18 45/5 48/24 49/5 49/24 51/10
**above [1]** 54/10
**above-entitled [1]** 54/10
**absolutely [2]** 4/14 34/24
**abused [1]** 45/12
**acceptable [1]** 50/11
**access [1]** 45/10
**account [3]** 31/11 31/13 31/16
**accountant [2]** 40/1 40/7
**accountants [1]** 51/10
**accounting [2]** 26/18 40/8
**acknowledging [1]** 11/24
**acquire [4]** 28/11 28/13 28/18 28/18
**acquired [2]** 28/20 31/4
**acquiring [1]** 31/4
**across [3]** 11/14 20/14 48/17
**act [2]** 5/24 11/24
**action [5]** 4/24 14/12 14/13 18/12 18/23
**actions [3]** 13/1 13/2 13/23
**actual [3]** 6/15 7/3 27/14
**actually [12]** 6/8 7/4 8/13 9/7 14/11 15/18 17/13 23/10 23/11 29/2 38/13 51/17
**added [1]** 33/1
**addition [3]** 9/3 32/13 42/13
**additional [2]** 3/6 23/15
**address [5]** 42/19 47/13 47/13 47/22 50/13
**addressed [1]** 6/21
**adjourned [1]** 53/20
**admission [1]** 33/12
**admitted [2]** 25/1 36/14
**advance [1]** 23/3
**affect [1]** 44/2
**affects [1]** 53/8
**affidavit [1]** 6/16
**affiliation [1]** 33/19
**affirmative [3]** 11/24 13/5 20/5
**affirmatively [2]** 9/8 43/21
**after [6]** 3/25 8/16 23/12 33/25 34/10 44/6
**again [12]** 9/13 16/5 19/3 19/20 31/17 35/8 42/6 44/10 45/7 45/20 50/10 53/14
**against [8]** 8/25 13/8 13/9 13/18 13/24 13/25 20/19 36/18
**agree [6]** 4/13 7/20 40/8 40/25 41/14 52/17
**agreed [3]** 3/5 7/10 8/17
**agreeing [1]** 52/5
**agreement [47]** 4/16 5/21 5/21 5/23 11/12 16/5 19/6 19/17 20/7 21/9 21/10 21/22 21/25 22/17 24/1 24/25 25/8 26/5 27/1 27/12 27/15 27/16 29/5 29/13 29/22 29/23 30/11 30/11 31/8 31/8 31/11 31/12 33/12 33/17 34/19 36/16 36/19 36/20 36/21 36/24 37/22 39/3 39/9 41/7 41/13 41/16 41/17
**agreements [2]** 15/23 38/13
**ahead [2]** 27/18 33/10
**AI [16]** 48/10 48/11 49/1 49/3 49/4 49/5 49/6 49/8 49/9 49/10 49/10 49/14 49/19 49/24 49/24 50/2
**all [53]** 2/25 5/17 6/7 7/20 7/25 8/3 8/7 8/7 8/13 10/14 13/21 14/19 15/8 15/19 16/13 18/23 19/10 19/17 19/20 20/17 21/20 22/7 25/2 25/13 26/15 26/17 27/20 27/22 29/23 30/19 33/25 34/11 34/19 35/16 38/12 44/2 48/14 48/19 48/19 48/24 49/18 50/4 50/11 50/19 50/20 50/24 51/7 52/13 52/14 52/15 52/17 53/2 53/16
**all's [1]** 3/24
**allegation [1]** 17/22
**allegations [3]** 17/16 18/2 18/10

**A**

**allegedly [2]** 10/9 12/10
**alleging [1]** 35/23
**almost [1]** 48/7
**alone [1]** 45/2
**along [1]** 13/21
**already [1]** 42/13
**also [4]** 1/22 17/8 18/22 49/3
**although [4]** 17/23 20/20 23/5 34/7
**always [2]** 46/23 47/1
**am [3]** 15/13 23/24 37/1
**amongst [1]** 10/23
**amount [3]** 22/23 23/3 23/5
**analogy [1]** 26/11
**analyze [1]** 52/1
**another [5]** 7/22 10/17 19/8 31/1 46/9
**answer [2]** 19/22 23/17
**Anthropics [1]** 49/2
**any [20]** 3/6 11/16 15/19 16/15 16/16 17/7 17/16 17/16 27/9 28/14 29/18 34/20 35/14 37/7 44/7 47/8 47/13 48/14 48/15 48/17
**anybody [1]** 42/9
**anyone [2]** 7/23 10/18
**anything [17]** 5/17 12/6 12/13 18/4 18/14 19/1 20/13 23/10 25/15 35/8 36/5 38/9 46/21 48/8 50/5 51/6 51/20
**anywhere [1]** 19/14
**apologize [4]** 47/14 48/6 50/4 50/10
**apparently [3]** 11/6 31/24 44/21
**appearances [2]** 1/11 2/15
**appeared [1]** 11/23
**appears [2]** 6/22 10/1
**appellate [1]** 49/24
**appreciate [3]** 48/24 50/12 51/19
**appropriate [3]** 14/25 51/25 52/2
**appropriately [1]** 16/14
**arbitration [6]** 3/2 11/11 19/8 45/3 45/7 45/7
**are [70]**
**aren't [2]** 4/5 49/14
**argue [3]** 20/19 20/21 43/4
**argued [1]** 12/23
**arguing [5]** 10/16 24/8 24/16 24/17 41/22
**argument [11]** 3/5 3/12 4/18 4/23 5/7 17/7 19/13 20/3 20/20 20/25 21/7
**arguments [4]** 16/20 19/14 43/2 47/8
**around [2]** 52/6 52/16
**articulates [1]** 28/4
**as [80]**
**ask [4]** 5/14 22/19 46/9 47/17
**asked [4]** 9/25 30/23 38/16 51/9
**asking [6]** 9/13 9/20 35/19 35/20 35/21 47/20
**asserted [2]** 7/3 13/21
**asset [1]** 26/25
**assets [7]** 15/9 15/10 26/24 27/8 27/9 30/20 38/6
**associate [2]** 48/3 49/16
**associates [3]** 49/13 49/15 49/17
**assume [4]** 3/16 20/2 46/10 46/11
**assuming [1]** 52/4
**at [43]** 2/1 5/22 7/17 8/16 12/11 14/24 17/24 20/8 20/16 22/4 22/11 23/21 24/12 24/13 24/13 26/10 26/18 27/1 27/11 27/18 28/3 31/25 32/9 33/16 34/2 34/9 34/13 34/17 34/18 34/22 35/3 39/16 40/2 40/8 40/10 44/2 44/15 44/19 46/14 47/10 48/18 49/22 53/20
**Atalanta [1]** 8/4
**attached [3]** 3/23 29/15 38/11
**attempt [2]** 12/7 48/8
**attempting [1]** 7/7
**attention [2]** 48/2 48/21
**attorney's [1]** 17/5
**August [2]** 24/11 54/14
**August 12th [1]** 24/11
**authority [8]** 4/24 5/4 5/5 6/24 10/10 10/25 11/16 38/9
**authorizations [1]** 29/14
**authorized [1]** 27/3
**available [2]** 11/17 11/18
**avoid [1]** 12/12
**aware [5]** 14/17 21/6 48/21 52/18 52/25
**away [5]** 9/14 9/20 12/5 22/16 44/16

**B**

**back [11]** 6/20 8/14 8/22 10/10 12/16 14/13 47/3 48/18 50/20 50/24 53/10
**background [2]** 10/22 11/3
**backtracking [1]** 44/13
**backup [1]** 19/13
**balancing [6]** 42/25 43/3 43/5 43/7 43/11 44/7
**based [9]** 17/22 23/11 23/16 23/19 24/24 35/8 46/5 48/1 49/21
**basically [7]** 3/21 17/21 18/23 21/9 29/7 32/23 42/6
**basis [2]** 23/7 45/1
**baskets [1]** 3/1
**be [79]**
**bearing [1]** 32/17
**became [5]** 27/17 29/6 29/17 30/1 33/14
**because [54]** 5/9 5/12 8/3 8/10 8/15 8/19 9/5 9/9 9/25 10/16 12/1 12/18 13/12 13/17 15/18 15/21 22/2 22/11 22/22 23/2 24/13 25/21 26/21 31/18 31/22 32/6 32/12 33/4 34/15 35/9 35/13 37/1 37/5 38/17 41/1 41/18 42/25 43/3 44/2 44/5 45/4 45/8 45/25 46/14 46/18 46/19 47/4 48/2 48/12 49/11 49/14 49/18 51/17 52/22
**becoming [2]** 30/15 30/15
**been [27]** 6/16 7/14 7/16 7/18 7/19 7/23 9/9 10/15 10/17 11/6 13/4 14/24 16/3 16/14 16/24 23/9 26/6 28/8 36/14 36/15 40/22 43/22 45/11 45/24 46/23 51/16 52/24
**before [20]** 1/9 7/22 8/4 8/15 9/1 9/4 9/9 15/16 16/13 17/6 22/23 23/10 23/15 30/7 47/5 47/12 48/17 50/8 51/7 53/4
**beginning [1]** 32/10
**begins [1]** 31/16
**behalf [7]** 2/19 4/24 5/24 9/3 13/9 19/18 29/10
**behavior [1]** 44/24
**being [16]** 6/1 6/7 11/18 13/15 15/7 18/3 20/1 24/21 24/25 25/10 30/13 31/14 31/17 44/17 45/5 53/9
**believe [17]** 4/9 4/10 5/1 7/18 13/11 13/12 13/22 13/25 14/21 18/11 18/15 23/6 23/14 42/19 43/22 49/1 49/3
**belong [1]** 37/8
**Ben [1]** 2/19
**benchmarks [1]** 23/14
**Benjamin [1]** 1/12
**best [4]** 12/11 20/25 26/10 53/17
**better [1]** 16/13
**between [8]** 11/8 15/24 21/23 24/1 25/11 38/17 41/5 42/10
**binder [1]** 25/19
**Biscayne [1]** 1/18
**bit [3]** 16/17 47/7 51/2
**black [2]** 30/17 31/9
**blanket [1]** 19/10
**Blatt [37]** 1/22 4/23 5/4 6/1 6/7 6/17 8/14 8/17 8/25 9/8 13/7 13/19 13/22 14/6 17/23 18/8 18/9 18/10 18/12 19/18 19/19 20/4 20/8 36/3 36/9 41/5 42/20 45/4 46/11 46/17 46/24 47/1 47/2 50/18 51/4 51/8 52/23
**blood [1]** 44/11
**Blvd [3]** 1/18 1/24 54/15
**Boca [2]** 19/23 20/1
**boil [1]** 45/21
**bolded [1]** 39/17
**borderline [1]** 51/18
**borne [1]** 33/7
**Boston [1]** 17/24
**both [5]** 2/20 2/23 34/18 35/6 53/8
**bother [1]** 15/2
**Brad [2]** 1/13 2/18
**break [4]** 6/13 47/21 50/16 51/2
**brief [7]** 3/16 3/19 3/21 3/23 7/19 12/20 47/15
**briefed [2]** 7/19 41/21
**bring [5]** 4/24 6/19 7/8 20/4 48/20
**bringing [1]** 5/18
**brought [7]** 5/16 7/7 9/8 11/18 13/8 38/21 48/2
**Browaed [1]** 1/24
**Broward [1]** 54/15
**bunch [1]** 18/24
**business [1]** 42/5
**busy [1]** 53/16
**but [67]**
**buy [1]** 36/21
**buying [2]** 23/20 23/20

**C**

**C [7]** 1/24 27/2 28/9 28/14 53/21 54/1 54/15
**Cadillac [2]** 26/13 26/14
**call [2]** 27/15 50/18
**called [4]** 2/1 12/22 21/4 21/10
**came [8]** 3/25 4/1 4/19 37/17 37/17 38/18 38/19 48/17
**can [36]** 2/7 4/8 5/16 8/12 10/24 12/5 20/4 22/1 22/16 22/24 23/10 23/13 23/14 23/15 25/15 26/7 26/8 28/13 29/1 31/13 32/21 36/23 42/4 42/19 47/10 47/19 47/21 49/10 50/4 50/11 50/18 50/19 50/19 52/2 52/17 53/16
**can't [6]** 20/22 22/3 23/5 30/21 38/8 41/10
**candor [1]** 11/3
**capital [11]** 1/3 2/10 28/9 28/9 28/9 31/10 31/12 31/15 32/10

**C**

**capital... [2]** 32/11 39/17
**Caponi [9]** 2/22 4/13 5/2 14/19 18/25 25/13 35/24 36/8 51/20
**car [3]** 26/12 30/21 30/22
**care [3]** 3/22 43/12 43/14
**careful [3]** 48/24 49/23 50/6
**carefully [1]** 52/1
**carry [1]** 36/17
**case [54]** 1/2 3/15 3/22 4/2 6/22 6/25 7/3 7/12 7/15 7/17 8/13 8/14 8/18 8/18 8/21 8/25 9/4 9/6 9/13 9/25 9/25 11/23 11/23 12/17 12/18 13/10 13/11 13/13 13/14 13/19 14/7 14/8 14/10 14/15 14/17 15/21 37/19 39/14 40/22 41/15 43/8 46/21 47/4 47/23 48/5 48/10 48/11 49/11 52/11 52/19 52/25 53/3 53/4 53/8
**cases [7]** 4/21 7/8 9/7 9/10 9/23 12/23 14/4
**Casey [6]** 1/15 4/19 6/9 8/11 13/3 20/6
**Casey's [1]** 14/5
**cash [6]** 34/3 34/11 34/13 34/17 34/22 35/5
**caught [1]** 11/10
**cause [1]** 18/12
**cellphone [1]** 50/18
**certain [3]** 22/23 23/13 45/10
**certainly [3]** 7/17 13/10 37/5
**certificates [1]** 29/24
**certify [1]** 54/6
**cetera [6]** 26/13 26/14 26/16 27/7 27/23 29/8
**Chancery [1]** 11/16
**change [2]** 32/11 35/13
**changed [4]** 31/15 35/2 35/3 35/13
**changes [1]** 32/11
**chapter [2]** 11/15 23/5
**charges [1]** 36/18
**check [2]** 48/3 48/13
**checks [1]** 48/3
**chose [1]** 11/12
**Chrysler [2]** 26/13 26/14
**circuit [1]** 50/8
**citation [1]** 48/19
**cite [2]** 23/5 50/10
**cited [1]** 48/5
**citing [1]** 47/23
**claim [6]** 7/3 7/7 7/8 8/19 14/10 20/4
**claiming [3]** 5/4 12/8 30/22
**claims [6]** 13/8 18/7 18/21 18/21 18/21 18/23
**clarity [1]** 17/13
**Class [9]** 5/21 6/18 13/22 20/8 42/21 45/15 45/16 45/18 46/15
**clause [1]** 7/6
**clear [4]** 14/3 35/16 38/9 38/19
**clearly [4]** 10/15 14/20 16/19 21/4
**client [29]** 10/6 10/9 10/11 10/14 10/19 10/24 11/6 11/9 11/18 13/3 14/5 15/13 21/23 22/17 33/14 33/19 33/19 34/24 35/17 38/5 38/7 38/11 38/12 38/21 40/18 42/17 43/16 44/18 46/1
**client's [4]** 10/9 15/5 43/8 43/13
**clients [1]** 7/17
**clog [1]** 44/21
**close [1]** 52/7
**closed [1]** 35/14
**closer [1]** 24/11
**closes [1]** 24/9
**Co [1]** 11/14
**COAST [9]** 1/6 2/10 2/21 26/4 27/1 32/6 33/19 37/24 39/13
**Code [1]** 54/7
**cognizable [1]** 8/24
**collateral [2]** 10/19 13/16
**colored [1]** 43/23
**combination [2]** 34/13 34/22
**come [8]** 3/9 6/13 15/1 20/14 37/18 45/2 46/24 50/20
**comes [3]** 24/4 40/22 42/12
**comfortable [1]** 42/15
**coming [4]** 11/5 36/18 38/6 45/24
**comments [1]** 19/10
**common [1]** 31/9
**communications [4]** 18/9 18/11 18/17 36/3
**companies [1]** 27/4
**company [15]** 21/21 22/4 22/5 23/20 26/5 26/12 27/2 27/15 28/9 28/13 28/19 29/2 29/13 31/2 33/11
**complaint [5]** 7/2 7/4 17/15 17/22 45/2
**complaints [1]** 50/1
**complete [2]** 38/22 41/6
**completely [3]** 36/7 50/2 53/3
**complex [1]** 10/3
**complicated [1]** 51/15
**comport [1]** 45/22
**computer [2]** 2/6 3/17
**concept [1]** 27/10
**concern [2]** 9/11 48/17
**concerns [1]** 10/11
**confer [2]** 47/15 47/17
**Conference [1]** 54/12
**confirms [1]** 27/5
**conformance [1]** 54/11
**confused [2]** 31/24 37/5
**confusion [2]** 41/23 47/2
**connection [2]** 17/16 17/19
**consensus [1]** 41/5
**consent [1]** 6/6
**consideration [2]** 6/8 20/9
**consistent [1]** 41/20
**contact [1]** 51/4
**contention [1]** 41/19
**contested [1]** 23/6
**contingent [1]** 24/8
**continuation [2]** 33/11 34/6
**continue [1]** 28/12
**contract [12]** 12/4 18/21 18/21 20/23 24/19 25/15 29/25 41/11 42/5 43/9 45/23 51/16
**contracted [1]** 12/10
**contracts [5]** 15/23 22/25 23/19 23/21 35/24
**contractual [1]** 12/7
**control [6]** 9/11 10/13 14/22 22/1 25/7 33/21
**controlled [1]** 38/12
**controlling [1]** 45/5
**controls [3]** 10/12 38/8 44/19
**controversies [1]** 4/21
**controversy [1]** 5/12
**copy [1]** 5/23
**core [4]** 25/19 26/2 36/1 36/2
**correct [5]** 41/14 48/5 48/11 53/6 54/8
**corrected [3]** 48/7 48/25 50/10
**costs [2]** 16/22 16/23
**could [10]** 7/24 8/9 18/3 18/4 18/5 22/2 28/17 28/18 37/9 44/5
**couldn't [5]** 8/2 8/3 8/5 8/19 47/5
**counsel [4]** 2/14 31/24 47/16 47/18
**Count [1]** 18/8
**counterpart [1]** 29/15
**couple [3]** 16/25 19/25 51/16
**course [2]** 3/2 20/23
**court [29]** 1/1 1/23 2/1 2/3 2/14 2/15 4/7 8/21 9/25 10/3 11/15 11/19 12/2 12/14 14/13 14/14 27/22 42/16 43/4 44/16 45/10 48/8 50/8 50/24 52/20 53/10 54/4 54/5 54/14
**court's [1]** 48/20
**courted's [1]** 44/22
**courtroom [1]** 50/19
**courts [4]** 9/14 10/18 25/18 49/24
**create [1]** 18/13
**created [2]** 30/9 45/19
**credits [1]** 27/6
**CRR [3]** 1/23 54/3 54/14
**current [1]** 36/10
**currently [1]** 9/22
**cut [1]** 49/6
**cuts [1]** 26/19
**CV [1]** 1/2

**D**

**D [1]** 27/2
**damage [1]** 10/19
**danger [1]** 43/4
**date [1]** 29/14
**dated [1]** 29/13
**day [3]** 10/2 23/10 49/12
**days [1]** 23/16
**DC [1]** 1/21
**deal [11]** 3/7 4/20 4/21 9/1 16/19 20/15 37/4 43/16 43/17 44/25 45/1
**dealing [3]** 7/13 40/14 43/5
**deals [1]** 47/8
**debt [1]** 26/16
**debts [8]** 27/7 27/9 27/22 30/19 33/25 34/12 34/20 35/5
**dec [1]** 18/23
**decision [5]** 6/19 6/23 7/12 12/15 34/10
**decisions [1]** 49/21
**declaration [1]** 8/17
**decreased [1]** 21/16
**deductions [1]** 27/6
**Defendant [2]** 1/7 1/17
**defendants [2]** 11/24 36/10
**defer [2]** 7/11 12/8
**defined [3]** 28/10 37/24 44/4
**definition [1]** 13/15
**deflect [1]** 12/7
**Del [1]** 11/14
**Delaware [7]** 11/15 11/15 17/22 19/7 19/8 26/7 26/7
**deliberate [1]** 38/22
**deliver [4]** 37/16 39/21 42/11 42/16
**delivered [1]** 41/17
**delivery [2]** 37/13 37/14
**democratizer [1]** 49/9
**department [1]** 26/18
**depends [1]** 5/20
**described [1]** 30/13
**desk [1]** 20/14
**despite [1]** 45/13
**determined [1]** 27/20
**determines [1]** 12/16
**developed [1]** 49/16
**DFJ [5]** 28/21 33/11 34/6 35/2 35/4
**did [8]** 12/17 22/17 37/19 48/15 48/18 50/4 51/3 51/5

### D

**didn't [10]** 6/11 12/18 15/1 15/12 16/1 37/18 37/22 46/22 47/5 47/6
**differences [1]** 38/21
**different [9]** 5/5 13/1 17/6 24/6 37/8 43/10 43/15 52/15 53/3
**differently [2]** 36/12 39/7
**diluted [2]** 22/10 31/17
**diminishes [2]** 5/8 15/12
**diminishing [1]** 15/10
**diminution [1]** 25/3
**direct [3]** 15/10 30/13 36/13
**direction [2]** 23/24 34/22
**directly [5]** 13/20 28/18 29/1 31/1 31/4
**director [1]** 5/17
**disagree [3]** 17/2 17/4 36/19
**disagreement [2]** 10/12 38/8
**disaster [1]** 49/5
**disclosures [1]** 37/14
**disconnect [1]** 25/11
**discovery [1]** 11/23
**discretion [3]** 34/2 34/13 34/18
**discuss [1]** 51/7
**dismiss [1]** 8/23
**dismissed [5]** 8/16 8/19 9/5 14/16 14/17
**dispute [11]** 11/16 14/21 14/21 20/24 24/19 24/20 35/10 44/5 45/6 45/9 46/23
**disputed [1]** 51/12
**dissolution [1]** 32/13
**dissolved [1]** 33/2
**distributed [3]** 23/10 23/15 34/21
**distribution [6]** 34/2 34/12 34/17 35/4 35/5 40/24
**distributions [5]** 27/20 27/20 27/22 30/19 33/24
**district [19]** 1/1 1/1 1/10 2/2 2/3 9/11 9/22 17/17 18/1 18/4 18/4 18/5 18/16 19/3 19/24 52/23 53/16 54/5 54/6
**disturbing [1]** 10/24
**diversity [2]** 53/3 53/5
**division [1]** 26/13
**divisions [3]** 26/12 26/15 26/23
**do [43]** 4/5 4/22 6/12 9/14 9/20 13/2 16/9 16/20 17/2 17/3 17/4 19/5 19/16 19/22 22/2 29/1 31/21 32/1 33/21 36/2 38/9 38/14 38/14 40/18 40/24 41/25 42/1 42/5 43/7 46/18 48/8 50/4 50/7 50/12 50/15 51/9 51/11 51/22 52/12 52/12 52/18 53/16 54/6
**docket [2]** 14/17 44/22
**Dockets [1]** 11/5
**document [18]** 19/7 19/13 27/13 28/1 28/24 29/5 29/8 29/15 29/17 29/25 30/14 31/25 32/2 33/13 38/22 39/11 40/20 48/1
**documents [14]** 3/20 3/20 16/6 19/16 19/17 19/20 26/3 30/8 31/23 35/9 36/12 41/20 41/22 41/24
**Doe [2]** 41/9 41/10
**does [3]** 20/2 28/17 40/17
**doesn't [10]** 4/7 4/23 5/4 11/20 12/9 43/20 47/24 49/9 52/3 53/12
**doing [6]** 12/6 29/8 36/15 36/15 42/14 46/21
**dollar [1]** 15/7
**don't [56]**
**done [2]** 16/14 44/21
**door [1]** 7/24
**double [1]** 48/12
**doublecheck [1]** 48/3
**down [9]** 5/5 17/19 26/19 32/13 33/1 37/4 40/13 45/21 49/6
**Dr. [5]** 36/3 42/20 46/24 47/1 47/2
**Dr. Blatt [5]** 36/3 42/20 46/24 47/1 47/2
**drafting [1]** 48/1
**dragging [1]** 15/16
**drive [3]** 14/23 30/21 33/10
**due [1]** 24/10

### E

**E [5]** 1/13 1/24 54/1 54/1 54/15
**each [14]** 5/5 5/22 26/13 26/15 26/19 26/24 27/6 27/7 27/12 30/10 31/22 38/17 38/19 50/13
**economic [3]** 28/11 31/5 31/5
**effect [2]** 9/10 17/1
**effective [1]** 29/14
**effectively [1]** 32/22
**effectuating [1]** 16/2
**efficient [1]** 26/19
**either [6]** 17/7 34/3 34/12 34/22 35/5 47/9
**electronic [2]** 37/13 37/14
**elements [3]** 20/18 21/1 42/25
**Eleventh [1]** 12/15
**Eli [2]** 1/22 52/23
**Ellen [3]** 1/23 54/3 54/14
**else [4]** 15/16 48/18 51/6 51/20
**else's [1]** 22/1
**elsewhere [1]** 25/7
**eluding [1]** 20/16
**emergency [1]** 46/8
**Encouraging [1]** 44/24
**end [3]** 17/10 20/16 52/7
**ending [1]** 32/10
**ends [3]** 23/12 31/16 44/6
**enforcing [1]** 13/18
**enjoin [1]** 44/11
**enough [3]** 4/12 4/12 4/17
**entered [1]** 36/15
**entire [2]** 17/15 35/8
**entirety [1]** 38/24
**entities [5]** 21/3 22/8 22/12 25/11 26/21
**entitle [1]** 40/24
**entitled [3]** 30/18 30/20 54/10
**entity [21]** 5/25 10/12 10/13 13/6 14/22 19/7 19/8 26/8 31/5 31/6 31/19 32/3 32/5 33/13 38/14 39/11 42/3 42/3 42/7 44/19 45/15
**enunciated [1]** 42/13
**envision [1]** 24/21
**equate [1]** 13/14
**equities [2]** 43/12 44/8
**equity [16]** 1/6 2/10 2/21 26/5 27/2 27/24 27/25 28/15 30/17 32/6 32/18 33/19 34/25 35/2 37/24 39/13
**equivalent [3]** 23/4 23/7 24/3
**error [1]** 47/25
**escalating [1]** 38/10
**Esq [5]** 1/12 1/13 1/15 1/18 1/20
**essentially [6]** 7/2 21/17 22/10 24/3 36/18 46/2
**establish [2]** 18/12 27/3
**established [2]** 27/23 33/25
**establishing [1]** 44/19
**estate [1]** 37/3
**estoppel [1]** 13/16
**et [6]** 26/13 26/14 26/16 27/6 27/23 29/8
**even [10]** 3/9 3/18 12/17 30/25 40/16 41/3 41/4 42/17 43/9 45/7
**event [3]** 35/16 46/6 48/6
**events [1]** 10/4
**eventually [2]** 8/24 49/13
**ever [3]** 9/19 10/13 31/4
**Every [1]** 15/7
**everybody [1]** 7/24
**everyone [7]** 2/5 3/5 7/23 15/16 25/20 38/15 51/1
**everyone's [1]** 3/10
**everything [6]** 4/10 17/6 19/14 44/12 48/18 52/7
**evidence [4]** 3/25 4/5 19/13 40/5
**evidenced [1]** 22/10
**exact [1]** 7/13
**exactly [1]** 37/4
**example [5]** 5/6 18/8 24/9 37/12 49/9
**except [1]** 18/23
**exclusively [1]** 6/16
**excuse [1]** 43/22
**executed [1]** 29/15
**executes [1]** 29/12
**exhibit [6]** 6/9 6/14 6/15 20/5 20/6 20/10
**exhibits [1]** 25/19
**exist [1]** 47/24
**existed [1]** 40/14
**existing [1]** 28/16
**exists [2]** 35/11 44/8
**expect [5]** 33/2 33/25 37/16 39/20 45/24
**expected [2]** 45/25 46/1
**expecter [1]** 27/22
**expert [2]** 40/1 40/8
**explain [1]** 51/11
**explaining [1]** 48/9
**explains [1]** 3/16
**explicitly [1]** 36/19
**express [1]** 45/16
**extensively [1]** 7/19
**extent [5]** 7/21 40/5 45/11 49/8 51/8

### F

**F [1]** 54/1
**fact [10]** 6/25 7/14 24/24 31/20 36/16 37/22 39/24 42/20 46/5 53/7
**facts [2]** 36/1 36/2
**failed [1]** 9/5
**failure [1]** 14/16
**fairly [1]** 10/3
**fall [1]** 32/20
**false [2]** 32/21 50/2
**family [1]** 37/9
**family's [1]** 37/2
**far [4]** 5/14 7/11 7/17 24/18
**faster [1]** 38/20
**favor [1]** 43/8
**FDUPTA [1]** 18/22
**federal [8]** 1/23 7/22 9/22 14/14 53/11 53/13 54/3 54/14
**fee [2]** 32/22 48/17
**feed [1]** 2/15
**feel [1]** 51/25
**fees [2]** 17/5 36/16
**feign [1]** 46/22
**ferret [1]** 48/15
**few [3]** 21/8 47/21 51/23
**fight [2]** 5/13 38/17
**fighting [1]** 10/17
**figure [9]** 3/22 16/11 16/11 16/18 36/9 42/3 42/18 51/23 52/13
**filed [13]** 3/7 8/14 8/25 9/3 10/7 11/13

## F

**filed... [7]** 14/12 17/9 20/6 20/6 26/1 35/20 35/22
**files [1]** 3/20
**filing [6]** 3/15 3/23 5/1 11/7 35/19 48/4
**filings [3]** 3/9 3/11 48/20
**final [1]** 47/22
**find [5]** 6/3 8/3 11/2 15/8 49/10
**finding [1]** 9/14
**findings [2]** 9/17 9/21
**fine [3]** 47/22 49/6 49/20
**firm [1]** 34/20
**first [11]** 2/17 15/22 30/16 39/17 40/19 42/24 43/7 44/9 47/23 49/13 49/16
**fixed [1]** 26/24
**flesh [1]** 18/6
**Floor [1]** 1/18
**FLORIDA [23]** 1/1 1/4 1/14 1/16 1/19 1/25 2/3 17/17 17/23 18/2 18/3 18/5 18/10 18/11 18/12 19/3 19/4 19/6 19/22 52/23 53/8 54/6 54/16
**folks [4]** 2/9 45/20 49/1 51/2
**follow [2]** 9/6 14/16
**following [2]** 11/7 28/14
**fonts [1]** 50/2
**food [1]** 21/2
**Ford [2]** 30/21 30/22
**foregoing [1]** 54/8
**format [1]** 54/11
**formed [2]** 28/8 28/11
**former [1]** 36/10
**Fort [4]** 1/4 1/25 18/14 54/16
**forth [2]** 6/16 25/8
**forum [1]** 12/22
**forward [3]** 10/20 15/11 45/8
**found [2]** 8/6 8/7
**four [8]** 9/10 14/3 16/16 17/19 20/18 21/1 38/2 43/1
**fourth [1]** 12/22
**Francisco [1]** 19/9
**frankly [1]** 42/4
**fraud [3]** 18/20 46/1 46/4
**front [25]** 7/1 7/3 7/8 7/9 7/18 8/1 9/16 9/22 10/21 11/13 12/2 12/22 12/23 12/24 12/24 13/5 14/4 14/5 14/11 16/12 52/13 52/16 52/16 52/19 52/21
**fund [48]** 15/5 15/12 21/15 22/6 22/7 23/22 25/1 25/1 28/4 28/21 29/16 30/9 31/11 31/14 31/18 31/20 32/8 32/16 32/20 33/11 33/14 33/21 33/21 34/6 34/6 34/10 34/23 35/2 35/4 35/4 35/12 35/14 36/22 37/15 37/18 37/23 38/7 38/12 39/4 39/8 39/17 39/20 39/23 40/4 41/10 42/8 51/9 51/12
**fund's [1]** 33/16
**fundamental [6]** 5/11 11/20 15/3 16/6 25/22 29/19
**fundamentally [1]** 44/18
**funds [13]** 5/9 15/21 15/22 15/23 19/9 25/5 25/10 29/10 29/13 41/2 41/4 41/16 42/16
**further [2]** 11/5 34/14
**future [4]** 23/2 34/9 34/17 35/3

## G

**gains [1]** 27/6
**GATES [2]** 1/17 1/20
**gave [2]** 19/2 38/16
**Gayles [9]** 8/15 8/22 9/17 12/24 13/5 14/4 14/11 52/19 52/21
**Gayles' [1]** 53/3
**general [9]** 21/3 26/11 26/17 33/18 33/23 34/2 34/9 34/18 43/17
**generate [1]** 48/10
**generated [1]** 48/11
**generative [1]** 49/5
**get [34]** 2/7 2/15 3/14 5/6 5/6 8/24 10/21 11/11 11/14 11/20 12/16 15/13 15/15 16/17 17/13 21/7 22/3 27/25 29/24 29/24 29/25 33/17 34/17 38/19 42/4 45/6 47/12 49/18 49/20 50/1 50/20 52/3 52/7 53/15
**gets [1]** 47/3
**getting [6]** 3/9 10/1 11/4 27/18 44/22 52/15
**ghost [1]** 38/16
**give [7]** 3/12 20/25 34/3 37/12 41/10 42/4 52/6
**Given [1]** 3/24
**gives [1]** 38/9
**glossed [1]** 38/23
**GM [1]** 26/14
**go [25]** 5/5 10/24 12/19 20/24 27/5 29/9 29/11 30/2 30/7 30/21 31/10 32/12 32/19 33/1 33/2 33/3 33/8 33/22 44/10 45/8 48/2 48/18 50/19 51/7 51/23
**goal [1]** 11/14
**goes [6]** 8/14 10/10 15/11 16/7 16/7 44/11
**going [40]** 2/16 3/5 3/7 4/4 12/17 14/24 15/13 20/19 21/4 24/21 25/5 25/14 26/4 31/3 33/3 33/5 33/6 35/24 36/4 36/16 36/17 38/12 41/2 41/3 41/4 41/6 41/23 41/25 42/1 42/2 42/9 42/22 43/3 46/7 46/18 49/14 49/22 50/16 51/23 52/14
**gold [2]** 38/18 38/20
**goldener [3]** 13/20 20/8 42/18
**Goldner [15]** 4/19 5/4 6/1 6/7 6/17 9/24 13/6 13/9 13/25 36/6 41/5 45/18 45/19 46/10 46/17
**Goldner's [3]** 9/15 10/2 45/14
**gone [2]** 24/14 52/11
**good [7]** 2/5 2/18 2/20 2/23 4/12 4/12 49/1
**got [14]** 2/12 2/14 3/11 3/25 4/1 4/1 4/16 21/14 27/19 38/15 45/3 48/12 49/23 53/14
**governing [3]** 27/13 30/8 31/23
**grasp [1]** 16/13
**great [3]** 49/8 49/25 49/25
**ground [1]** 14/23
**grounds [1]** 10/8
**group [2]** 2/14 26/24
**guaranteed [1]** 34/16
**guess [5]** 23/18 26/14 35/15 36/8 43/11
**guy [1]** 8/1
**guy's [1]** 8/5
**guys [3]** 3/12 12/9 49/3

## H

**had [16]** 2/25 7/12 10/15 15/15 15/22 18/8 21/6 21/9 22/19 23/22 31/5 40/1 40/4 40/7 40/10 51/9
**half [2]** 50/2 50/2
**hall [1]** 49/23
**hallmark [1]** 11/8
**hallowed [2]** 49/21 49/23
**halls [1]** 49/21
**hand [3]** 32/9 38/20 42/2
**handled [2]** 20/22 20/23
**handling [1]** 24/19
**hands [1]** 12/6
**happen [4]** 25/5 37/22 41/6 42/22
**happened [7]** 14/8 25/23 25/23 29/3 35/16 35/25 37/6
**happening [3]** 21/14 23/8 52/24
**happens [3]** 15/11 42/10 49/15
**happy [5]** 16/4 33/5 42/15 49/10 49/11
**hard [3]** 24/20 52/10 53/15
**harm [17]** 20/21 22/18 24/7 24/19 24/21 24/23 25/6 25/11 27/19 35/7 39/25 40/18 42/12 44/7 44/12 44/17 44/23
**has [36]** 5/4 6/10 6/15 6/23 7/16 7/20 9/22 11/6 14/24 15/20 16/13 21/20 22/9 24/24 26/16 26/24 28/8 30/1 31/15 31/20 31/21 31/24 32/1 32/17 32/22 33/18 35/14 35/24 36/9 36/14 38/15 40/2 44/18 45/11 45/19 52/11
**hasn't [4]** 7/23 35/1 35/3 35/13
**have [91]**
**haven't [3]** 13/4 29/18 52/24
**having [5]** 15/10 15/14 15/19 30/10 51/16
**he [19]** 5/4 6/8 7/24 8/2 8/3 8/5 8/17 8/19 8/21 9/5 12/13 15/12 16/25 17/23 17/24 18/16 19/21 20/9 40/19
**he's [15]** 9/13 9/20 12/12 17/24 18/15 41/10 41/23 42/6 46/25 46/25 47/19 47/20 51/9 51/11 51/11
**head [1]** 52/6
**hear [4]** 4/8 20/20 35/22 43/2
**heard [3]** 19/1 19/14 38/7
**hearing [12]** 1/9 2/12 4/15 12/17 12/23 17/24 20/16 36/17 42/24 47/10 48/18 53/20
**held [3]** 25/10 42/17 54/9
**help [1]** 50/9
**helpful [1]** 25/20
**helps [1]** 49/6
**her [3]** 6/22 6/23 7/1
**here [36]** 2/9 2/11 2/14 4/6 5/7 5/13 7/25 8/7 10/20 10/22 12/14 15/7 15/12 17/19 18/7 21/5 21/20 28/20 30/14 30/23 31/9 31/13 33/17 35/17 36/8 38/16 40/25 41/1 44/10 46/2 46/11 46/18 46/24 50/9 52/14 53/4
**here's [6]** 12/21 16/15 17/21 29/8 41/25 41/25
**hereby [3]** 29/12 29/14 54/6
**hey [2]** 2/5 3/21
**high [1]** 19/7
**highlighted [1]** 32/21
**him [5]** 8/3 8/3 8/23 47/21 51/13
**himself [2]** 6/17 20/9
**his [11]** 9/10 10/2 10/9 13/3 17/25 18/16 19/21 36/10 38/11

**H**

**his... [2]** 40/18 47/2
**historically [1]** 45/25
**history [1]** 10/22
**hit [1]** 11/19
**hold [1]** 12/5
**holders [2]** 27/24 30/17
**holds [1]** 27/25
**home [1]** 33/10
**honor [67]**
**Honor's [3]** 15/3 30/16 44/15
**HONORABLE [4]** 1/9 1/24 2/4 54/15
**hour [1]** 45/21
**hours [1]** 16/25
**house [3]** 3/17 15/15 16/1
**how [11]** 2/20 8/5 20/2 25/16 28/4 41/8 43/7 48/13 48/15 51/18 53/16
**However [1]** 42/2
**huge [1]** 33/6
**hyperbole [1]** 45/13

**I**

**I [222]**
**I will [1]** 19/10
**I'll [7]** 17/13 19/10 20/12 21/7 37/1 37/12 48/23
**I'm [39]** 3/9 3/17 3/22 4/4 5/12 6/11 10/16 11/2 11/4 13/7 13/17 14/17 15/2 15/25 16/4 17/21 21/4 22/22 25/13 26/4 35/16 35/21 35/25 36/8 37/5 37/9 39/3 39/8 40/23 40/23 40/25 45/6 45/7 46/3 49/4 49/5 50/3 51/18 51/23
**I've [9]** 3/25 3/25 4/1 14/25 30/8 30/23 35/22 40/22 45/3
**idea [1]** 12/5
**identifies [1]** 39/17
**if [62]**
**ignorance [1]** 46/22
**ignore [1]** 11/12
**ignores [1]** 12/6
**II [3]** 27/2 32/6 37/25
**imminent [2]** 35/7 46/6
**impact [2]** 15/10 27/8
**important [5]** 3/20 28/1 29/8 49/14 50/15
**importantly [3]** 28/12 29/10 33/22
**in [211]**
**inability [3]** 11/10 11/10 35/9
**inappropriately [1]** 16/14
**include [1]** 34/20
**including [5]** 15/16 23/23 25/20 37/16 39/21
**income [1]** 27/6
**indemnification [2]** 5/7 16/6
**indemnify [1]** 5/9
**indicated [1]** 36/4
**indictment [1]** 18/8
**indirect [2]** 30/13 30/13
**indirectly [3]** 28/14 29/1 30/25
**individuals [2]** 10/20 11/8
**information [4]** 19/2 37/16 39/21 49/18
**initial [2]** 21/6 46/14
**initiated [3]** 13/3 14/5 45/3
**injunction [2]** 2/12 3/3
**instantaneously [1]** 48/7
**instead [2]** 21/22 25/1
**interest [20]** 24/24 28/12 28/14 28/15 28/19 28/21 29/1 31/5 31/5 31/15 32/2 32/18 34/1 37/20 39/24 43/1 43/3 43/5 43/12 43/13
**interested [1]** 35/25
**interests [1]** 43/8
**interfere [1]** 43/20
**interference [1]** 43/18
**internally [1]** 42/10
**interrelated [1]** 13/23
**interruption [1]** 47/15
**intervene [2]** 7/1 9/25
**intervenor [2]** 7/2 7/4
**into [10]** 3/23 11/19 22/5 23/20 25/1 34/15 36/15 36/21 52/11 53/12
**invest [1]** 31/1
**invested [7]** 21/18 22/5 22/11 23/4 24/5 30/16 33/13
**investing [4]** 28/6 28/24 29/2 29/7
**investment [18]** 15/8 23/19 28/4 28/5 28/23 28/24 30/12 30/12 30/15 30/24 31/18 34/15 37/3 43/13 43/13 43/16 43/19 43/21
**investments [7]** 5/8 13/7 23/22 26/22 26/23 37/2 37/6
**investor [2]** 35/2 44/17
**investors [6]** 15/5 31/14 33/20 35/6 44/10 44/12
**invests [2]** 19/7 22/7
**involuntary [1]** 45/17
**involve [2]** 47/5 47/6
**involved [4]** 13/4 17/20 19/20 44/10
**involvement [1]** 43/19
**involves [6]** 5/12 10/4 13/12 13/19 15/6 18/24
**involving [1]** 13/19
**IPO [6]** 21/6 23/3 23/8 38/18 38/19 46/6
**IPOs [1]** 25/2
**iron [1]** 51/23
**ironic [1]** 15/8
**irregularities [1]** 46/5
**irrelevant [1]** 15/21
**irreparable [14]** 20/21 21/24 22/18 24/7 24/18 24/21 24/23 25/6 25/11 27/19 35/7 39/25 40/18 42/12
**IRS [3]** 26/21 32/3 32/17
**is [229]**
**Island [1]** 1/13
**isn't [2]** 6/24 47/4
**isolated [1]** 31/22
**issuance [1]** 38/24
**issue [49]** 4/11 4/20 5/11 6/22 6/23 7/11 7/13 7/18 7/21 8/12 9/1 10/23 11/11 11/20 12/1 12/2 13/12 13/18 13/19 14/12 15/4 16/9 16/10 16/20 29/20 36/7 36/9 36/21 37/6 37/8 37/10 37/10 37/23 39/4 40/4 40/9 42/10 42/20 42/25 43/6 45/12 45/14 45/19 45/21 46/19 47/23 48/25 52/1 52/3
**issued [8]** 21/13 22/20 39/7 39/9 39/23 40/3 40/17 44/5
**issues [13]** 3/1 3/13 4/21 8/18 8/25 9/5 9/8 9/10 9/12 10/3 16/21 43/4 47/13
**issuing [1]** 39/13
**it [146]**
**it's [77]**
**iterations [1]** 8/15
**its [18]** 8/15 12/6 12/9 12/11 24/14 26/16 26/16 26/24 30/10 31/15 31/24 32/18 34/12 34/13 34/25 35/2 35/5 38/24
**itself [5]** 22/4 28/21 30/25 33/14 34/16

**J**

**J [1]** 32/9
**John [2]** 41/9 41/10
**Jonathan [2]** 1/18 2/22
**judge [45]** 1/10 3/21 6/21 7/3 7/9 7/12 7/16 7/22 8/2 8/9 8/15 8/22 9/1 9/4 9/9 9/16 9/17 9/17 9/22 10/21 11/22 12/24 12/24 12/24 13/2 13/5 14/4 14/5 14/8 14/10 14/11 14/15 15/18 16/12 25/14 37/1 38/23 42/3 45/13 47/4 50/9 52/13 52/19 52/21 53/2
**judges [4]** 9/21 9/22 11/13 12/23
**judicata [1]** 13/15
**Judicial [1]** 54/12
**July [1]** 24/10
**July 30th [1]** 24/10
**Jump [1]** 50/7
**Jumping [1]** 33/10
**junction [1]** 17/19
**June [6]** 1/5 3/8 21/7 23/12 24/9 24/10
**June 12th [1]** 21/7
**June 24th [1]** 24/9
**June 30 [1]** 23/12
**June 30th [1]** 24/10
**juries [2]** 49/18 49/18
**jurisdiction [1]** 11/25
**Jurors [1]** 49/22
**just [60]**
**justice [2]** 49/21 49/23

**K**

**K [33]** 1/17 1/20 21/16 21/19 22/11 25/3 31/25 31/25 33/1 37/5 37/15 37/17 37/17 37/23 38/2 38/15 38/24 38/25 38/25 39/5 39/7 39/8 39/9 39/13 39/21 39/24 40/2 40/5 40/9 40/17 45/22 45/24 45/25
**K-1 [5]** 31/25 33/1 37/15 37/23 39/13
**K-1s [26]** 21/16 21/19 22/11 25/3 31/25 37/5 37/17 37/17 38/2 38/15 38/24 38/25 38/25 39/5 39/7 39/8 39/9 39/21 39/24 40/2 40/5 40/9 40/17 45/22 45/24 45/25
**KELSKY [27]** 1/12 1/12 1/13 2/18 2/19 4/5 4/25 9/3 10/8 10/13 15/1 15/11 17/13 19/2 19/9 19/19 20/25 26/22 29/6 35/15 38/5 38/11 40/16 40/19 43/7 44/18 51/3
**kind [15]** 3/14 4/2 4/19 4/25 6/21 8/1 10/1 16/16 16/24 19/2 20/20 22/7 34/3 47/6 50/19
**King [1]** 1/21
**knew [1]** 31/3
**know [39]** 7/17 7/21 7/22 8/5 10/2 10/18 16/22 18/25 19/5 19/21 19/22 19/25 20/18 20/19 24/13 25/4 31/7 34/10 35/21 37/2 37/21 38/4 44/5 44/7 45/8 45/10 46/22 46/24 47/19 48/13 48/19 49/3 49/24 49/25 52/4 52/23 53/4 53/7 53/16
**knowing [1]** 35/25
**knowledge [1]** 10/22
**known [2]** 44/18 47/5
**knows [1]** 51/18

## L

**L.Caponi [1]** 1/20
**lack [2]** 11/2 16/6
**language [5]** 5/7 16/7 25/14 30/23 30/24
**last [11]** 6/21 8/21 8/22 14/16 17/24 24/14 27/25 29/11 38/2 45/21 47/12
**lastly [1]** 52/12
**later [1]** 15/1
**Lauderdale [3]** 1/4 1/25 54/16
**law [9]** 1/12 3/19 5/15 26/7 30/17 31/21 31/23 34/20 49/21
**lawsuit [5]** 15/14 35/20 35/21 35/22 36/4
**lawyer [1]** 5/17
**lawyers [7]** 3/15 4/2 43/9 47/13 49/4 49/20 49/25
**laymen's [1]** 26/10
**lays [1]** 29/7
**learned [1]** 3/19
**least [4]** 5/22 7/17 14/24 44/19
**leaves [1]** 45/18
**leaving [1]** 6/17
**left [4]** 2/25 3/4 32/9 34/21
**Legacy [1]** 48/1
**legal [1]** 3/5
**legs [1]** 6/13
**lengthy [2]** 7/6 10/4
**less [1]** 24/22
**let [11]** 2/15 5/14 6/3 6/20 12/8 22/19 30/2 45/2 46/9 47/22 51/7
**let's [9]** 5/15 20/17 20/24 24/11 46/10 46/10 50/15 50/16 50/21
**letter [4]** 10/10 30/17 31/9 39/18
**letters [1]** 38/10
**level [2]** 19/7 37/8
**liability [5]** 26/5 27/4 27/15 28/7 29/13
**lies [1]** 46/8
**lieu [1]** 8/23
**life [1]** 49/19
**lifted [1]** 7/14
**like [21]** 3/12 4/2 4/3 7/5 7/14 10/24 16/5 16/16 20/23 23/19 23/21 23/22 23/25 24/19 26/11 26/15 37/4 43/6 50/4 50/5 52/5
**likelihood [1]** 20/18
**limited [18]** 12/3 15/24 22/5 25/12 26/5 27/3 27/14 28/6 29/12 30/12 33/14 33/18 33/24 39/14 41/12 41/12 42/7 43/20
**line [1]** 11/14
**lines [1]** 52/4
**liquidate [1]** 22/1
**list [3]** 4/1 32/25 49/2
**Listen [1]** 53/14
**listing [1]** 19/9
**literally [2]** 4/10 41/23
**litigate [2]** 8/18 10/17
**litigated [1]** 8/16
**litigating [2]** 10/15 10/16
**litigation [3]** 10/14 11/8 35/8
**little [4]** 16/17 19/13 47/7 51/2
**lived [1]** 49/19
**lives [1]** 42/4
**LLC [46]** 1/3 1/6 2/10 2/10 5/15 5/20 5/22 6/18 11/12 11/15 11/17 17/22 21/12 21/13 21/18 21/19 25/10 26/5 26/6 26/8 26/9 26/10 26/15 27/1 27/12 28/11 28/25 28/25 29/6 29/18 29/22 29/23 30/10 30/11 30/17 31/11 31/12 32/6 32/7 32/12 33/7 33/20 34/19 34/23 36/13 37/25
**LLCs [9]** 12/11 26/7 26/21 29/19 29/20 29/20 32/12 32/25 33/1
**lock [1]** 21/8
**locked [1]** 47/19
**lockup [2]** 23/10 44/4
**long [3]** 3/15 34/24 49/12
**longer [2]** 7/13 42/23
**look [13]** 23/21 26/10 27/1 27/10 27/18 31/13 31/25 32/5 32/9 33/16 40/8 48/18 49/22
**looked [2]** 40/2 40/20
**looking [3]** 18/22 23/24 48/16
**looks [3]** 28/3 37/4 39/16
**lose [1]** 22/15
**loss [2]** 32/3 32/10
**losses [1]** 27/6
**lost [2]** 24/14 32/17
**lot [8]** 2/12 15/11 19/12 19/12 30/21 49/1 49/25 52/11
**LP [1]** 33/11

## M

**made [9]** 9/18 9/21 17/8 18/3 27/20 30/25 34/15 35/16 43/19
**main [1]** 8/12
**maintain [1]** 44/3
**maintained [2]** 46/23 47/1
**maintains [1]** 34/25
**majority [2]** 5/24 16/23
**make [17]** 3/10 3/12 12/13 12/15 17/8 33/24 34/10 34/12 35/5 36/1 41/15 49/10 49/11 49/12 49/21 50/18 51/3
**makes [1]** 7/12
**making [2]** 30/15 45/14
**manager [6]** 11/17 27/21 29/16 37/16 39/20 51/9
**manager's [1]** 51/12
**managers [1]** 5/22
**managing [4]** 5/16 5/18 16/8 34/23
**manufacture [1]** 35/10
**many [1]** 9/9
**master [35]** 12/3 15/19 15/20 15/24 15/25 16/1 16/7 21/13 21/15 21/20 21/22 21/23 22/7 22/9 22/16 25/2 25/10 26/6 26/17 26/20 30/9 31/11 31/20 32/7 32/8 32/16 32/20 33/8 36/14 36/14 36/18 37/18 37/23 39/2 39/11
**matter [5]** 4/7 31/21 31/23 53/5 54/10
**may [18]** 10/6 17/17 20/15 22/14 22/15 32/12 32/13 40/13 43/22 44/15 47/14 47/15 48/21 51/17 52/18 53/8 53/9 53/9
**may be [8]** 17/17 20/15 32/13 40/13 44/15 48/21 51/17 53/8
**maybe [6]** 4/15 16/12 25/20 37/1 52/17 53/2
**MC [1]** 24/2
**me [36]** 2/15 4/3 4/6 5/12 5/14 6/3 6/20 7/13 8/1 9/20 15/2 17/18 17/24 18/6 19/2 20/25 22/19 22/24 23/25 30/2 35/24 36/23 37/11 38/19 42/15 43/22 45/4 46/9 47/17 47/22 50/11 50/15 51/9 52/6 52/17 53/4
**mean [16]** 4/25 5/14 7/23 8/4 11/24 12/15 16/19 24/14 28/17 36/20 41/23 46/3 46/16 49/6 51/12 53/4
**means [5]** 27/7 27/21 28/17 30/25 32/15
**meantime [1]** 38/15
**MEGACAP [56]**
**Megacap's [3]** 13/18 31/15 43/19
**member [26]** 5/10 6/18 13/22 16/8 27/17 28/6 28/7 29/6 29/11 29/12 29/17 29/22 29/23 30/1 30/1 30/15 30/17 34/23 34/25 34/25 35/12 40/21 40/23 42/21 45/5 45/18
**members [8]** 5/22 6/7 20/8 27/3 29/21 30/18 33/7 46/15
**membership [7]** 21/12 21/18 21/19 25/9 37/19 45/15 45/16
**Memorandum [1]** 28/2
**mentioned [1]** 31/11
**Miami [3]** 1/16 1/19 52/14
**Michael [1]** 9/4
**micromanager [1]** 4/3
**middle [2]** 10/7 18/3
**mine [1]** 6/22
**minute [2]** 47/21 50/16
**minutes [4]** 8/21 21/8 48/4 50/21
**mislead [1]** 48/8
**misreading [1]** 38/22
**missed [4]** 48/4 48/13 50/9 50/11
**missing [2]** 8/10 8/12
**misunderstanding [2]** 25/22 29/19
**moment [1]** 47/15
**monetary [1]** 24/16
**money [15]** 5/10 5/11 15/12 15/14 15/25 16/2 21/11 21/12 21/20 22/9 22/14 23/4 43/25 44/14 44/15
**month [1]** 52/8
**Moore [7]** 8/2 9/4 9/17 12/24 14/8 14/10 14/15
**more [10]** 3/20 15/4 23/19 23/21 25/18 32/25 44/10 44/10 44/17 52/1
**morning [5]** 2/5 2/9 2/18 3/10 16/25
**Morton [3]** 1/18 2/22 4/13
**most [3]** 10/21 17/25 29/10
**motion [8]** 1/9 2/11 7/1 8/23 15/9 35/19 38/6 52/21
**motions [1]** 4/1
**Motors [2]** 26/11 26/17
**move [1]** 17/7
**moving [1]** 16/17
**Mr [81]**
**Mr. [4]** 29/6 38/5 42/18 45/19
**Mr. Goldener [1]** 42/18
**Mr. Goldner [1]** 45/19
**Mr. Kelsky [2]** 29/6 38/5
**much [6]** 23/19 23/21 24/22 42/23 48/15 52/1
**multiple [9]** 8/17 10/18 11/13 11/19 26/22 26/23 26/23 30/10 31/21
**multiples [1]** 33/5
**must [3]** 17/18 46/1 46/4
**mutual [1]** 23/22
**my [46]** 2/6 3/4 3/22 4/7 5/7 5/13 5/15 7/17 10/6 10/9 10/11 10/13 10/19 10/24

**M**

**my... [32]** 11/5 11/6 11/9 11/18 15/5 15/13 18/18 19/10 20/14 23/18 33/13 33/19 33/19 34/20 34/24 35/15 37/2 37/9 38/5 38/6 38/7 38/12 38/21 40/7 41/23 44/10 47/15 47/25 48/2 48/3 52/6 52/15
**myself [2]** 11/3 37/7

**N**

**N [1]** 1/21
**name [1]** 6/3
**names [1]** 13/23
**narrowly [1]** 45/1
**nature [1]** 28/23
**NE [1]** 1/15
**necessarily [2]** 5/13 20/13
**necessary [1]** 25/18
**need [10]** 2/6 4/5 5/13 10/21 41/15 47/12 47/17 50/13 51/7 51/22
**needs [2]** 20/22 45/8
**never [12]** 15/14 15/22 25/9 34/14 38/11 39/8 39/23 40/22 42/5 44/22 45/5 49/19
**next [3]** 28/1 30/2 33/3
**night [1]** 8/4
**no [36]** 1/2 3/23 5/12 7/16 9/18 9/19 10/13 10/13 12/16 13/17 17/11 21/13 21/13 21/18 21/19 21/19 21/22 22/20 27/8 27/21 33/18 35/7 35/7 40/10 40/11 43/18 45/1 46/10 46/10 46/17 46/17 47/10 50/4 50/12 51/8 51/21
**noise [1]** 46/4
**none [1]** 35/11
**nor [1]** 11/9
**normal [1]** 20/23
**normally [1]** 24/19
**Northern [1]** 18/4
**not [92]**
**note [6]** 10/7 11/6 14/6 19/6 33/17 38/1
**nothing [6]** 9/19 13/2 18/1 29/24 31/21 32/1
**notice [1]** 49/2
**notion [4]** 20/13 29/18 31/17 34/14
**now [20]** 2/3 3/25 8/15 8/22 9/9 9/13 9/21 14/11 17/17 19/2 21/5 21/17 24/13 33/4 36/17 41/19 44/12 44/16 44/23 45/3
**number [3]** 20/6 23/23 24/6

**O**

**O'Neill [1]** 8/2
**obfuscation [2]** 12/1 12/11
**obligation [3]** 14/22 15/15 27/23
**obligations [4]** 12/8 12/9 26/16 34/21
**obtained [1]** 5/23
**obviate [1]** 12/9
**obviation [2]** 41/6 41/8
**obviously [4]** 4/20 5/1 17/5 52/10
**occur [1]** 23/14
**occurred [7]** 15/15 18/10 18/17 23/9 28/20 30/14 36/3
**off [9]** 2/25 3/4 4/16 30/21 34/11 34/11 34/19 38/18 41/9
**offer [1]** 51/13
**offering [2]** 28/3 34/6
**officer [1]** 5/16
**official [4]** 1/23 18/16 54/4 54/14
**oh [1]** 12/8
**okay [20]** 2/9 2/20 6/20 10/5 14/2 17/6 18/19 19/25 20/11 20/15 20/17 24/7 25/13 25/24 42/24 46/13 47/8 51/1 51/6 51/15
**on [71]**
**once [3]** 10/23 16/11 29/23
**one [39]** 5/10 5/11 7/16 8/9 9/8 10/8 10/13 10/17 13/3 13/5 13/24 13/24 14/4 14/5 14/12 14/13 15/25 16/18 18/25 19/10 20/19 21/4 26/16 26/19 27/8 27/8 28/14 31/14 32/22 33/18 33/24 37/23 38/17 38/19 39/14 43/2 43/15 45/18 52/13
**ongoing [1]** 10/14
**only [18]** 6/18 6/18 12/6 13/22 20/4 22/4 22/10 37/17 37/23 43/12 43/14 44/21 45/15 45/18 46/11 46/15 46/17 48/9
**operating [2]** 27/12 33/16
**opinion [1]** 45/22
**opinions [1]** 52/4
**opportunity [2]** 3/12 51/3
**opposed [2]** 12/3 13/16
**opposite [2]** 15/10 19/20
**option [1]** 11/17
**or [55]**
**order [10]** 2/1 2/11 12/16 14/12 14/16 15/16 16/1 27/21 52/2 52/7
**ordering [1]** 42/16
**other [31]** 3/13 9/21 12/24 13/19 15/5 16/21 17/8 18/20 19/19 22/8 22/11 25/2 27/9 31/19 31/21 32/12 32/13 32/20 34/20 35/6 38/20 42/13 44/9 44/12 44/17 47/8 47/13 48/19 48/20 49/4 51/16
**ought [1]** 40/12
**our [23]** 2/11 2/16 5/10 6/15 13/21 17/10 21/20 21/23 22/5 22/9 22/17 25/3 37/6 37/19 39/24 41/21 42/4 43/13 43/13 44/13 48/17 53/16 53/17
**ourselves [1]** 11/2
**out [26]** 3/14 3/22 10/24 12/9 15/12 16/11 16/11 16/18 18/6 26/2 28/23 29/7 36/9 38/5 38/7 42/3 42/18 48/15 48/23 50/18 50/19 51/23 51/23 52/7 52/13 53/15
**outside [3]** 7/24 17/9 25/7
**over [11]** 6/24 11/16 18/3 21/15 21/16 25/4 32/11 32/23 38/23 42/2 44/16
**oversees [1]** 26/17
**oversight [2]** 47/25 48/2
**overview [1]** 21/2
**owed [2]** 41/16 42/5
**own [10]** 4/2 26/16 26/24 28/25 30/10 30/20 30/22 30/22 31/1 40/23
**owned [1]** 31/6
**owner [1]** 42/9
**ownership [10]** 21/16 22/10 25/4 28/19 31/15 32/2 34/1 35/1 35/12 40/6
**owns [11]** 25/2 28/19 28/21 29/2 31/2 31/19 33/11 33/14 34/7 40/19 45/14

**P**

**P [1]** 28/9
**P.A [1]** 1/12
**p.m [2]** 50/23 53/20
**page [17]** 3/11 3/18 3/23 28/3 29/9 29/11 29/11 29/12 29/14 29/25 30/2 30/2 33/22 37/24 38/6 39/17 54/11
**pages [3]** 3/15 3/16 3/17
**paid [6]** 27/23 27/25 30/19 32/23 33/5 33/25
**papers [11]** 3/6 3/7 4/4 4/4 4/4 4/9 4/13 4/17 17/9 19/12 47/11
**paperwork [1]** 26/19
**paragraph [5]** 22/24 36/24 41/24 41/24 45/23
**paragraphed [1]** 7/5
**parcel [1]** 36/21
**part [5]** 6/12 22/6 36/21 41/1 48/1
**particular [1]** 39/14
**parties [7]** 4/22 10/15 10/24 11/21 13/24 15/25 25/21
**partner [11]** 5/16 21/3 33/14 33/18 33/24 34/2 34/9 34/18 36/10 36/10 39/14
**partners [13]** 1/6 2/10 2/21 5/18 15/24 22/5 26/5 27/2 32/6 33/20 33/24 37/24 39/13
**partnership [7]** 21/11 25/12 33/18 39/12 41/12 42/7 43/20
**partnerships [1]** 12/10
**party [3]** 9/24 14/6 14/22
**passive [1]** 33/20
**passthrough [3]** 32/7 32/7 39/10
**passthroughs [1]** 26/21
**past [1]** 17/7
**path [1]** 10/20
**paths [1]** 5/5
**pause [2]** 2/8 30/3
**pay [4]** 5/9 15/20 34/11 34/19
**pays [1]** 34/11
**pending [5]** 7/1 8/23 9/9 14/4 52/21
**people [4]** 18/9 49/8 49/10 52/15
**peppered [1]** 44/4
**per [2]** 24/3 24/3
**percent [5]** 23/13 23/14 32/15 32/16 40/24
**percentage [10]** 21/15 25/4 32/11 33/1 33/2 33/3 35/1 35/1 35/3 35/13
**percentages [1]** 23/15
**perfect [1]** 49/9
**performance [1]** 23/16
**period [3]** 23/10 42/11 52/11
**perpetuity [1]** 42/17
**person [2]** 20/4 45/16
**perspective [1]** 51/12
**pf [1]** 32/21
**piece [1]** 44/13
**pieced [1]** 14/25
**Pierce [1]** 18/14
**Pine [1]** 1/13
**place [3]** 15/22 16/13 16/18
**Placement [1]** 28/2
**plain [1]** 25/14
**plaintiff [3]** 1/4 1/12 12/14
**Plantation [1]** 1/14
**play [1]** 53/12
**pleaded [1]** 18/22
**pleading [3]** 8/16 8/20 8/24
**pleadings [2]** 9/10 16/24
**please [4]** 2/5 47/16 50/5 51/1
**pled [2]** 17/18 20/1
**plus [1]** 24/4
**point [18]** 15/3 15/4 15/18 16/3 22/24 23/25 25/15 30/16

**P**

**point... [10]** 33/10 34/9 34/17 35/3 36/23 37/11 40/10 41/21 44/15 44/15
**pointed [1]** 30/23
**portfolio [2]** 28/9 28/13
**portion [4]** 32/4 33/7 33/8 34/3
**position [6]** 3/24 6/15 13/21 46/23 47/1 48/14
**possession [3]** 12/3 22/3 22/3
**pot [2]** 38/18 38/20
**potential [1]** 4/20
**pounds [1]** 8/5
**practice [2]** 3/19 31/9
**preceding [1]** 36/3
**precipitated [2]** 35/19 38/4
**predates [2]** 6/22 8/13
**prefer [1]** 4/6
**preliminary [2]** 2/12 3/2
**prepared [3]** 12/19 32/1 42/20
**PRESENT [1]** 1/22
**presently [2]** 34/7 40/15
**preserving [1]** 44/8
**president [1]** 26/18
**presiding [1]** 2/4
**pressure [1]** 44/11
**pretty [2]** 31/9 51/15
**primarily [1]** 24/23
**prior [2]** 9/7 39/6
**priority [1]** 27/21
**Private [1]** 28/2
**privilege [2]** 45/11 45/11
**probably [2]** 10/21 40/19
**problem [5]** 6/12 12/21 44/18 44/25 45/15
**proceedings [1]** 54/9
**process [2]** 7/24 8/8
**produced [1]** 16/25
**profit [4]** 32/3 32/10 32/17 33/6
**proof [2]** 21/19 40/6
**proper [3]** 12/13 40/2 40/9
**property [1]** 22/15
**proportion [1]** 34/1
**prospective [1]** 25/22
**protected [2]** 43/20 44/2
**prove [1]** 40/5
**provided [1]** 22/9
**provides [1]** 5/21
**proving [1]** 38/11
**provision [2]** 11/11 19/8
**provisions [1]** 33/23
**public [8]** 33/4 34/6 34/8 43/7 43/17 43/19 44/23 45/12
**publicly [1]** 34/7
**pulled [2]** 21/14 26/2
**purchase [2]** 22/23 23/22
**purchased [1]** 21/25
**purchasing [1]** 28/8
**purpose [4]** 28/8 28/15 28/25 30/9
**purposes [2]** 26/20 32/1
**pursuant [4]** 21/10 41/16 41/17 54/6
**put [5]** 3/14 7/4 25/17 25/19 48/23
**puts [1]** 22/11
**putting [1]** 46/3

**Q**

**Q2 [1]** 23/12
**quarter [3]** 24/9 24/10 44/6
**question [10]** 6/20 23/18 35/15 35/18 37/18 39/24 39/25 40/7 53/11 53/13
**questioned [2]** 15/4 51/13
**questions [2]** 35/14 51/10
**quibble [1]** 20/12
**quick [2]** 6/4 11/4
**quickly [2]** 44/5 48/25
**Quinn [1]** 1/15

**R**

**R [1]** 54/1
**RAAG [2]** 1/9 2/4
**raised [2]** 10/11 37/10
**Rassie [3]** 1/23 54/3 54/14
**rather [2]** 15/21 38/20
**Raton [2]** 19/23 20/2
**reached [1]** 38/5
**read [12]** 6/10 6/11 6/12 6/13 17/15 17/15 31/7 35/9 35/22 36/12 36/13 52/4
**reading [4]** 3/18 16/6 17/21 28/13
**readings [1]** 13/8
**reaffirm [1]** 50/7
**real [5]** 6/4 20/19 37/3 43/4 49/19
**reality [1]** 49/13
**really [14]** 2/16 3/1 3/22 15/21 21/5 37/9 42/25 45/21 48/24 49/23 50/5 51/22 52/3 52/6
**Realtime [1]** 54/4
**reason [1]** 48/21
**Reasonable [1]** 20/18
**reasons [1]** 42/13
**receive [3]** 21/12 22/25 34/16
**received [4]** 20/9 25/9 29/18 38/2
**receives [1]** 35/4
**recenter [1]** 9/2
**recently [1]** 20/14
**Recess [1]** 50/23
**recognize [1]** 16/22
**recognizing [1]** 10/9
**Reddit [1]** 50/2
**redemption [1]** 6/15
**reduces [1]** 15/7
**referenced [1]** 22/20
**referred [2]** 26/6 26/9
**referring [1]** 16/23
**refiled [2]** 8/21 14/13
**reflection [1]** 32/18
**reflects [1]** 32/15
**regarding [1]** 19/1
**registry [1]** 42/16
**regular [1]** 49/6
**regulations [1]** 54/11
**reinforces [1]** 34/14
**Reiter [14]** 6/5 6/6 6/8 19/17 19/23 20/1 20/3 20/9 29/10 42/18 45/17 46/10 46/17 52/22
**REITs [1]** 37/3
**relate [1]** 49/17
**related [8]** 13/10 13/11 13/13 13/14 13/16 13/17 14/1 47/4
**relationship [1]** 21/21
**relative [2]** 13/6 15/21
**relatively [1]** 46/6
**release [6]** 36/4 41/2 41/3 41/4 46/7 46/7
**released [2]** 23/13 24/11
**relief [1]** 13/5
**rely [2]** 25/14 47/11
**remained [2]** 30/1 32/22
**remand [2]** 52/22 53/12
**remanded [1]** 53/10
**reminds [1]** 8/1
**remotely [1]** 14/1
**removed [3]** 8/22 31/3 52/19
**report [1]** 9/6
**reported [3]** 1/23 44/6 54/9
**Reporter [3]** 1/23 54/4 54/14
**reporting [1]** 32/5
**reports [3]** 24/10 26/20 32/8
**representation [1]** 23/9
**represented [2]** 34/7 45/4
**representing [1]** 4/19
**represents [1]** 29/19
**request [1]** 44/11
**required [3]** 29/22 38/14 39/9
**requires [1]** 5/24
**res [2]** 13/15 22/13
**research [2]** 49/7 50/9
**reserve [1]** 15/9
**reserves [2]** 27/23 33/25
**residence [1]** 18/17
**resident [5]** 17/23 18/9 19/23 20/1 52/22
**resides [2]** 18/16 19/21
**resolution [1]** 44/22
**resolve [2]** 6/23 11/16
**resolved [2]** 11/11 11/20
**respect [1]** 10/3
**respectfully [2]** 11/9 11/22
**respond [2]** 8/9 8/12
**responsibilities [3]** 12/7 41/7 41/9
**responsibility [1]** 44/3
**responsible [2]** 32/4 32/16
**restraining [1]** 2/11
**result [2]** 18/13 46/7
**resulted [1]** 38/10
**retain [1]** 12/3
**return [4]** 5/8 15/7 37/16 39/21
**right [23]** 2/25 4/16 7/10 8/7 13/10 14/11 14/19 21/5 22/22 23/2 25/13 31/9 37/1 39/2 39/12 39/16 39/18 40/17 42/3 46/9 48/17 53/2 53/5
**rightful [2]** 14/22 42/9
**rights [1]** 13/18
**rise [1]** 50/24
**risk [3]** 22/4 22/11 22/15
**RMR [3]** 1/23 54/3 54/14
**RMR-CRR [3]** 1/23 54/3 54/14
**road [2]** 1/13 40/13
**rock [1]** 16/8
**Roderyck [3]** 6/3 6/5 52/22
**Rodney [2]** 1/24 54/15
**role [1]** 19/21
**rollup [1]** 26/21
**Room [2]** 1/24 54/15
**rough [1]** 4/15
**ruling [4]** 9/14 10/2 52/15 52/16
**rulings [1]** 52/15
**run [2]** 5/21 38/18

**S**

**s [10]** 1/4 1/7 1/12 1/13 1/17 1/18 23/11 23/11 28/9 54/14
**S-1 [2]** 23/11 23/11
**sad [1]** 16/15
**sadly [1]** 15/8
**said [12]** 8/2 10/13 14/18 16/5 38/7 38/12 40/9 42/11 42/14 47/4 47/10 51/16
**same [9]** 3/11 7/7 7/8 7/13 24/5 32/22 38/2 44/3 45/24
**San [1]** 19/9
**sanctions [1]** 50/5
**saw [3]** 8/3 13/7 50/1
**say [17]** 5/15 7/14 12/6 15/1 19/10 19/20 22/25 24/11 25/14 41/20 44/17 46/24 49/20 49/22 50/11 50/21 52/6
**saying [26]** 3/21 5/10 6/11 9/16 10/16 13/17 16/22 19/19 26/22 34/24 36/25

## S

**saying... [15]** 38/6 39/3 39/6 39/8 39/23 40/4 40/23 41/18 41/24 42/6 44/13 46/4 46/25 46/25 50/3
**says [25]** 5/17 12/16 18/5 23/11 27/2 27/11 28/8 28/13 29/7 30/24 32/10 36/24 36/25 37/15 39/4 39/19 40/2 40/23 41/10 41/24 41/25 42/5 43/9 49/11 52/5
**scaleup [3]** 27/16 37/25 39/4
**Schedule [3]** 37/14 37/17 39/21
**scheduling [2]** 9/6 14/12
**seat [2]** 2/6 51/1
**second [7]** 8/10 8/15 17/12 24/9 24/10 30/3 49/15
**secondary [1]** 13/6
**Secondly [1]** 12/1
**section [10]** 27/5 27/19 32/9 33/22 37/12 37/14 38/23 39/3 39/19 54/7
**securities [1]** 28/10
**see [10]** 2/20 2/23 17/16 18/4 19/14 27/14 31/13 32/21 43/15 53/2
**seeing [1]** 37/10
**seeking [1]** 10/8
**seem [5]** 10/16 11/13 11/20 17/18 43/9
**seems [2]** 11/7 23/21
**sense [1]** 35/22
**sent [1]** 16/10
**sentences [1]** 51/17
**separate [12]** 7/8 9/4 26/9 26/15 26/15 27/3 27/11 31/12 36/7 36/13 36/20 37/7
**series [54]** 12/4 15/20 16/7 21/10 21/12 21/13 21/18 21/18 25/9 26/6 26/9 26/9 26/24 27/4 27/7 27/8 27/8 27/9 27/12 27/12 27/16 28/7 28/7 28/11 28/18 28/20 28/25 29/6 29/18 30/10 30/10 30/11 30/25 31/1 31/12 31/14 31/21 31/22 32/6 32/7 32/12 32/20 33/1 33/6 33/6 33/8 33/20 34/15 34/19 34/20 35/1 35/2 35/4 37/25
**serious [5]** 12/11 15/24 27/24 32/14 44/25
**seriously [3]** 15/2 45/1 50/8
**serve [2]** 7/24 8/2
**served [8]** 7/16 7/18 7/23 9/2 11/6 11/19 11/22 52/24
**server [2]** 7/24 8/8
**service [2]** 11/5 50/20
**serving [1]** 11/7
**session [2]** 2/3 50/25
**set [3]** 6/16 25/8 26/6
**settle [1]** 35/5
**settled [2]** 10/23 10/23
**seven [1]** 23/14
**several [1]** 38/10
**Shaquille [1]** 8/2
**share [2]** 24/3 24/12
**shareholders [1]** 28/16
**shares [40]** 16/2 21/13 21/24 22/13 22/14 22/14 22/20 22/21 22/23 22/25 23/4 23/7 23/13 23/20 24/6 24/17 24/17 28/10 28/12 28/16 28/18 28/19 28/21 29/2 31/1 33/4 33/12 33/15 34/4 34/7 34/8 34/11 34/13 34/15 34/16 41/4 44/1 44/1 46/7 46/8
**she's [2]** 7/12 7/13
**shifting [1]** 48/17
**shopping [1]** 12/22
**short [3]** 2/8 19/21 52/11
**shortcut [1]** 10/1
**shortly [1]** 23/12
**shotgun [3]** 8/16 8/20 45/3
**should [13]** 11/9 12/3 15/14 15/19 15/22 16/2 16/10 16/20 25/6 37/6 43/18 44/2 52/13
**shouldn't [4]** 7/11 11/18 15/19 48/12
**show [2]** 16/4 19/16
**showed [3]** 30/11 40/19 40/20
**showing [1]** 30/9
**shown [1]** 25/3
**shows [1]** 38/13
**side [7]** 4/25 5/2 16/9 32/10 47/9 49/4 51/20
**sides [1]** 53/8
**sign [3]** 2/6 29/22 29/23
**signature [2]** 29/11 29/14
**signed [7]** 19/17 20/7 23/3 29/9 29/16 40/20 50/17
**significantly [2]** 6/16 37/3
**signing [1]** 30/14
**siloed [2]** 27/7 31/22
**similar [1]** 13/15
**Similarly [1]** 8/7
**simply [2]** 33/20 48/4
**since [3]** 14/24 38/2 46/21
**sincerely [1]** 48/7
**SINGHAL [2]** 1/9 2/4
**single [1]** 31/18
**sit [1]** 21/20
**situation [2]** 11/1 40/14
**situations [1]** 13/25
**skeptical [1]** 48/22
**skill [1]** 49/15
**Smith [2]** 1/24 54/15
**so [113]**
**sole [5]** 28/8 28/25 30/9 34/13 34/22
**solicited [1]** 28/24
**solid [1]** 16/8
**solving [1]** 38/21
**some [27]** 3/11 3/12 3/25 4/18 7/21 13/8 17/13 18/2 19/2 20/20 23/24 34/9 34/17 35/3 37/6 38/7 38/11 40/5 41/3 41/5 44/15 46/1 46/4 49/7 50/1 51/9 51/11
**somebody [3]** 22/1 22/1 52/16
**someone [8]** 3/20 6/12 10/25 22/2 38/9 38/13 40/8 40/22
**something [7]** 7/5 23/25 24/21 47/6 52/5 52/17 53/15
**something's [2]** 35/17 36/1
**somewhat [2]** 10/7 26/7
**soon [2]** 48/1 53/15
**sorry [6]** 14/15 15/25 20/12 30/5 31/20 46/3
**sort [1]** 12/9
**sorts [2]** 22/7 25/2
**sought [1]** 13/6
**south [1]** 18/14
**SOUTHERN [11]** 1/1 2/3 9/11 17/17 18/1 18/5 18/16 19/3 19/24 52/22 54/5
**space [1]** 3/17
**SpaceX [43]** 21/4 21/5 21/6 21/9 21/10 22/8 22/21 23/1 23/20 23/23 24/2 24/2 24/2 24/8 24/11 27/15 27/16 27/24 28/7 28/7 28/10 28/12 28/16 28/18 28/19 28/22 29/1 30/12 31/4 31/6 31/19 32/21 32/22 33/3 33/4 33/6 33/12 33/15 34/4 34/6 34/8 42/8 46/8
**speak [2]** 2/13 35/10
**speakers [1]** 2/16
**speaks [1]** 38/14
**special [1]** 28/15
**specific [8]** 22/13 22/15 30/20 34/15 34/16 36/1 36/2 36/23
**specifically [11]** 20/7 22/21 23/20 27/11 27/18 28/4 30/11 30/24 36/15 37/24 45/4
**spectrum [1]** 51/18
**speed [3]** 11/4 16/12 16/16
**spelled [1]** 28/23
**spend [2]** 15/11 48/15
**spending [2]** 5/11 15/25
**spends [1]** 17/25
**spent [3]** 15/7 15/14 16/24
**spinning [1]** 47/7
**split [2]** 22/23 24/4
**splits [1]** 23/6
**spoken [1]** 3/1
**sponsored [1]** 28/16
**spot [1]** 40/16
**spreadsheet [1]** 43/23
**SPX [1]** 37/25
**square [1]** 20/2
**standalone [1]** 26/8
**standing [26]** 3/1 3/11 3/24 4/11 4/18 4/20 4/22 5/1 5/7 7/11 9/15 9/18 10/2 11/20 12/16 12/18 15/3 15/13 16/9 16/10 16/19 17/7 20/3 47/3 52/1 52/3
**standpoint [1]** 43/12
**Stanley [1]** 1/15
**start [2]** 10/24 26/4
**started [2]** 2/7 47/3
**state [6]** 8/19 8/21 14/13 33/23 52/19 53/10
**stated [1]** 43/21
**statement [2]** 19/15 41/2
**STATES [6]** 1/1 1/10 2/2 54/5 54/7 54/12
**statutorily [1]** 11/14
**stay [2]** 16/17 50/16
**stenographer [1]** 4/8
**stenographically [1]** 54/9
**step [1]** 50/18
**steps [2]** 20/25 31/3
**Steve [1]** 2/22
**Steven [1]** 1/20
**still [4]** 11/6 24/5 34/25 38/15
**stock [15]** 23/16 24/8 25/2 25/2 29/19 29/20 30/21 30/22 31/2 31/4 31/6 34/17 34/22 35/6 49/2
**stockholder [1]** 29/20
**stockholders [1]** 30/18
**stood [1]** 19/9
**story [2]** 42/23 47/23
**street [3]** 1/15 1/21 41/9
**strike [1]** 4/1
**structured [1]** 28/5
**stuck [1]** 10/7
**studio [1]** 8/4
**style [1]** 45/3
**sub [2]** 21/3 36/20
**submits [1]** 39/11
**submitted [4]** 6/14 7/2 12/20 15/5
**subscribed [1]** 21/21
**subscriber [3]** 37/15 39/20 39/22
**subscription [15]** 15/23 19/6 19/17 21/25 24/1 24/25 25/8 28/15 29/5 36/13 36/20 36/24 39/3 39/9 41/12
**subsection [1]** 27/2
**subsequently [1]** 8/19

## S

**success [1]** 20/18
**sued [1]** 15/13
**sufficient [5]** 3/6 4/4 4/5 4/10 4/13
**suggest [2]** 16/12 36/24
**suggesting [1]** 23/18
**suggests [1]** 25/15
**suit [3]** 5/16 5/19 6/19
**Suite [3]** 1/13 1/15 1/21
**suppose [1]** 4/23
**supposed [3]** 15/9 21/11 39/4
**sure [11]** 3/10 5/12 12/13 13/7 18/7 25/13 25/25 40/25 41/16 43/24 45/7

## T

**T [2]** 54/1 54/1
**Tab [22]** 26/4 27/14 28/2 28/3 29/4 30/4 30/6 30/7 30/7 31/10 31/25 32/19 32/25 33/10 33/16 37/13 38/25 39/17 43/21 43/22 43/22 43/23
**take [6]** 4/5 15/2 16/20 25/18 50/7 50/16
**taken [3]** 16/13 22/16 50/23
**takes [1]** 42/17
**taking [1]** 9/23
**talk [3]** 20/17 22/22 47/21
**talking [4]** 6/5 21/5 22/20 49/5
**talks [2]** 18/1 37/13
**target [1]** 16/17
**tax [6]** 26/19 26/20 32/1 37/16 39/11 39/21
**TECH [2]** 21/4 42/8
**teed [1]** 19/1
**television [1]** 8/4
**tell [2]** 37/1 49/9
**telling [2]** 4/3 10/18
**tells [2]** 32/2 32/3
**temporary [1]** 2/11
**ten [1]** 50/16
**terms [10]** 4/18 4/20 6/23 24/20 26/10 37/6 37/22 43/5 44/7 51/12
**than [10]** 3/20 7/13 17/8 19/19 25/18 36/7 38/20 38/21 43/15 51/16
**Thank [6]** 2/24 50/22 52/9 52/10 53/18 53/19
**thanks [1]** 53/14
**that [295]**
**that's [50]** 3/15 6/11 7/22 13/3 14/16 15/18 16/3 16/8 17/6 17/8 17/24 18/17 18/18 19/24 20/1 20/2 20/2 20/14 23/6 23/11 23/16 24/3 24/21 25/16 27/10 29/23 29/24 36/7 36/20 37/5 39/25 41/15 41/18 41/19 41/21 42/6 42/12 42/22 42/23 43/14 43/15 45/12 46/1 47/2 47/22 48/9 50/11 51/18 52/17 53/13
**their [20]** 11/10 11/10 12/8 15/15 16/1 16/11 25/22 35/12 38/5 38/15 38/20 38/21 41/1 41/7 41/8 41/19 42/10 43/21 49/18 52/16
**them [14]** 5/23 22/2 22/2 22/3 22/4 26/17 38/11 41/4 42/4 42/5 42/16 44/2 44/7 47/6
**themselves [2]** 10/23 35/10
**then [42]** 2/6 3/2 3/13 4/12 6/20 7/10 13/8 14/9 17/6 17/12 20/17 22/4 23/6 23/8 23/13 23/15 24/4 24/11 24/25 26/8 26/12 27/5 27/10 27/24 28/3 29/10 34/12 34/18 34/20 34/21 39/19 42/4 44/2 46/17 47/23 49/15 49/17 50/16 50/20 51/25 52/12 53/11
**there [45]** 3/6 3/14 5/17 5/23 9/17 9/19 10/12 12/16 14/11 14/20 15/5 17/7 17/17 17/18 18/2 18/7 18/25 21/22 21/24 22/22 27/11 27/21 31/12 31/13 31/18 32/13 32/22 35/7 35/7 36/13 37/8 37/8 37/21 43/18 44/9 46/1 46/4 46/5 46/14 46/22 48/12 48/21 48/23 49/1 51/6
**there's [52]** 5/1 5/6 5/7 5/12 9/7 9/9 9/10 9/18 10/18 11/11 14/3 14/4 16/5 16/5 17/5 17/16 17/19 19/12 19/12 20/18 21/7 21/19 23/9 23/9 23/14 25/21 26/22 26/23 29/24 32/25 33/6 34/5 36/17 38/7 38/17 39/25 41/3 41/5 41/12 44/5 44/7 44/17 45/8 46/4 46/10 46/10 46/11 46/16 46/17 46/17 49/24 49/25
**these [22]** 8/18 8/25 9/4 9/11 10/15 10/20 11/8 11/21 15/15 16/10 21/24 22/25 25/25 32/19 33/23 35/24 36/9 37/21 38/17 45/20 46/5 49/20
**they [55]**
**they're [26]** 3/21 6/5 12/4 13/23 18/23 21/19 22/15 23/2 23/3 25/6 25/7 26/15 26/24 30/20 31/17 33/4 34/8 39/13 41/2 41/2 41/4 41/18 41/22 44/13 45/23 46/18
**they've [7]** 10/17 11/22 11/23 43/21 44/4 44/21 46/20
**thing [8]** 16/15 17/12 19/10 20/24 43/14 44/21 47/12 49/2
**things [13]** 2/13 5/3 17/1 18/2 18/24 19/25 23/23 25/25 33/17 37/21 43/10 51/23 53/1
**think [42]** 2/12 4/18 7/10 8/10 8/11 10/20 12/12 12/13 14/25 16/8 16/10 16/15 16/20 16/23 16/25 17/23 19/12 25/21 35/17 36/1 38/16 40/12 42/22 42/23 43/3 43/9 45/11 47/6 47/20 49/4 49/6 49/8 49/24 49/25 50/2 51/15 51/22 52/2 52/2 52/12 52/14 53/16
**third [3]** 10/24 24/14 49/17
**this [121]**
**those [11]** 5/24 9/7 9/14 10/3 15/10 25/5 34/11 39/2 44/1 52/4 52/25
**thought [2]** 4/16 25/19
**three [13]** 3/1 5/23 5/24 6/1 9/7 14/24 15/1 20/8 31/13 43/1 43/16 44/19 46/15
**through [12]** 7/5 11/7 12/19 17/15 18/22 20/24 25/21 28/15 30/8 33/13 35/24 45/6
**throwaways [1]** 43/1
**Tik [1]** 49/19
**Tik-Tok [1]** 49/19
**till [1]** 49/12
**time [16]** 6/21 12/17 17/25 20/9 21/15 21/16 25/4 25/18 32/11 40/11 40/19 46/14 48/15 49/7 50/13 52/11
**timeline [1]** 10/4
**Title [1]** 54/7
**today [11]** 2/13 2/16 3/5 3/9 5/8 15/7 17/8 19/1 24/9 42/19 42/23
**together [3]** 14/25 25/17 25/19
**Tok [1]** 49/19
**told [4]** 10/13 17/24 45/5 46/20
**too [1]** 7/21
**took [2]** 7/3 51/2
**top [3]** 4/16 22/6 49/2
**topic [1]** 28/1
**tort [3]** 18/7 18/23 24/20
**tortious [1]** 18/10
**toss [1]** 12/18
**traded [3]** 29/25 34/7 34/8
**trades [1]** 18/2
**trading [1]** 24/12
**transaction [1]** 25/21
**transcript [2]** 54/8 54/10
**trial [3]** 7/19 12/20 49/18
**tries [1]** 49/10
**triple [1]** 48/13
**TRO [18]** 3/2 10/7 10/8 15/4 15/9 16/3 20/17 20/22 24/20 38/6 40/18 42/24 43/5 44/23 45/2 47/8 51/25 52/2
**TROs [1]** 11/19
**troubled [2]** 11/2 45/6
**true [5]** 6/24 18/20 20/2 23/11 54/8
**trust [2]** 15/2 20/13
**trusts [1]** 37/3
**truth [1]** 49/10
**trying [5]** 12/12 16/17 34/5 36/8 48/15
**turn [7]** 3/13 6/20 17/14 27/14 29/4 31/20 44/16
**turned [1]** 39/19
**turns [1]** 15/12
**two [17]** 5/3 7/8 10/15 10/20 11/8 16/10 21/3 25/11 31/3 32/25 33/17 35/6 38/17 42/25 43/9 44/6 44/12
**type [3]** 20/24 41/3 41/5
**types [1]** 37/21
**typically [2]** 24/10 42/24

## U

**ultimately [1]** 45/21
**under [14]** 5/22 10/25 11/14 26/7 26/14 28/3 28/4 32/20 34/19 36/19 37/13 37/22 39/9 41/7
**undersigned [1]** 29/12
**understand [15]** 6/9 12/21 20/22 25/23 31/8 31/18 35/18 37/9 41/18 41/19 46/16 49/20 50/3 50/14 51/17
**understanding [3]** 3/4 5/15 18/18
**understands [2]** 37/15 39/20
**understood [2]** 10/11 24/18
**undisputed [2]** 20/10 20/13
**unfortunate [2]** 11/1 48/6
**unique [1]** 26/7
**unison [1]** 5/18
**UNITED [6]** 1/1 1/10 2/2 54/5 54/7 54/12
**units [1]** 21/13
**unless [2]** 35/14 41/5
**unregistered [1]** 28/9
**until [7]** 3/10 27/22 30/19 36/5 38/9 41/3 44/3
**unwilling [2]** 11/10

**U**

**unwilling... [1]** 25/23
**unwillingness [1]** 35/9
**up [29]** 2/7 3/17 11/4 11/10 12/5 16/12 16/16 19/1 19/10 21/8 21/14 23/8 23/12 32/7 32/12 33/2 33/3 33/9 34/5 38/13 38/16 44/11 44/21 49/2 49/12 49/20 51/13 52/24 53/9
**uploaded [1]** 6/9
**upon [6]** 23/11 23/16 24/8 24/24 46/5 48/1
**upset [1]** 37/9
**us [6]** 7/19 16/16 16/16 38/9 45/19 46/20
**use [2]** 3/17 26/11
**usurped [1]** 22/16

**V**

**value [12]** 22/14 22/15 24/5 24/5 24/8 24/14 24/16 25/2 25/3 32/12 32/21 44/1
**vehicle [1]** 28/16
**venue [3]** 17/14 18/13 19/2
**verbatim [1]** 7/14
**verse [1]** 23/5
**versus [2]** 2/10 24/19
**very [8]** 7/5 9/2 11/2 19/13 20/16 48/25 50/8 50/15
**vested [1]** 11/16
**violation [1]** 18/22
**virtue [2]** 21/25 24/25
**voracity [1]** 48/19
**vote [1]** 5/24

**W**

**waiting [1]** 8/23
**walk [3]** 12/5 25/20 44/16
**walked [1]** 30/8
**walks [1]** 41/9
**wans [1]** 38/4
**want [18]** 3/10 5/5 11/20 19/1 20/20 20/20 20/21 22/2 25/18 31/7 37/10 38/6 43/2 44/23 46/18 47/13 49/11 52/14
**wanted [6]** 17/8 17/12 38/19 48/20 51/13 52/25
**wants [2]** 12/13 38/17
**was [86]**
**Washington [1]** 1/21
**wasn't [5]** 9/24 12/23 17/18 18/25 19/3
**waste [2]** 5/10 12/17
**waving [2]** 52/15 52/16
**way [14]** 3/19 11/5 16/11 17/18 26/10 33/3 34/24 38/2 40/2 40/9 40/17 46/9 50/3 51/23
**ways [2]** 28/14 49/7
**WCEP [14]** 12/2 12/5 13/12 13/18 13/24 18/9 18/11 21/9 21/15 24/2 25/1 36/4 36/18 47/5
**we [112]**
**we'll [8]** 5/6 12/8 20/15 38/14 50/20 52/7 53/2 53/16
**we're [40]** 2/9 2/11 8/10 8/11 9/21 12/6 12/17 12/19 19/5 19/22 21/4 24/16 24/17 28/1 29/7 29/8 36/4 38/8 38/12 38/14 39/23 40/4 40/14 40/24 40/25 41/1 41/25 41/25 42/2 42/5 42/14 42/20 44/8 45/13 45/15 46/2 46/4 46/18 47/6 50/16
**we've [11]** 2/12 2/14 4/16 9/25 12/19 13/21 21/17 25/9 41/20 46/23 49/23
**week [2]** 24/15 52/6
**weeks [1]** 44/6
**weigh [1]** 43/8
**well [19]** 2/14 2/23 6/25 7/11 8/13 13/1 15/1 23/2 24/23 29/6 30/2 31/23 36/23 37/17 38/25 42/19 44/13 46/3 47/4
**went [3]** 8/1 21/12 33/4
**were [23]** 3/4 3/6 3/6 3/7 5/23 9/8 9/17 9/18 10/11 15/5 15/23 21/13 21/25 22/20 25/25 25/25 33/5 36/14 36/16 37/8 39/7 40/17 44/9
**weren't [1]** 40/17
**WEST [9]** 1/6 2/10 2/21 26/4 27/1 32/5 33/19 37/24 39/13
**what [77]**
**what's [9]** 3/24 16/13 16/13 25/4 26/8 33/5 41/6 47/23 49/22
**whatever [12]** 7/12 20/21 22/2 34/21 36/5 36/11 36/15 42/8 44/1 44/4 52/5 52/12
**whatnot [1]** 51/10
**when [17]** 2/25 3/4 5/6 11/19 14/21 23/21 27/19 34/10 35/3 38/13 38/16 38/18 38/19 44/25 47/3 48/3 49/20
**where [32]** 4/21 4/25 5/2 6/23 8/8 16/2 16/2 17/24 18/16 18/16 18/17 19/21 21/20 24/4 25/6 30/24 32/21 35/10 36/4 37/5 37/7 37/11 37/19 37/19 39/24 40/20 40/22 42/12 43/8 46/8 47/2 47/3
**whereas [1]** 23/21
**wherefor [1]** 7/6
**whether [4]** 12/2 15/20 30/17 52/13
**which [48]** 6/9 6/18 6/22 9/1 9/7 10/3 10/19 12/4 13/7 15/9 18/24 19/7 20/19 21/3 21/7 22/1 22/13 22/17 23/12 26/4 26/8 26/9 27/4 27/7 27/16 27/21 27/24 28/2 28/21 29/4 29/5 29/17 30/1 30/25 31/25 33/13 34/20 38/10 39/4 39/12 39/14 40/17 41/6 44/4 44/12 45/6 45/6 51/23
**while [1]** 18/10
**who [22]** 6/2 6/23 8/1 10/12 15/25 19/17 20/4 20/8 22/5 25/2 38/8 38/13 40/1 40/2 40/8 42/9 42/21 44/19 45/14 45/19 46/19 51/18
**who's [4]** 2/15 2/16 11/17 16/12
**whole [4]** 11/3 18/24 33/8 36/20
**whom [1]** 22/16
**whose [1]** 25/3
**why [19]** 6/18 7/22 7/23 12/17 12/23 15/4 19/5 19/22 20/22 20/22 35/20 35/21 37/18 38/16 39/25 40/25 41/18 46/2 50/3
**will [34]** 3/14 6/23 9/2 19/10 27/11 27/12 30/24 30/25 31/1 31/12 32/11 33/1 33/2 33/7 33/8 33/24 34/2 34/3 34/10 34/11 34/11 34/12 34/16 34/19 34/20 34/21 35/5 35/13 45/6 49/11 49/12 49/18 52/23 53/15
**Williams [11]** 6/21 7/4 7/9 7/12 9/1 9/9 9/17 12/25 13/2 14/5 52/25
**Williams' [1]** 7/16
**wind [2]** 52/24 53/9
**winded [1]** 34/24
**wired [1]** 21/11
**wires [1]** 18/3
**withdrawal [4]** 20/7 20/10 45/17 45/17
**withdrawn [4]** 6/6 6/8 6/17 20/3
**within [3]** 15/20 27/7 48/4
**without [3]** 3/15 3/21 10/2
**witness [1]** 4/1
**won't [4]** 4/15 42/11 49/15 49/17
**word [1]** 13/16
**work [2]** 52/10 53/15
**worked [1]** 25/16
**workout [2]** 36/5 36/5
**worries [1]** 50/12
**worth [2]** 24/22 33/4
**would [33]** 3/7 3/11 4/6 8/18 10/1 10/7 11/5 14/6 16/12 17/18 18/20 19/6 23/24 25/20 25/24 26/10 26/11 26/11 26/14 27/22 28/24 30/10 33/2 33/17 33/25 37/9 38/1 42/9 44/12 44/17 49/16 51/13 52/6
**wouldn't [1]** 48/16
**wound [2]** 21/14 23/8
**wrap [2]** 34/5 52/6
**write [1]** 52/2
**written [2]** 16/24 41/7
**wrong [3]** 35/17 36/1 42/3

**Y**

**yeah [3]** 5/1 18/15 42/22
**year [7]** 8/22 8/22 33/3 49/13 49/15 49/16 49/17
**years [7]** 8/17 14/24 15/1 38/3 38/10 42/18 44/20
**yes [10]** 5/3 22/22 25/17 26/2 26/23 30/7 40/23 40/24 44/9 46/12
**yesterday [1]** 4/2
**Yet [1]** 8/3
**you [135]**
**you'd [2]** 42/15 50/3
**you'll [2]** 15/4 27/14
**you're [16]** 5/1 7/25 12/22 14/21 16/22 16/23 20/15 20/19 23/18 24/8 29/23 35/23 36/17 36/25 39/6 43/3
**you've [4]** 16/24 17/8 37/10 40/1
**your [91]**

**Z**

**zero [2]** 36/16 36/17
**Zoom [3]** 2/6 2/15 50/17